James A. Michel (SBN 184730)
THE LAW OFFICE OF JAMES MICHEL
2912 Diamond St. #373
San Francisco, CA 94131-3208
Tel:    (415) 239-4949
attyjmichel@gmail.com

Erika Angelos Heath (SBN 304683)
FRANCIS MAILMAN SOUMILAS, P.C.
369 Pine Street, Suite 410
San Francisco, CA  94104
Tel:    (628) 246-1352
Fax:    (215) 940-8000
erika@consumerlawfirm.com

Attorneys for Plaintiff and the Proposed Class

*Additional attorneys on signature page*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE: OSCAR D. TERAN, Debtor | Bankruptcy No. 10-31718 DM<br>Chapter 7 |
| OSCAR D. TERAN, on behalf of himself and all those similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION,<br><br>      Defendants. | Adversary No. 20- |

**CLASS ACTION COMPLAINT**

Plaintiff Oscar D. Teran, by and through his undersigned counsel, hereby files this Class Action Complaint upon personal knowledge as to those matters within his knowledge, and upon

1

information and belief as to all other matters, as follows:

## I. PRELIMINARY STATEMENT

1. Plaintiff brings this consumer class action on behalf of himself and similarly situated consumers pursuant to the United States Bankruptcy Code. Defendants Navient Solutions, LLC and Navient Credit Finance Corporation have pursued a uniform business practice that deprives consumers of the rights granted to them by discharge injunctions entered by this Court.

2. Specifically, Defendants knowingly and willfully pursue a pattern and practice to collect on student loans as if they were non-dischargeable, after the Bankruptcy Court has determined that the consumer is entitled to a discharge of such obligations and has entered a court order to that effect.

3. Plaintiff brings this action to enforce his and others' rights under the law.

## II. JURISDICTION AND VENUE

4. This Adversary Proceeding is brought under Bankruptcy Case Number 10-31718 DM.

5. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157(b), 1331, 1334(b). This is a core proceeding under Title 11 because it concerns a determination as to the dischargeability of a debt. 28 U.S.C § 157(b)(2)(I). Furthermore, this Court has supplemental jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1367 because the additional claims are related to the core proceeding.

6. This Adversary Proceeding is brought pursuant to 11 U.S.C §§ 105, 523(a)(8) and Federal Rules of Bankruptcy Procedure 7001(6), (9) and 7023. Plaintiff consents to entry of a final order or judgment by the Bankruptcy Court.

7. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this district.

### III. PARTIES

8. Oscar D. Teran is an individual and a resident of this State who filed in this district for relief under Title 11 in 2010 and was granted a bankruptcy discharge on August 17, 2010.

9. Navient Solutions, LLC is a business entity that in the ordinary course of business regularly, on behalf of itself or others, engages in the servicing and collection of consumer debt. Navient Solutions, LLC is registered as a Limited Liability Company in the State of Delaware with an address at 13865 Sunrise Valley Drive, Herndon, Virginia 20171. Navient Solutions, LLC is authorized to do business in the State of California and may be served through its registered agent CSC-Lawyers Incorporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

10. Navient Credit Finance Corporation is a business entity that in the ordinary course of business regularly, on behalf of itself or others, engages in the origination, servicing and collection of consumer debt. Navient Credit Finance Corporation has a principal place of business at 2001 Edmund Halley Drive, Reston, VA, 20191 and may be served through its registered agent CSC, 111 East Main Street, Richmond, VA, 23219.

### IV. STATEMENT OF FACTS

**A. Section 523(a)(8) Of The Bankruptcy Code.**

11. In 1978, Congress enacted section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship). Through a series of amendments, which first lengthened and then

eliminated the five-year non-dischargeability time frame, it became increasingly difficult for debtors to attain discharges of their student loan debts.

12. In 2005, after extensive lobbying, private education lenders and debt collectors won limited protection in bankruptcy for some of their educational loan products.[1] Specifically, Congress limited protection for private education loan instruments to the extent that such money supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools for tuition, room, board, and books ("Qualified Education Loans").[2]

13. But commercial lenders were not satisfied with the volume of Qualified Education Loans that they could originate. The paperwork was burdensome, schools would not certify sums in excess of tuition, and the Title IV accreditation requirement prevented lending to thousands of for-profit colleges and high schools that had not obtained Title IV accreditation.

14. Thereafter, lenders initiated new programs that lent money directly to students attending unaccredited schools (hereinafter, "Consumer Education Loans"). Consumer Education Loans were much easier to originate because they bypassed the certification requirements codified in the Higher Education Act. Because the unaccredited schools were not Title IV-eligible, these loans were not and are not Qualified Education Loans, and thus are not excepted from discharge pursuant to section 523(a)(8)(B). Like credit card debt, such loans are simply unsecured consumer debts and are discharged automatically upon entry of a discharge injunction order.

---

[1] Bankruptcy Abuse and Consumer Protection Act Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005).

[2] *In re Decena,* 2016 WL 1371031, *6 (Bankr. E.D.N.Y. Apr. 4, 2016) ("[S]ection 523(a)(8)(B) excepts from discharge loans for attending an 'eligible educational institution,' recognition of which is dictated by the Federal School Codes List for the years 2004–05, which identify '[a]ll postsecondary schools that are currently eligible for Title IV aid.'").

### 1. The Application of Section 523(a)(8)

15. Prior to 2005, section 523(a)(8) was easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of "undue hardship." This fueled the belief that all student loans are non-dischargeable. But private lenders were only given qualified protection in 2005 such that section 523(a)(8)(B) only excepts some private education loans from discharge. This created an opportunity for unscrupulous creditors to exploit the application of section 523(a)(8) and deceive debtors into thinking that all private student loans, like their federal cousins, were excepted from discharge.

16. This problem was made worse because section 523(a)(8) is "self-executing" and thus its correct application relies on the good faith and honesty of creditors. When a debtor files a bankruptcy petition, the debtor includes all unsecured debts on a Schedule F form, listing only the amount of the debt, the name of the creditor, and the consideration received. After demonstrating compliance with the Bankruptcy Code, a court then issues an order discharging all pre-petition debts listed on the bankruptcy petition except for those listed in section 523(a).[3] Importantly, the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including "debts for most student loans."

17. If a creditor believes that a debt they hold is excepted from discharge, it is their legal burden to prove that the debt is encompassed by section 523(a)(8).[4] Once the creditor

---

[3] 11 U.S.C. § 727(b) ("Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter.").

[4] *Owens v. Owens,* 155 F. App'x 42, 43 (2d Cir. 2005) ("It is the creditor seeking an exception to discharge who bears the burden of proving facts coming within one of the § 523 exceptions."); *In re Renshaw,* 222 F.3d 82, 86 (2d Cir. 2000) ("Because bankruptcy is both a right of the debtor, and a remedy for the creditor . . . a proper balancing of those competing interests requires the creditor to prove by a preponderance of the evidence that its claim is one that is not dischargeable."); *In re Metcha,* 310 F.3d 308, 311 (3d. Cir 2002) (stating that creditor opposing

5

proves the debt is presumptively non-dischargeable, the burden then shifts to the debtor to prove that repaying the debt would constitute an "undue hardship."[5] Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the discharge order.[6] Accordingly, it is left to the creditors to determine whether their particular educational loan is excepted from discharge by section 523(a)(8), and, where confusion exists, seek clarity from the court. The creditor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions.

   **2.    Creditors Manipulate the Application of Section 523(a)(8) and Deceive Debtors Into Believing Their Non-Qualified Student Loans Were Not Discharged**

   18.   For the following reasons, among others, Defendants have no objectively reasonable basis for concluding that their conduct as described herein was lawful.

   19.   Not content with the protections won from Congress in 2005, creditors soon devised a scheme to manipulate this presumption of non-dischargeability and deceive debtors and the bankruptcy courts into thinking that all private student loans, both qualified and non-qualified, to both accredited and unaccredited schools, were excepted from discharge. To effectuate this scheme, creditors would start sending debtors requests for payment after the entry of the bankruptcy discharge order and the closing of the bankruptcy case.

---

discharge has burden of establishing that the obligation is an educational loan under section 523(a)(8)).

[5]   *See In re Bronsdon,* 435 B.R. 791, 796 (B.A.P. 1st Cir. 2010) ("The creditor bears the initial burden of establishing that the debt is of the type excepted from discharge under § 523(a)(8). Once the showing is made, the burden shifts to the debtor to prove that excepting the student loan debt from discharge will cause the debtor and her dependents 'undue hardship.'").

[6]   *In re Meyer,* No. 15-13193, 2016 WL 3251622, at *2 (Bankr. N.D. Ohio June 6, 2016) ("For the reasons stated in the debtor's motions and the *Decena* decision, the Court finds that the debtor's student loans were discharged on September 16, 2015, because they do not fall within 11 U.S.C. § 523(a)(8). The Court further finds that the student loan servicers violated the discharge injunction of § 524(a)(2) by attempting to collect on the student loan accounts after the date of the debtor's discharge.").

20. Consequently, a law that was originally designed to prevent students from taking advantage of the bankruptcy system enabled unscrupulous creditors to take advantage of the bankruptcy system. These loans are disproportionately issued to low-income minority students who lack the resources and knowledge to seek relief in an adversary proceeding, which is an expensive and time-consuming undertaking. In fact, only one tenth of one percent (0.1%) of debtors in bankruptcy seek to discharge their student debts.[7] In the rare event a debtor has filed an adversary proceeding, creditors often settle or forgive student debts that were already legally discharged, thereby preventing courts from discovering that these debts were never entitled to a presumption of non-dischargeability in the first instance, and ensuring that they are able to continue collecting on 99.9% of other discharged debts without consequence.

### 3. Defendants Reveal Their Bad Faith By Relaying Different Information To The SEC And Sophisticated Investors

21. During the post-2005 time frame, student loan lenders were securitizing these debts for sale on the secondary market. Lenders were concerned that if they represented to investors that all private student loans were non-dischargeable in bankruptcy, sophisticated investors would easily enough discover the misrepresentation (based on a plain reading of the statute), and issuers would be liable for securities violations.[8]

22. Major lenders and underwriters therefore included in student loan asset-backed securities' prospectuses language warning investors that, pursuant to section 523(a)(8), only private loans made for qualified expenses were excepted from discharge.[9]

---

[7] Jason Iuliano, AN EMPIRICAL ASSESSMENT OF STUDENT LOAN DISCHARGES AND THE UNDUE HARDSHIP STANDARD, 86 Am. Bankr. L.J. 495, 505 (2012) (stating that in 2007, at least, only .01% of all debtors in bankruptcy with student loans filed an adversary proceeding seeking discharge).

[8] *See, e.g.*, 15 U.S.C. § 78j.

[9] *See* SLM Loan Trust 2008-3 Prospectus Supplement dated October 16, 2007, at 32-33 ("Risk of Bankruptcy Discharge of Private Credit Student Loans: Private credit student loans ***made for qualified education expenses*** are generally not dischargeable by a borrower in bankruptcy … direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and

23. In addition, in a federal pleading filed in the U.S. Bankruptcy Court for the Southern District of Texas, *Crocker v. Navient Solutions, LLC, et al*, Case No. 16-03175, Navient is alleged to have been warning shareholders in investor presentations that Career Training loans — *i.e.,* one form of non-qualified loans made to students at unaccredited colleges and high schools — are dischargeable in bankruptcy. *Crocker*, ECF 243, at ¶ 19.

B. **Plaintiff Borrowed A Consumer Education Loan And Sought Relief Under Title 11**

24. On or about February 13, 2008, Plaintiff Oscar D. Teran incurred a Consumer Education Loan in the form of a Bar Study Loan issued by Sallie Mae Bank (the "Bar Study Loan"). This debt was used to pay for expenses associated with studying for the Texas Bar Examination.

25. The Bar Study Loan was subsequently transferred from Sallie Mae Bank to SLM Education Credit Finance Corporation, which subsequently changed its name to Navient Credit Finance Corporation. Ultimately, the Bar Study Loan was transferred to Navient, LLC for servicing.

26. In May 2010, the Plaintiff sought relief under Title 11 in this Court in Case No. 10-31718, *In re Oscar D. Teran*, formerly pending before this Honorable Court.

27. Plaintiff properly scheduled the Bar Study Loan in Schedule F of his bankruptcy filing, in the amount of $15,752.00.

---

warranties contained in their promissory notes, including their certification of the cost of attendance for their education. This process does not involve school certification as an additional control and, therefore, may be subject to some additional risk that ***the loans are not used for qualified education expenses***. If you own any notes, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan to the extent the amount of the default is not covered by the trust's credit enhancement.") (Emphasis added).

8

28. Defendants received notice of Mr. Teran's bankruptcy filing and the scheduling of the Bar Study Loan.

29. Plaintiff did not reaffirm the Bar Study Loan.

30. On August 17, 2010, this Court ordered discharge of all Plaintiff Teran's pre-petition debt.

31. The Bar Study Loan was not excepted from discharge because the loan was not made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution. 11 U.S.C. § 523(a)(8)(A)(i).

32. The Bar Study Loan was not excepted from discharge because the loan was not an obligation to repay funds received as an educational benefit, scholarship, or stipend. 11 U.S.C. § 523(a)(8)(A)(ii).

33. The Bar Study Loan was not excepted from discharge because the loan was not a qualified education loan as defined in section 221(d)(1) of the Internal Revenue Code of 1986. 11 U.S.C. § 523(a)(8)(B).

34. Defendants were notified of the entry of Plaintiff Teran's discharge order.

35. Despite their legal burden, Defendants did not file an adversary proceeding to contest the dischargeability of the Bar Study Loan.

36. Instead of charging off the Bar Study Loan, after Mr. Teran's discharge, Defendant Navient Solutions, LLC thereafter sought to collect and/or induce payment on this otherwise discharged debt in violation of this Court's Order and the Bankruptcy Code.

37. Defendants sent regular statements of the Bar Study Loan to Mr. Teran as a means of collection of the discharged debt.

38. Defendants also reported Mr. Teran's Bar Study Loan to consumer reporting agencies.

39. Communicating credit information which is known or should be known to be false is an illegal debt collection practice. 15 U.S.C. § 1692e(8).

40. The reporting of a discharged debt on a consumer's credit report has a negative effect on the consumer's credit score and the ability of him or her to obtain credit.

41. As a result of Defendants' post-discharge collection actions, Plaintiff Teran has made timely payments to Defendants on the discharged debt.

42. Defendants' collection activity after the Plaintiff's bankruptcy discharge was in violation of this Court's discharge order and must be sanctioned.

C. **All Class Members Were Subjected To A Similar Practice**

43. Defendants have been pursuing the practice of collecting discharged debt as described herein for at least the past ten years, and probably longer, since October 17, 2005 was the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act.

44. All Class members were subjected to a similar practice.

45. All Class members borrowed various types of Consumer Education Loans from Defendants and their predecessors to attend unaccredited colleges, secondary schools, trade schools, and professional skills programs.

46. All Class members filed for bankruptcy protection in the bankruptcy courts of the of the Northern District of California.

47. All Class members listed their Consumer Education Loans in Schedule F of their bankruptcy filings.

48. Defendants received notice of the bankruptcy filings of Class members.

49. No Class member reaffirmed their Consumer Education Loan.

50. At the conclusion of their bankruptcy cases, all Class members were issued discharge orders.

51. These discharge orders extinguished all education-related debt that was not excepted from discharge by 11 U.S.C. § 523(a)(8).

52. Notwithstanding the discharge of these debts, Defendants have employed processes, practices and acts designed to mislead Class members into believing that their debts were not discharged and inducing them to make payments on extinguished debts.

53. Defendants have misled Class members and sought to collect on discharged debts by use of regular statements of amounts purportedly due, dunning letters, text messages, emails, autodialers, and live phone calls demanding repayment.

54. In addition, Defendants have continued to report these debts as delinquent to the major credit bureaus to compel payment. The false reporting of the debts as delinquent has a concrete, deleterious effect on the borrower's credit standing, credit score and ability to obtain credit in the future.

55. In the *Crocker* case described *supra*, Defendants are alleged to have also commenced or continued legal actions against borrowers to compel payment on discharged debts. *Crocker*, ECF 243 at ¶ 35.

56. The debt collection activities of the Defendants as described herein caused Class members to pay Defendants on loans that they no longer owed.

## V. CLASS ACTION ALLEGATIONS

57. Pursuant to Rule 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiff Teran brings this action on behalf of himself and all other persons similarly situated, as representative of the following Class:

> Persons who filed for bankruptcy protection in the U.S. Bankruptcy Court for the Northern District of California on or after October 17, 2005, who:
>
> a. incurred pre-petition loans, whether as borrower or co-signer, that were not guaranteed by any non-profit institution to cover expenses at non-eligible educational institutions as that term is defined in 26 U.S.C. § 221(d);
>
> b. who listed such loans on Schedule F of their bankruptcy filings;
>
> c. have never reaffirmed such pre-petition loan debt;
>
> d. were granted a discharge; and,
>
> e. have nonetheless been the subject of Defendants' policy of attempting to compel and/or successfully compelling payment of these discharged loans.

58. Plaintiff also brings this action on behalf of himself and as representative of a Subclass consisting of persons with addresses in the State of California who filed for bankruptcy protection in the U.S. Bankruptcy Court for the Northern District of California who:

> a. incurred pre-petition loans, whether as borrower or co-signer, that were not guaranteed by any non-profit institution to cover expenses at non-eligible educational institutions as that term is defined in 26 U.S.C. § 221(d);
>
> b. who listed such loans on Schedule F of their bankruptcy filings;
>
> c. have never reaffirmed such pre-petition loan debt;
>
> d. were granted a discharge; and,
>
> e. as to whom, within two years before the filing of this Complaint, Defendants reported to credit reporting agencies the balance of such loans as an amount owed by such persons.

59. Plaintiff reserves the right to amend the definition of the Class and Subclass, and/or add subclasses, to include or exclude members.

60. As described below, this action satisfies the numerosity, commonality, typicality, superiority, predominance, and adequacy of representation requirements of Rule 23 of the Federal Rules of Civil Procedure.

A. **Numerosity**

61. The persons in the Class are so numerous that joinder of all members is impracticable. In the interest of judicial economy, this dispute should be resolved through a class action.

62. The number of Class members will likely be in the hundreds, if not thousands. The quantity, identity, and location of Class members are ascertainable through appropriate discovery and may be identified by the records maintained and possessed by Defendants.

63. The Class members are geographically dispersed throughout the Northern District of California and elsewhere, as Defendants are or were national providers, holders and servicers of Consumer Education Loans and made these loans available to students nationwide, and Class members may have left the Northern District of California following receipt of their bankruptcy discharges over the last fifteen years.

64. Upon information and belief, the individual members of the Class, or at least a large portion thereof, lack the means to pursue these claims individually and severally.

B. **Commonality**

65. There are common questions of law and fact affecting the entirety of the Class. Specifically, predominant common questions include, without limitation: (a) whether the Class members' Consumer Education Loans were discharged at the conclusion of their bankruptcy cases;

Case: 20-03075    Doc# 1    Filed: 08/31/20    Entered: 08/31/20 12:06:40    Page 13 of 19

(b) whether Defendants violated the applicable discharge orders by seeking to collect and collecting on discharged private education debt; and, (c) whether Defendants violated California law by reporting the balance of discharged Consumer Education Loans to credit reporting agencies as amounts owed.

66. Answers to these common questions will drive the resolution of the injuries shared by each member of the Class and Subclass.

**C.  Typicality**

67. Mr. Teran's claims against Defendants are representative of those of all Class members. Specifically, the Bar Study Loan is an individual species of Consumer Education Loans originated and serviced by Defendants.

**D.  Adequacy of Representation**

68. Mr. Teran will fairly and adequately represent and protect the interests of the members of the Class. His interests are squarely aligned with those of the individual members of the Class. Plaintiff's counsel are experienced in class action lawsuits and complex commercial litigation, consumer protection, and/or student loan litigation.

**E.  Predominance and Superiority**

69. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The questions include, but are not limited to:

> (i) whether the Class members' loans were discharged at the conclusion of their bankruptcy cases; and
>
> (ii) whether Defendants violated the applicable discharge orders by seeking to collect and collecting on discharged loans.

70. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying

14

adjudications, with respect to individual members, which would establish incomplete standards of conduct for the parties opposing the Class, as well as a practical matter be dispositive of interests of other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

71.    Defendants have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

72.    A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Class claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be obtained from Defendants' records.

## VI.    CLAIMS FOR RELIEF

### Count One: Violations of the Discharge Orders

73.    Plaintiff hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

74.    The Consumer Education Loans were discharged pursuant to Class members' discharge orders because they were unsecured consumer loans and not non-dischargeable student loans.

75.    Defendants were notified of the Class members' discharge orders pursuant to Federal Rule of Bankruptcy Procedure 4004(g).

76.    Defendants nonetheless sought to collect on these debts, either directly or indirectly, by mailing regular statements to Class members, sending dunning letters, text messages, emails, autodialers, and live phone calls demanding repayment, negative reports made to the major

credit bureaus, failure to update these credit reports, and commencing or continuing legal action to recover the discharged debts in violation of 11 U.S.C § 524.

77. There is no objectively reasonable basis for concluding that Defendants' collection of discharged debt might be lawful.

78. Plaintiff and Class members request declaratory judgment pursuant to 28 U.S.C. § 2201, 11 U.S.C. §§ 105, 523 and Federal Rule of Bankruptcy Procedure 7001(9) that Plaintiff's and Class members' Consumer Education Loans are not non-dischargeable student loans or Qualified Education Loans and were therefore discharged upon entry of the applicable discharge injunctions.

79. Plaintiff and Class members request that Defendants be cited for civil contempt and ordered to pay restitution and/or disgorgement, and damages in an amount to be determined at trial for the willful violations of the discharge injunctions, and also request an award of attorneys' fees and costs, pursuant to 11 U.S.C § 105.

80. Plaintiff and Class members request injunctive relief prohibiting Defendants from continuing to seek collection on discharged debts.

**Count Two: Dischargeability (11 U.S.C. § 523)**

81. Plaintiff incorporates all paragraphs in this Complaint as though fully set forth herein.

82. Any and all indebtedness of Plaintiff and Class members to Defendants should be determined dischargeable as outside the scope of the "student loan" exception found in 11 U.S.C. § 523(a)(8).

**Count Three: California Consumer Credit Reporting Agencies Act**

83. Plaintiff brings this claim on behalf of himself and the Subclass for relief against Defendants, and each of them, pursuant to California Civil Code Sections 1785.25 and 1785.31, the California Consumer Credit Reporting Agencies Act ("CCCRAA").

84. Plaintiff incorporates all paragraphs in this Complaint as though fully set forth herein.

85. Defendants are each a "person" within the meaning of California Civil Code Section 1785.4(j).

86. Defendants are each a "furnisher" within the meaning of California Civil Code Section 1785.25(a).

87. Plaintiff is a "consumer" within the meaning of California Civil Code Section 1785.3(b).

88. Within two years before the filing of this Complaint, Defendants reported to credit reporting agencies the balance of the Bar Study Loan as an amount owed by Plaintiff Teran.

89. The credit reports were inaccurate and misleading.

90. The credit reports resulted in tradelines adverse to Plaintiff's credit rating.

91. Adverse credit reporting can negatively affect a consumer's credit score and ability to obtain credit.

92. Defendants did not take adequate steps to prevent the credit reports from resulting in tradelines adverse to Plaintiff's credit rating.

93. The credit reports were "consumer reports" as that term is defined by California Civil Code Section 1785.3(c).

94. Pursuant to California Civil Code Section 1785.31, Defendants are liable for violating the CCCRAA by furnishing inaccurate and misleading information to consumer

17

reporting agencies that it knew, or should have known, was false, in violation of California Civil Code Section 1785.25(a).

95. Defendants' inaccurate and misleading reporting of adverse credit information has resulted in damages to Plaintiff including loss of credit rating, reduction of credit score, a chill in applying for credit because Defendants' inaccurate reporting would adversely affect credit rating.

96. Defendants' improper reporting was also a substantial factor in compelling Plaintiff to continue making payments to Defendants on the discharged debt through the present.

97. The conduct of Defendants was a direct and proximate cause, as well as a substantial factor, in bringing about the injuries, actual damages and harm to Plaintiff and to members of the Subclass as alleged above, and as a result, Defendants are liable to Plaintiff and the Subclass for the full amount of statutory, actual and punitive damages, along with attorney fees and costs of suit and other relief as may be permitted by law.

## VII. **PRAYER FOR RELIEF**

In light of the foregoing, Plaintiff and Class members request that judgment be entered against Defendants for:

A. Declaratory relief that Plaintiff's and Class members' Consumer Education Loans were discharged upon entry of the applicable discharge injunctions;

B. Injunctive relief prohibiting Defendants from continuing to seek collection on discharged debts;

C. Actual damages and punitive damages, in an amount not less than $500 for each violation of the discharge orders;

D. Restitution and/or disgorgement;

E. Attorneys' fees and costs to the fullest extent permitted under the law;

F.  Prepetition and post-judgment interest;

G.  Statutory and punitive damages as provided for in California Civil Code Sections 1785.25 and 1785.31; and

H.  Such other such relief as the Court deems just and proper.

Respectfully submitted,

Dated: August 31, 2020

**OSCAR D. TERAN**,
by his attorneys,

*/s/ James Michel*
James Michel
attyjmichel@gmail.com
**THE LAW OFFICE OF JAMES MICHEL**
2912 Diamond St #373
San Francisco, CA 94131-3208
Tel: (415) 239-4949

Erika A. Heath
**FRANCIS MAILMAN SOUMILAS, P.C.**
369 Pine Street, Suite 410
San Francisco, CA 94104
Tel: 628-246-1352
Fax: 215-940-8000
eheath@consumerlawfirm.com

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis*
John Soumilas*
David A. Searles*
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
dsearles@consumerlawfirm.com

*Pro Hac Vice* application forthcoming

*Attorneys for Plaintiff and the Class*