James A. Michel (SBN 184730)
THE LAW OFFICE OF JAMES MICHEL
2912 Diamond St. #373
San Francisco, CA 94131-3208
Tel:    (415) 239-4949
attyjmichel@gmail.com

Erika Angelos Heath (SBN 304683)
FRANCIS MAILMAN SOUMILAS, P.C.
369 Pine Street, Suite 410
San Francisco, CA 94104
Tel:    (628) 246-1352
Fax:    (215) 940-8000
eheath@consumerlawfirm.com

Attorneys for Plaintiff and the Classes

*Additional attorneys on signature page*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: OSCAR D. TERAN, Debtor** | Bankruptcy No. 10-31718 DM<br>Chapter 7 |
| **OSCAR D. TERAN, on behalf of himself and all those similarly situated,** | Adversary No. 20-03075 |
| **Plaintiffs,** | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT THREE OF PLAINTIFF'S COMPLAINT OR, ALTERNATIVELY, COMPEL ARBITRATION** |
| **v.** | |
| **NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION,** | |
| **Defendants.** | Date:       Feb. 26, 2021<br>Time:       9:00 a.m.<br>Location:   Telephonic |
| | Hon. Dennis Montali |

**TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................... ii

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE ........................ 1

III. ARGUMENT ........................................................................................................ 3

A.   The Court Has Jurisdiction of the CCRAA Claim ....................................... 3

1.   The CCRAA Claim is a Core Matter ....................................................... 3

2.   At a Minimum, the Bankruptcy Court Has Supplemental Jurisdiction
     Over the CCRAA Claim. ......................................................................... 6

B.   This Court Should Reject Defendants' Attempt to Arbitrate
     Mr. Teran's CCRAA Claim .................................................................... 10

IV.  CONCLUSION ................................................................................................... 16

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Allen v. Equifax Info. Servs., LLC*,
2017 WL 5762414 (W.D. Ky. Nov. 28, 2017) .......................................................14

*Anderson v. Credit One Bank, N.A.*,
884 F.3d 382 (2d Cir. 2018)..........................................................10, 11, 12, 16

*Belton v.GE Capital Retail Bank*,
961 F.3d 612 (2d Cir. 2020).........................................................................11, 12

*In re Belton*,
2019 WL 1017293 (S.D.N.Y. March 4, 2019) .................................................12

*Buckingham v. Baptist Mem'l Hosp.-Golden Triangle*,
283 B.R. 691 (N.D. Miss. 2002) ........................................................................9

*Burns v. LTD Acquisitions, LLC*,
2010 WL 642312 (Bankr. S.D. Tex. Feb. 18, 2010)..........................................4

*Cal. Dep't of Health Servs. v. Jensen*,
995 F.2d 925 (9th Cir. 1993) ...........................................................................11

*Carter v. Richland Holdings, Inc*.,
2019 WL 4773806 (D. Nev. Sep. 30, 2019)
*appeal dismissed*, 2020 WL 6326344 (9th Cir. Aug. 11, 2020) ......................5

*Chavez v. Get It Now, LLC*,
2018 WL 461130 (D. Minn. Jan. 16, 2018)..........................................13, 14, 15

*Clark v. Bear Stearns & Co.*,
966 F.2d 1318 (9th Cir. 1992) ..........................................................................16

*Close v. Edison*,
2003 WL 22697825 (Bankr. E.D. Pa. Oct. 29, 2003).........................................9

*Cont'l Ins. Co. v. Thorpe Insulation Co.*,
671 F.3d 1011 (9th Cir. 2012) ......................................................................4, 11

*Crocker v. Navient Solutions, LLC*,
941 F.3d 206 (5th Cir. 2019) .............................................................................9

*Csondor v. Weinstein, Treiger & Riley, P.S.*,
309 B.R. 124 (Bankr. E.D. Pa. 2004) .................................................................9

Case: 20-03075   Doc# 24   Filed: 02/12/21   Entered: 02/12/21 16:46:58   Page 3 of 24

*Davis v. Courington (In re Davis),*
   177 B.R. 907 (9th Cir. BAP 1995)..................................................................6, 8

*Deitz v. Ford,*
   469 B.R. 11 (B.A.P. 9th Cir. 2012),
   *aff'd by* 760 F.3d 1038 (9th Cir. 2014) ............................................................8

*Dunmore v. United States,*
   358 F.3d 1107 (9th Cir. 2004) ...........................................................................4

*In re Eads,*
   135 B.R. 387 (Bankr. E.D. Cal. 1991) ...............................................................8

*In re Eber,*
   687 F.3d 1123 (9th Cir. 2012) .........................................................................11

*Gadomski v. Wells Fargo Bank N.A.,*
   281 F. Supp. 3d 1015 (E.D. Cal. 2017)....................................................13, 15

*Goldstein v. Marine Midland Bank, N.A.,*
   201 B.R. 1 (Bankr. D. Me. 1996).......................................................................9

*Grant v. Cole,*
   281 B.R. 721 (Bankr. S.D. Ala. 2000).............................................................12

*Greenstein v. Wells Fargo Bank, N.A. (In re Greenstein),*
   576 B.R. 139 (Bankr. C.D. Cal. 2017)...............................................................7

*Gruntz v. Cty. of L.A. (In re Gruntz),*
   202 F.3d 1074 (9th Cir. 2000) ...........................................................................3

*Harrier v. Verizon Wireless Personal Communications LP,*
   903 F. Supp. 2d 1281 (M.D. Fla. 2012).............................................................13

*Harris v. Viegelahn,*
   575 U.S. 510, 135 S. Ct. 1829 (2015)..............................................................11

*Henry v. Educ. Fin. Serv.,*
   944 F.3d 587 (5th Cir. 2019) .....................................................................11, 16

*Hye Rhee Kong v. Kelkris Assocs.,*
   2013 WL 6923063 (Bankr. N.D. Cal. Nov. 15, 2013)....................................9, 10

*Jenkins v. Fifth Third Bank,*
   2017 WL 3605357 (S.D. Ohio Aug. 22, 2017)................................................13

*Jernstad v. Green Tree Servicing, LLC,*
   2012 WL 8169889 (N.D. Ill. Aug. 2, 2012) ...............................................13, 14

iii

*Kasim v. Equifax Info. Servs., Ltd. Liab. Co.*,
  2008 WL 4858267 (D. Or. Nov. 10, 2008).................................................................10

*Kieslich v. Kieslich (In re Kieslich)*,
  258 F.3d 968 (9th Cir. 2001) ...................................................................................6

*King v. Bank of Am., N.A.*,
  2012 WL 4685993 (N.D. Cal. Oct. 1, 2012)..............................................................5

*Kokoszka v. Belford*,
  417 U.S. 642 (1974)................................................................................................11

*Local Loan Co. v. Hunt*,
  292 U.S. 234 (1934)................................................................................................11

*Mann v. Equifax Info. Servs.*,
  2013 WL 3814257 (E.D. Mich. May 24, 2013)..........................................13, 14, 15

*McDaniel v. Navient Solutions, LLC*,
  973 F.3d 1083 (10th Cir. 2020) ...............................................................................9

*Montana v. Goldin (In re Pegasus Gold Corp.)*,
  394 F.3d 1189 (9th Cir. 2005) ....................................................................6, 7, 8, 9

*Pacor, Inc. v. Higgins*,
  743 F.2d 984 (3d Cir. 1984)......................................................................................6

*Pierce v. Conseco Fin. Serv. Corp. (In re Lockridge)*,
  303 B.R. 449 (Bankr. D. Ariz. 2003)........................................................................7

*Reyes v. FCC Nat'l Bank*,
  238 B.R. 507 (Bankr. D.R.I. 1999)...........................................................................9

*Rushing v. Green Tree Servicing, LLC*,
  443 B.R. 85 (Bankr. E.D. Tex. 2010) .....................................................................12

*Sanders Confectionary Products, Inc. v. Heller Financial, Inc.*,
  973 F.2d 474 (6th Cir. 1992) ....................................................................................4

*Sasson v. Sokoloff (In re Sasson)*,
  424 F.3d 864 (9th Cir. 2005) ....................................................................................6

*Shearson/American Exp., Inc. v. McMahon*,
  482 U.S. 220 (1987)................................................................................................10

*Steele v. Ocwen Fed. Bank*,
  258 B.R. 319 (Bankr. D.N.H. 2001) .........................................................................9

Case: 20-03075   Doc# 24   Filed: 02/12/21   Entered: 02/12/21 16:46:58   Page 5 of 24

*Stern v. Marshall*,
    564 U.S. 462 (2011).....................................................................................................3

*Vogt v. Dynamic Recovery Servs.*,
    257 B.R. 65 (Bankr. D. Colo. 2000)..........................................................................9

*Walker v. Got'cha Towing & Recovery, LLC*,
    551 B.R. 679 (Bankr. M.D. Ga. 2016)............................................................. *passim*

*Walls v. Wells Fargo*,
    276 F.3d 502 (9th Cir. 2002).......................................................................................5

*Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Courtyard)*,
    729 F.3d 1279 (9th Cir. 2013).....................................................................................6

*Wireman v. Caracciolo*,
    2006 WL 6602238 (Bankr. S.D. Cal. July 19, 2006)..................................................8

*Zimmerli v. Ocwen Loan Servicing, LLC*,
    432 B.R. 238 (Bankr. N.D. Tex. 2010).....................................................4, 5, 12, 15

## Statutes

11 U.S.C. § 157(b)(2)(I), (O)..........................................................................................4

28 U.S.C. § 1367.......................................................................................................6, 7, 10

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005..........................1, 2

Bankr. Code § 362(k).........................................................................................................4

Bankr. Code § 362......................................................................................................7, 12

Bankr. Code § 523(a)(8)......................................................................................... *passim*

Bankr. Code § 524......................................................................................................4, 12

Cal. Civ. Code § 1785.25(a)..........................................................................................5, 15

Consumer Credit Reporting Agencies Act............................................................. *passim*

Fair Credit Reporting Act..........................................................................................5, 13, 10

Fair Debt Collection Practices Act......................................................................... *passim*

Real Estate Settlement Procedures Act..........................................................................12

**Federal Rules**

Fed. R. Bankr. P. 7012(b) ............................................................................3

**Constitutional Provisions**

United States Constitution Article III ...........................................................6

# I.  **INTRODUCTION**

Defendants' motion to dismiss and/or compel arbitration of Mr. Teran's claim under the Consumer Credit Reporting Agencies Act ("CCRAA") should be denied in its entirety.

Ever since the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Defendants have flagrantly disobeyed bankruptcy discharge orders in this district by continuing to collect on "student loans," such as the Bar Study Loan at issue here, that clearly fall outside the purview of section 523(a)(8).  A crucial part of this collection strategy is their continued credit reporting of the discharged debts.  In this adversary, seeking contempt sanctions and a dischargeability determination, Defendants continue with their remarkable assertion that Mr. Teran's Bar Study Loan was non-dischargeable.

Mr. Teran's CCRAA claim is entirely derivative of this court's determination as to the dischargeability of the Bar Study Loan at issue in this case, and the facts of his CCRAA claim overlap almost entirely with his request for contempt sanctions against Defendants.  This Court clearly has jurisdiction over the CCRAA claim, whether it be characterized as a "core" proceeding, or as part of the bankruptcy court's long-recognized supplemental jurisdiction.

Further, because even the CCRAA claim invokes such important issues regarding the discharge order, peeling off that one claim for arbitration would conflict directly with the Bankruptcy Code.  Defendants' requested result could even mean that an arbitrator's decision would have collateral estoppel effects that would prevent this court from being able to enforce its own orders in the dischargeability cause of action and contempt charge.

This Court – not an arbitrator – should decide these issues.

# II.  **FACTUAL BACKGROUND AND PROCEDURAL POSTURE**

Plaintiff/Debtor Oscar D. Teran filed his Complaint ("Compl.") initiating this adversary proceeding on August 31, 2020.  Doc. 1. The Complaint alleges as follows.

On or about February 13, 2008, Mr. Teran obtained a Bar Study Loan from Sallie Mae Bank (the "Bar Study Loan") in order to pay for expenses associated with studying for the Texas

1

Bar Examination. This loan was ultimately assigned to Defendant Navient Credit Finance Corporation, and has been serviced by Defendant Navient, LLC (collectively "Navient"). Compl., ¶¶ 24-25.

In May 2010, Mr. Teran filed a petition for Chapter 7 bankruptcy in this Court, Case No. 10-31718. He listed the Bar Study Loan in Schedule F of his bankruptcy petition, in the amount of $15,752.00. *Id*., at ¶¶ 26-27. Although Defendants received notice of this bankruptcy petition, they did not file an adversary contesting the dischargeability of Bar Study Loan; nor did Mr. Teran reaffirm the debt. *Id*., at ¶¶ 28-29, 35. Mr. Teran obtained his bankruptcy discharge on August 17, 2010. The Bar Study Loan was not excepted from discharge because it does not fall within the scope of section 523(a)(8). *Id*., at ¶¶ 30-33.

After Mr. Teran's discharge, Defendants continued to seek to collect the debt as if it had not been discharged. For example, they sent regular billing statements to Mr. Teran seeking payment, and they even reported the debt to the credit bureaus. *Id*., at ¶¶ 36-38. Based on Defendants' misleading course of conduct, including its credit reporting activities, Mr. Teran continued to make payments on this debt, believing Defendants' false and misleading statements that the loan had not been discharged. *Id*., at ¶¶ 36, 41, 52-54, 76, 96.

Defendants have no objectively reasonable basis for concluding that loans such as the Bar Study Loan were nondischargeable. *Id*., at ¶¶ 18, 77. Yet, ever since the enactment of BAPCPA, they have consistently acted as if such loans survived the bankruptcy discharge. As a result, Defendants have taken advantage of countless consumer bankruptcy debtors in the Northern District of California and misled them into making payments on discharged debts. *Id*., at ¶¶ 12-14, 19-20.

The instant adversary proceeding was commenced by Mr. Teran, on behalf of himself and those similarly situated who have Consumer Education Loans, on August 31, 2020. In his Complaint, Mr. Teran asserts a dischargeability cause of action under section 523(a)(8) of the Bankruptcy Code. *Id*., at ¶¶ 81-82. He further seeks contempt sanctions and remedies for

Defendants' conduct in continuing to collect payments on these discharged consumer debts. *Id.*, at ¶¶ 73-80. Notably, a crucial part of Defendants' contempt consists of their continued credit reporting of the discharged Consumer Education Loans. *Id.*, at ¶ 76. Finally, Mr. Teran also asserts a cause of action under the CCRAA for its credit reporting of the discharged Consumer Education Loans. *Id.*, at ¶¶ 83-97.

In their Answer, Defendants vigorously dispute the dischargeability of Mr. Teran's Bar Study Loan, asserting that it falls under the section 523(a)(3)(B) exception. Defendants' Answer, ¶¶ 31-33; Affirmative Defenses ¶¶ 9-10. In violation of Fed. R. Bankr. P. 7012(b), Defendants fail to indicate in their answer whether they consent, or do not consent, to entry of a final judgment by the bankruptcy court.

## III. <u>ARGUMENT</u>

This Court has clear jurisdiction over Mr. Teran's CCRAA claim – whether as a core matter, or at a minimum, as part of its supplemental jurisdiction. With that jurisdiction, this Court should not permit Defendants to send part of the case to arbitration – an outcome that would conflict with the Bankruptcy Code, and significantly hamper the bankruptcy court's ability to enforce its own orders.

### A. <u>The Court Has Jurisdiction of the CCRAA Claim</u>

#### 1. The CCRAA Claim is a Core Matter

As a threshold matter, in the context of Mr. Teran's Complaint, even his CCRAA claim is a core matter.

"In general, a 'core proceeding' in bankruptcy is one that invokes a substantive right provided by title 11 or a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Gruntz v. Cty. of L.A. (In re Gruntz)*, 202 F.3d 1074, 1081 (9th Cir. 2000) (internal quotations and citations omitted); *Stern v. Marshall*, 564 U.S. 462, 476 (2011) (defining core proceedings as those defined core proceedings as "those that arise in a bankruptcy case or under Title 11."). A proceeding is "non-core" if it "do[es] not depend on the Bankruptcy Code for

3

[its] existence and [it] could proceed in another court." *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004). A non-exhaustive list of core-proceedings is found at section 157(b)(2), which includes determinations as to the dischargeability of particular debts, and proceedings affecting the adjustment of the debtor-creditor relationship. 11 U.S.C. § 157(b)(2)(I), (O).

"The court looks at both the form and the substance of the proceeding in making its determination whether a proceeding is a core or non-core proceeding." *Sanders Confectionary Products, Inc. v. Heller Financial, Inc*., 973 F.2d 474, 483 (6th Cir. 1992). Thus, the fact that a particular claim exists under state law does not automatically render it non-core. *See Cont'l Ins. Co. v. Thorpe Insulation Co.*, 671 F.3d 1011, 1021 (9th Cir. 2012) (rejecting argument that a "'state law breach of contract claim'" is non-core because 'it is based on state law and arose outside of and independent of Thorpe's bankruptcy.'").

Accordingly, when consumer claims are so intertwined with dischargeability or contempt proceedings, courts have found the pendant claims also constitute "core" matters. *See e.g.*, *Burns v. LTD Acquisitions, LLC*, Nos. 08-34079, 09-3449, 2010 WL 642312, at *4 (Bankr. S.D. Tex. Feb. 18, 2010) ("a claim for damages for violation of the § 524 injunction is a core matter and claims for damages under state and federal law is also a core matter when they are based on the same facts as the claim for violation of the § 524 injunction."); *Zimmerli v. Ocwen Loan Servicing, LLC*, 432 B.R. 238, 243 (Bankr. N.D. Tex. 2010) (state and federal claims, such as the Fair Debt Collection Practices Act ("FDCPA") and negligence, were still core claims because the thrust of the complaint was the "violations of the Bankruptcy Code and Rules for actions taken by Ocwen following the Plaintiffs' bankruptcy case."). For example, in the case of *Walker v. Got'cha Towing & Recovery, LLC*, the plaintiff-debtor alleged state law claims for conversion and trespass, along with a section 362(k) claim, arising out of the creditor's violations of the automatic stay in repossessing his vehicle. The court found all claims to be core, reasoning:

> The only reason offered in the Complaint as to why the Defendants'
> alleged repossession could be wrongful, unlawful, or inconsistent

4

with the rights of the Debtor is that the repossession was inconsistent with the Debtor's rights under the automatic stay imposed by § 362, not that the Debtor was current on his loan to GFC. Accordingly, the Court cannot see (indeed none of the parties have even attempted to articulate) how the Debtor can maintain these claims without invoking § 362.

Accordingly, because the Debtor's claims hinge on the adjudication of a right created by federal bankruptcy law and could have only arisen in the context of his bankruptcy case, the allegations in the Complaint are core.

*Walker v. Got'cha Towing & Recovery, LLC*, 551 B.R. 679, 687-88 (Bankr. M.D. Ga. 2016).

Here, Mr. Teran's CCRAA claim is one that invokes a "substantive right created by federal bankruptcy law" – namely, the discharge. The threshold question in determining whether Defendants' credit reporting was "incomplete or inaccurate" under Cal. Civil Code section 1785.25(a) is whether Plaintiff's Bar Study Loan was discharged – a legal question disputed by Defendants. *See* Defendants' Answer, ¶¶ 31-33; Affirmative Defenses ¶¶ 9-10. If the loan were discharged, and Defendants were enjoined from further collection on it, then it necessarily follows that the continued credit reporting of Plaintiff's payment activity was "incomplete or inaccurate" under Cal. Civil Code section 1785.25(a).[1] If the loan were not discharged, then it would necessarily follow that Defendants' continued credit reporting of Plaintiff's payment activity is accurate, and his CCRAA claim would fail. In this context, as in *Walker*, *Zimmerli*, and *Burns*,

---

[1]      If Defendants happen to reply that the interplay between the CCRAA claim and the Bankruptcy Code preempts Mr. Teran's CCRAA claim under *Walls v. Wells Fargo*, 276 F.3d 502 (9th Cir. 2002), then it should be noted that *Walls* has been interpreted narrowly, and courts have thus permitted claims related to post-discharge credit reporting. *See e.g.*, *King v. Bank of Am., N.A.*, No. C-12-04168 JCS, 2012 WL 4685993, at *9-10 (N.D. Cal. Oct. 1, 2012) (*Walls* did not preempt CCRAA claim regarding the creditor's "failure to correctly report Plaintiff's credit information," nor did it preempt other credit reporting claims under the FCRA or UCL) (cases cited); *see also Carter v. Richland Holdings, Inc*, No. 2:16-cv-02967-RFB-VCF, 2019 WL 4773806, at *4 (D. Nev. Sep. 30, 2019) *appeal dismissed*, No. 19-17174, 2020 WL 6326344 (9th Cir. Aug. 11, 2020) (distinguishing *Walls* in FDCPA claim regarding credit reporting of a discharged debt because "[r]eporting a debt that has been discharged to a consumer reporting agency is not *necessarily* collection activity").

5

the legal reality is that Mr. Teran cannot maintain his CCRAA claim without invoking section 523(a)(8) (which Defendants have disputed) and the bankruptcy discharge injunction.

As a result, his CCRAA claim is a core matter, over which the bankruptcy court unquestionably has jurisdiction.

### 2. At a Minimum, the Bankruptcy Court Has Supplemental Jurisdiction Over the CCRAA Claim.

But even if the claim did not fall under this Court's core jurisdiction, it would still be a non-core matter over which the Court has jurisdiction.

"A bankruptcy court's 'related to' jurisdiction is very broad, including nearly every matter directly or indirectly related to the bankruptcy." *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868 (9th Cir. 2005) (internal quotation marks omitted); *see also Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Courtyard)*, 729 F.3d 1279, 1287 (9th Cir. 2013). This "'related to' jurisdiction also includes the district court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 'over all other claims that are so related to claims in the action within (the court's) original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'" *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 869 (9th Cir. 2005).

Defendants' own authority recognizes how firmly established Ninth Circuit law is on a bankruptcy court's exercise of supplemental jurisdiction under 28 U.S.C. § 1367. *See Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194-95 (9th Cir. 2005);[2] *see also Kieslich v. Kieslich (In re Kieslich)*, 258 F.3d 968 (9th Cir. 2001); *Davis v. Courington (In re Davis)*, 177

---

[2]    Defendants cite Pegasus Gold for the "close nexus test," but the *Pegasus Gold* court expressly adopted that test for another context: post-confirmation Chapter 13 claims, which is why its precise application, as articulated by Defendants, is an awkward fit here. *See Pegasus Gold*, 394 F.3d at 1193-1194.  However, even the *Pacor* test upon which the "close nexus test" is based recognizes "related to" jurisdiction if the outcome of the proceeding "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* at 1193 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).  As described below, every aspect of this proceeding affects the debtor's rights, liabilities, options, or freedom of action.

6

B.R. 907, 912 (9th Cir. BAP 1995)("The bankruptcy court had supplemental jurisdiction over Appellant's state law claims," citing 28 U.S.C. § 1367); *Pierce v. Conseco Fin. Serv. Corp. (In re Lockridge)*, 303 B.R. 449, 455 (Bankr. D. Ariz. 2003) ("There has been some debate whether § 1367 jurisdiction is exercisable by bankruptcy courts and distinguished from district courts. But the Ninth Circuit has clearly permitted it."). As the *Pegasus Gold* court explained,

> The remaining claims have a much more tangential relationship to the underlying bankruptcy proceeding. Nonetheless, the bankruptcy court could properly exercise supplemental jurisdiction over these claims. Pursuant to 28 U.S.C. § 1367, district courts have "supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." This circuit has applied § 1367 to bankruptcy claims, even when the subject matter jurisdiction is based on "related to" bankruptcy jurisdiction. *See Sec. Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1008 n.5 (9th Cir. 1997). Here, the remaining claims involve a "common nucleus of operative facts" and would ordinarily be expected to be resolved in one judicial proceeding, and therefore the bankruptcy court has supplemental jurisdiction over the remaining claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

*Pegasus Gold*, 394 F.3d at 1194-95. Courts have exercised this supplemental jurisdiction over state law claims that are "factually intertwined and legally dependent on [a debtor's] bankruptcy claims." *See Greenstein v. Wells Fargo Bank, N.A. (In re Greenstein)*, 576 B.R. 139, 158 (Bankr. C.D. Cal. 2017). The *Greenstein* debtor, for example, alleged multiple bankruptcy causes of action under section 362 of the Code, as well as multiple state law claims, such as emotional distress and personal injury, all of which "depend[ed]—to one degree or another—on the validity of Greenstein's bankruptcy causes of action." *Id*. Citing its supplemental jurisdiction authority under 28 U.S.C. § 1367, the *Greenstein* court concluded it "has the constitutional authority to enter final judgment on these [state law] causes of action because they are factually intertwined and legally dependent on Greenstein's bankruptcy claims." *Id*.

7

The bankruptcy court's authority to exercise supplemental jurisdiction over claims is well-established in this jurisdiction. *See e.g.*, *Davis v. Courington*, 177 B.R. 907, 912 (B.A.P. 9th Cir. 1995) (holding that, even after dismissal of the debtor's chapter 13 bankruptcy, "if Appellant's state law claims are sufficiently related to the federal claims, the bankruptcy court had jurisdiction over those claims under the doctrine of supplemental jurisdiction."); *In re Eads*, 135 B.R. 387, 393-96 (Bankr. E.D. Cal. 1991) (exercising supplemental jurisdiction over third-party claims); *Wireman v. Caracciolo*, Nos. 93-05609-H11, 05-90348-H11, 2006 WL 6602238, at *2-5 (Bankr. S.D. Cal. July 19, 2006). Bankruptcy courts exercise this supplemental jurisdiction most frequently in the context of entering money judgments in nondischargeability proceedings. *See e.g.*, *Deitz v. Ford*, 469 B.R. 11, 28 (B.A.P. 9th Cir. 2012) (Markell, J., concurring) (noting "[i]t would be a waste of judicial resources to require a second trial on the same facts, especially since the bankruptcy court's determination of the essential nucleus of facts would likely have issue preclusive effect on whatever court ultimately liquidated the claim."), *aff'd by* 760 F.3d 1038 (9th Cir. 2014).

Mr. Teran's claim under the CCRAA clearly involves a "common nucleus of operative facts" as his bankruptcy causes of action. As described above, his CCRAA claim concerns Defendants' "incomplete or inaccurate" credit reporting of his discharged debt, a legal question turning entirely on the dischargeability question. Furthermore, many – if not all – of the facts underlying the CCRAA claim will overlap with the facts underlying Mr. Teran's request to hold Defendants in contempt for their violations of the discharge injunction, including Defendants' use of the credit reporting as a tool for collecting the discharged debt and Defendants' intent in doing so. These claims all involve such intertwined facts that they "would ordinarily be expected to be resolved in one judicial proceeding." *See Pegasus Gold*, 394 F.3d at 1195.

The cases cited by Defendants do not change this analysis. First, not even one of Defendants' authorities addresses the issue here, where the parties dispute the dischargeability of the debt at issue. *See* Defendants' Answer, ¶¶ 31-33; Affirmative Defenses ¶¶ 9-10. Predictably,

it is not often that a section 523 claim exists alongside a consumer claim such as the CCRAA, as the discharge of a consumer debt is generally a straightforward matter that cannot be questioned. That *should* be the case here, as it is so clear that Defendants' Consumer Education Loans are dischargeable. *McDaniel v. Navient Solutions, LLC*, 973 F.3d 1083, 1095-1104 (10th Cir. 2020); *accord*, *Crocker v. Navient Solutions, LLC*, 941 F.3d 206, 218-224 (5th Cir. 2019). But for almost 16 years, Defendants have attempted to muddy the waters so much on the dischargeability of these consumer loans – and even still deny the dischargeability of the loans here – that they have presented a rather unique circumstance. Compl. ¶¶ 2, 18-23, 43, 76-77.

Second, the vast majority of Defendants' authority resides outside the Ninth Circuit, where the bankruptcy court's exercise of supplemental jurisdiction is less established. At least two of Defendants' cases categorically reject the Ninth Circuit's approach to supplemental jurisdiction. *See Goldstein v. Marine Midland Bank, N.A.*, 201 B.R. 1, 7 n. 6 (Bankr. D. Me. 1996); *Close v. Edison*, Nos. 93-17145DWS, 03-0153, 2003 WL 22697825, at *2 (Bankr. E.D. Pa. Oct. 29, 2003) ("Unlike the district courts, bankruptcy courts are not empowered with supplemental jurisdiction.").[3] The other cases out-of-circuit cases do not even address the question of supplemental jurisdiction.[4] Here, because of the binding authority of *Pegasus Gold*, these cases are not even persuasive.

Finally, even those cases cited by Defendants from the Ninth Circuit present an entirely different set of circumstances. For example, in *Hye Rhee Kong*, the court declined to exercise

[3] Perhaps illustrating how unsettled a bankruptcy court's exercise of supplemental jurisdiction is in other jurisdictions, especially in the First Circuit, one of the cases cited by Defendants dismissed the state law claims specifically because it dismissed the federal claims, and thus lost supplemental jurisdiction over the pendant state law claims. *Reyes v. FCC Nat'l Bank*, 238 B.R. 507, 516 (Bankr. D.R.I. 1999) ("Having rejected plaintiff's federal claims, the court has no jurisdiction to address her supplemental state law claims.").

[4] This includes the following plethora of cases cited by Defendants: *Csondor v. Weinstein, Treiger & Riley, P.S.*, 309 B.R. 124 (Bankr. E.D. Pa. 2004); *Steele v. Ocwen Fed. Bank*, 258 B.R. 319 (Bankr. D.N.H. 2001); *Buckingham v. Baptist Mem'l Hosp.-Golden Triangle*, 283 B.R. 691 (N.D. Miss. 2002); *Vogt v. Dynamic Recovery Servs.*, 257 B.R. 65 (Bankr. D. Colo. 2000).

9

supplemental jurisdiction because the statute did not apply to the *federal* claims at issue in that case, including the FDCPA and the Fair Credit Reporting Act ("FCRA"). *Hye Rhee Kong v. Kelkris Assocs.*, Nos. 08-50127-SLJ, 13-5119-SLJ, 2013 WL 6923063, at *3 (Bankr. N.D. Cal. Nov. 15, 2013). By contrast here, supplemental jurisdiction targets state law claims in particular. *See* 28 U.S.C. § 1367. Second, the *Kasim* case involved stand-alone claims under the FCRA against non-creditor consumer reporting agencies. *Kasim v. Equifax Info. Servs., Ltd. Liab. Co.*, No. 08-627-HA, 2008 WL 4858267 (D. Or. Nov. 10, 2008). *Kasim* apparently did not implicate any contempt or dischargeability issues upon which supplemental jurisdiction could be based, especially given that the defendants were not even creditors of the plaintiff-debtor.

Notably, even though Mr. Teran raised supplemental jurisdiction as an alternative basis for jurisdiction in his complaint, *see* Compl. ¶ 5, Defendants' motion is entirely silent on the topic. At a minimum, because this case is in the Ninth Circuit, it cannot be disputed that supplemental jurisdiction exists over the CCRAA claim.

## B. <u>This Court Should Reject Defendants' Attempt to Arbitrate Mr. Teran's CCRAA Claim</u>

Regardless of the basis for this Court's jurisdiction over Mr. Teran's CCRAA claim, this Court should deny Defendants' motion to compel arbitration of the claim. The CCRAA claim is entirely derivative of the dischargeability cause of action. Splitting the claim off to arbitration would thus require a party outside the bankruptcy court to chime in on the dischargeability question already pending here, and it would needlessly duplicate the proceedings.

The Federal Arbitration Act's preference for arbitration "is not absolute." *Anderson v. Credit One Bank, N.A.*, 884 F.3d 382, 388 (2d Cir. 2018). "Like any statutory directive, the Arbitration Act's mandate may be overridden by a contrary congressional command." *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Applying the *McMahon* standard to the context of bankruptcy, it is well-established that a "bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision [] if arbitration would conflict

10

with the underlying purposes of the Bankruptcy Code." *Thorpe*, 671 F.3d at 1020-21; *In re Eber*, 687 F.3d 1123, 1129 (9th Cir. 2012). A claim's classification as core, versus non-core, may be relevant to that inquiry, but it is not dispositive. *In re Thorpe*, 671 F.3d at 1021.

As the Court is no doubt aware, the oft-cited principal purpose of the Bankruptcy Code is to grant a "fresh start" to the honest but unfortunate debtor. *Harris v. Viegelahn*, 575 U.S. 510, 135 S. Ct. 1829, 1838 (2015); *Kokoszka v. Belford*, 417 U.S. 642, 645 (1974); *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) (bankruptcy provides "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt."). The discharge injunction is "the paramount tool used to effectuate" a debtor's fresh start. *Anderson*, 884 F.3d at 390; *see also Cal. Dep't of Health Servs. v. Jensen*, 995 F.2d 925, 929-30 (9th Cir. 1993). Thus, "[t]he successful discharge of debt is not merely important to the Bankruptcy Code, it is its principal goal." *Anderson*, 884 F.3d at 386.

Given that a debtor's discharge is such a fundamental feature of the Bankruptcy Code, courts routinely find that "[a]n action to enforce [the discharge] implicates an important bankruptcy policy, the ability of a bankruptcy court to enforce its own orders, such that requiring arbitration 'would be inconsistent with the Bankruptcy Code.'" *Henry v. Educ. Fin. Serv.*, 944 F.3d 587, 591 (5th Cir. 2019). For example, as in this case, the *Henry* case involved a creditor's post-discharge collection, and credit reporting, of a student loan debt that was outside the scope of section 523(a)(8). The consumer in *Henry* initiated a class action, alleging violations of the discharge injunction. The Fifth Circuit refused to enforce the arbitration agreement in that case, noting that a "debtor's right to be free from collection efforts for discharged debts is a creature of the Bankruptcy Code," and arbitration of those claims therefore conflicted with the Bankruptcy Code. *Id.*; *see also Belton v. GE Capital Retail Bank,* 961 F.3d 612, 617 (2d Cir. 2020) (the Code

is in "inherent conflict" with arbitration);[5] *Anderson*, 884 F.3d at 390-391 (no arbitration of class claims asserting violation of the discharge injunction by a creditor's continued collection, and credit reporting, of the debt); *Rushing v. Green Tree Servicing, LLC*, 443 B.R. 85, 96-98 (Bankr. E.D. Tex. 2010) (same result with claims under section 362(k)); *Grant v. Cole*, 281 B.R. 721, 724 (Bankr. S.D. Ala. 2000) ("the arbitration clause cannot require arbitration of the claims alleging violation of §§ 362 and 524 of the Code.").

But it is not just bankruptcy causes of action that courts decline to arbitrate. A majority of courts refuse to compel pendant state law claims attached to allegations of a creditor's continued collection of a discharged debt. In *Zimmerli*, the plaintiff-debtor alleged violations by the creditor of the automatic stay and discharge injunction, which also gave rise to at least eight different causes of action under state and federal law (such as the FDCPA, the Real Estate Settlement Procedures Act, and negligence). 432 B.R. at 242. The *Zimmerli* court refused to single out those non-bankruptcy causes of action for arbitration, recognizing their interdependence on the bankruptcy claims:

> Although not every cause of action asserted by the Plaintiffs arises directly from the Bankruptcy Code or Rules, the thrust of the Adversary is that Ocwen violated bankruptcy rules and orders in its attempt to collect additional fees in violation of an agreed order, and in violation of the principle that parties must adhere to the automatic stay and the terms of a Chapter 13 Plan upon confirmation.

*Zimmerli*, 432 B.R. at 243. Given the general thrust of the adversary was rooted in bankruptcy – even the non-bankruptcy causes of action – the *Zimmerli* Court then concluded it would conflict with the Bankruptcy Code to send any of the claims to arbitration. *Id.*, at 244 ("[c]entralized resolution of the predominate bankruptcy causes of action raised by Plaintiffs and the Court's

---

[5]     Defendants rely on an earlier district court decision in *Belton* for the opposite conclusion. Def. Mem. at 16, n. 4. However, that decision was subsequently reconsidered and vacated by the district court, *In re Belton*, 2019 WL 1017293 (S.D.N.Y. March 4, 2019*)*, which was then affirmed by the Second Circuit based on its earlier *Anderson* decision. 961 F.3d at 617.

12

power to ensure obedience to its own orders weigh in favor of denying enforcement of the Arbitration Agreement."); *see also Chavez v. Get It Now, LLC*, No. 17-1490 (DWF/HB), 2018 WL 461130, at *3 (D. Minn. Jan. 16, 2018) (denying motion to compel arbitration in a case that involved the discharge injunction, as well as other claims such as the FCRA); *Walker*, 551 B.R. at 694-695 (denying arbitration for section 362/conversion claims).

Some courts have even declined to enforce arbitration agreements on consumer claims asserting the continued collection of discharged debt, even in the absence of parallel bankruptcy causes of action. *See e.g.*, *Harrier v. Verizon Wireless Personal Communications LP*, 903 F. Supp. 2d 1281, 1283 (M.D. Fla. 2012) (denying motion to compel arbitration when plaintiff-debtors had "received numerous calls from the defendant seeking payment of a discharged debt"); *Jernstad v. Green Tree Servicing, LLC*, No. 11 C 7974, 2012 WL 8169889 at *2 (N.D. Ill. Aug. 2, 2012) (refusing to compel arbitration of FDCPA claim, finding that one of the Bankruptcy Code's primary purposes is "to give debtors a fresh start," which the creditor frustrated by making several attempts to collect the discharged debt).

Every single case relied upon by Defendant on this point recognizes that a creditor's continued collection of a discharged debt may be reason for a bankruptcy court to deny enforcement of an arbitration agreement. *See Jenkins v. Fifth Third Bank*, No. 1:16-cv-976, 2017 WL 3605357, at *4 (S.D. Ohio Aug. 22, 2017) ("courts have found arbitration agreements unenforceable in cases where the debtor alleges the defendant attempted to collect discharged debt, thereby frustrating the "fresh start" provided in bankruptcy... However, courts have enforced arbitration agreements, post-discharge, when the debtor's claims are unrelated to the creditor's attempt to collect the discharged debt."); *Gadomski v. Wells Fargo Bank N.A.*, 281 F. Supp. 3d 1015, 1019 (E.D. Cal. 2017) ("Here, Plaintiff's claims relate solely to Defendant's alleged inaccurate reporting of debts as "charged off," rather than "discharged in bankruptcy," and not Defendant's attempts to collect a discharged debt."); *Mann v. Equifax Info. Servs.*, C.A. No. 12-cv-14097, 2013 WL 3814257, at *9 (E.D. Mich. May 24, 2013) (stressing that the plaintiff's claims

"do not relate to the collection of a debt"); *Allen v. Equifax Info. Servs., LLC*, C.A. No. 3:17-cv-211-DJH-CHL, 2017 WL 5762414, at *5 (W.D. Ky. Nov. 28, 2017) ("Credit One's actions, however, are not the sort of explicit attempt to collect a discharged debt that were at issue in *Jernstad*."). This important distinction exists because "attempting to collect discharged debt elevates the creditor-debtor dispute and conflicts with the Bankruptcy's Codes purpose of giving debtors a fresh start." *Chavez*, 2018 WL 461130, at *2 (noting the distinction between *Mann* and other cases where arbitration was inappropriate).

Further cutting against arbitration of such claims is the unique role bankruptcy judges have in protecting the integrity of the bankruptcy system. As the *Walker* Court also explained:

> The bankruptcy court is a specialized court that has the knowledge and incentive to protect the bankruptcy system. H.R. Rep. No. 95-595, at 20, reprinted in 1978 U.S.C.C.A.N. at 5980 ("In bankruptcy, specialization is necessary to the functioning of the system."). Congress has set up the bankruptcy system in a manner that ensures that core matters, which "typically involve matters in which the interests of the federal bankruptcy system are most critical," such as the automatic stay, are generally determined by the specialized bankruptcy court rather than a generalist forum. In doing so, Congress recognized the bankruptcy court's experience, and, more importantly, vested interest, in ruling in a manner that makes the bankruptcy system functional.
>
> …
>
> [N]ot all core matters implicate these concerns equally. However, these considerations are nonetheless important, and when placed on a scale, determinations regarding the automatic stay implicate them heavily. Bankruptcy courts deal with stay violations on a regular basis and have the opportunity to observe patterns by creditors within an industry. In ruling, the bankruptcy court, though obviously mindful of the particular case, has the good of the entire system in view. This kind of perspective cannot be expected from an arbitrator.

*Walker*, 551 B.R. at 693-94 (internal quotations and citations omitted). The rationale from *Walker* is equally applicable, if not even more so, with matters relating to the discharge injunction – especially considering that the automatic stay is generally a means to the end goal of discharge.

14

The bankruptcy court simply has a perspective over claims involving the discharge that no arbitrator can have.

Against this background of cases, it is clear that the Court not only has the discretion to deny enforcement of the arbitration agreement, but that it should exercise that discretion. First, it cannot be disputed that Defendants' continued credit reporting is part of its ongoing collection efforts regarding this particular debt. That fact alone puts this case more in line with *Zimmerli* and *Chavez*, than with the *Mann* and *Gadomski* lines of authority relied upon by Defendants.

Second, in this instance, Mr. Teran's CCRAA claim does not exist in a vacuum but is founded upon questions arising under Title 11. Common to all claims raised by Mr. Teran – including his CCRAA claim – are two key issues that are at the heart of the Bankruptcy Code: (1) was Mr. Teran's Bar Study Loan discharged, and (2) if so, did Defendants' continued collection and credit reporting violate the discharge injunction? Mr. Teran's claim under the CCRAA is entirely dependent on answering both of those questions. If the answer to both questions is "yes," then Mr. Teran has shown that Defendants' continued credit reporting was "incomplete or inaccurate" per Cal. Civil Code section 1785.25(a). If the answer to those questions is "no," then Mr. Teran loses his CCRAA claim.

Third, it is also notable that, under the allegations in Mr. Teran's complaint, Defendants have enjoyed the remarkable ability to escape accountability for its post-discharge practices ever since BAPCPA's enactment. The sheer scale of Defendants' disregard of the bankruptcy court's discharge orders highlights the systemic nature of Mr. Teran's claims. As the *Walker* court succinctly articulated, the bankruptcy court can adjudicate these systemic issues, even the CCRAA claim, with "the good of the entire system in view… This kind of perspective cannot be expected from an arbitrator." *Walker*, 551 B.R. at 694.

Finally, if Mr. Teran's CCRAA claim were sent to arbitration, then someone else would have to answer these threshold questions regarding the effects of the discharge injunction on the loan. Delegating such important bankruptcy questions to an arbitrator is enough of a conflict to

15

deny enforcement of the arbitration agreement. *See Henry*, 944 F.3d at 591; *Anderson*, 884 F.3d at 390-391. But even more troubling is that an arbitrator's decision on this threshold issue within the CCRAA claim could have a collateral estoppel effect on the dischargeability and contempt issues that may still be pending in this Court. *See Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992) (an arbitration decision can have *res judicata* or collateral estoppel effect). Thus, as a practical matter, if this Court were to send even this one claim to arbitration, Defendants could use those proceedings to undermine this Court's authority as to the rest of the case, including the section 523(a)(8) proceeding and contempt claims in Counts One and Two. Compl. ¶¶ 73-82. It is difficult to imagine any outcome more in conflict with the Bankruptcy Code.

Given that Mr. Teran's CCRAA claim is derivative of the discharge determination, compelling arbitration of the claim would be in direct conflict with the Bankruptcy Code. As a result, This Court should decide Mr. Teran's case in its entirety, including the CCRAA claim.

## IV. <u>CONCLUSION</u>

Mr. Teran's CCRAA claim is entirely derivative of his bankruptcy causes of action. As a result, this Court not only has jurisdiction to entertain the CCRAA claim, but it would create a significant conflict with the Bankruptcy Code if that claim were severed off into arbitration. Defendants' motion to dismiss and/or compel arbitration of Mr. Teran's CCRAA claim should therefore be denied in its entirety.

Respectfully submitted,

Dated:    February 12, 2021    **OSCAR D. TERAN**,
by his attorneys,

*/s/ James Michel*
James Michel
attyjmichel@gmail.com
**THE LAW OFFICE OF JAMES MICHEL**
2912 Diamond St #373
San Francisco, CA 94131-3208
Tel: (415) 239-4949

16

Erika A. Heath
**FRANCIS MAILMAN SOUMILAS, P.C.**
369 Pine Street, Suite 410
San Francisco, CA 94104
Tel: 628-246-1352
Fax: 215-940-8000
eheath@consumerlawfirm.com

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis*
John Soumilas*
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff and the Class*