

**Signed and Filed: February 15, 2022**

_____
**DENNIS MONTALI
U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re </br></br>OSCAR D. TERAN, </br></br>        Debtor. | Bankruptcy Case </br>No. 10-31718-DM </br></br>Chapter 7 |
| OSCAR D. TERAN, </br></br>        Plaintiff, </br></br>v. </br></br>NAVIENT SOLUTIONS, LCC; NAVIENT CREDIT FINANCE CORPORATION </br></br>        Defendants. | Adversary Proceeding </br>No. 20-03075-DM </br></br></br>Date:  February 25, 2022 </br>Time:  11:00 AM </br>Via Tele/Videoconference </br>www.canb.uscourts.gov/calendars |

**MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION AND PROCEDURAL HISTORY**

      Plaintiff Oscar D. Teran ("Teran") was a law student at UC Hastings from 2005 until 2008. In his final year of law school, he took out a private bar study loan ("Bar Loan") from Sallie Mae's LAWLOANS program to cover the cost of a BarBri bar prep course and living expenses while Teran studied for the Texas bar

exam. The Bar Loan was eventually assigned to Defendant Navient Credit Finance Corporation and serviced by Defendant Navient Solutions, LLC (together, "Navient").

In May 2010, Teran filed for chapter 7 bankruptcy in this court, and listed the Bar Loan among his unsecured debts. He received a bankruptcy discharge in August 2010. In August 2020, Teran initiated the above-captioned adversary proceeding on behalf of himself and a proposed class of similarly situated debtors against Navient ("Complaint") (Dkt. 1), alleging that Navient had been improperly collecting on Teran's discharged Bar Loan and reporting the Bar Loan as not discharged to credit reporting agencies in violation of state consumer protection law.

Navient filed a *Motion to Dismiss Count Three of Plaintiff's Complaint, or Alternatively, Compel Arbitration* ("MTD") (Dkt. 20), which Teran opposed ("Opposition to MTD") (Dkt. 24). The MTD and the Opposition to MTD focused on whether the portion of the Complaint alleging wrongful credit reporting was outside the court's jurisdiction and thus should be dismissed or submitted to arbitration.

At a hearing on the MTD, the court ruled that as a threshold matter there first must be a determination as to whether Teran's Bar Loan is nondischargeable, because the question of dischargeability is critical to all parts of the proposed class action. The court deferred a ruling and directed the parties to meet and confer to set a schedule on cross-motions for summary judgment.

Pursuant to the schedule developed by the parties, Navient filed a *Defendant's Motion for Summary Judgment* ("MSJ") (Dkt. 34) seeking a determination that the Bar Loan was excepted from Teran's bankruptcy discharge pursuant to 11 U.S.C. § 523(a)(8)(A)(i) and/or 11 U.S.C. § 523(a)(8)(B). Teran filed an *Opposition to Defendant's Motion For Summary Judgment* (Dkt. 41) but did not file a cross-motion for summary judgment. The court held a hearing on the MSJ, and directed to parties to file further briefing, after which the court took the matter under submission.

The court concludes that there is a material factual dispute as to whether the Bar Loan was made under a program that is excepted from discharge under § 523(a)(8)(A)(i), and summary judgment as to this subsection must be denied. The court further concludes that Bar Loan does not fall within the type of loan contemplated under § 523(a)(8)(B) as a matter of law, and summary judgment as to this subsection in favor of Teran is appropriate.

**II. STANDARD FOR SUMMARY JUDGMENT**

On a motion for summary judgment, the court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact as to any claim, part of claim, defense, or part of defense. *Simo v. Union of Needletrades, Indus. & Textile Employees,* 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. It is within a court's discretion to grant summary judgment in favor of the nonmovant. Fed. R. Civ. P. 56(f)(1); *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (court may enter summary judgment for nonmovant if the movant had "full and fair opportunity to ventilate the issues involved in the matter" and the issues adjudicated were present in the original motion.) (citations omitted).

## III. **ANALYSIS**

### A. **The LAWLOANS Program**

According to Navient, LAWLOANS was a program set up to be a "one-stop source of funding" through which both private loans and federally funded Stafford loans and Grad PLUS loans (together, "Stafford loans" for convenience) were made available to student borrowers through a single application. The program was established by a Multiparty Agreement between four private entities and one nonprofit entity in 1989, which was later amended at least four times between 1992 and 1995. (Box Decl., Dkt. 36). The Multiparty Agreement and subsequent Amendments presented by Navient show that, at least until 1995, there was an agreement between four for-profit entities (including Sallie Mae) and one nonprofit entity to advertise, originate, service, and guarantee both private and federal loans. *Id*. In particular, the Multiparty Agreement and Amendments show that the role of the sole participating nonprofit, first the Higher Education Assistance Foundation and later Northstar Guarantee Inc., was critical to the origination, guarantee, reinsurance,

and consolidation of Stafford loans. Navient concedes that it cannot produce any Amendment of the Multiparty Agreement beyond the 1995 Amendment. Navient contends that the LAWLOANS program was still making federal Stafford loans in 2008, while Teran disputes this claim.

B. **Stafford Loans**

At the time Teran obtained the private Bar Loan from the LAWLOANS program in 2008, federal student loans including Stafford loans were made under the Federal Family Education Loan Program ("FFEL"). Under FFEL, private lenders would originate student loans subject to specific eligibility criteria and set interest rates. Those loans were then guaranteed by state or nonprofit agencies[1]. Those nonprofit guarantors were subsequently "reimbursed by the federal government for all or part of the insurance claims they pay to lenders." *See Federal Family Education Loan Programs: Federal Stafford Loans, Federal PLUS, and Federal Consolidation Loans-Introduction* (1998)[2].

The legal structure of Stafford loans under FFEL meant that it was impossible for a lender to have made a Stafford loan to a borrower without the participation of a nonprofit entity. When referencing Stafford loans made prior to 2010, the involvement

---

[1] Because only nonprofit entities are relevant to this Order, the court will hereinafter only reference nonprofit entities as guarantors of FFEL loans.

[2] Available at https://fsapartners.ed.gov/knowledge-center/library/handbooks-manuals-or-guides/1998-06-12/federal-family-education-loan-programs-federal-stafford-loans-federal-plus-and-federal-consolidation-loan-programs-introduction

-5-

of both a nonprofit and the government was essential to the making of those loans.

### C. 11 U.S.C. § 523(a)(8)(A)(i)

Generally, § 523(a)(8) excepts certain types of student loans from the bankruptcy discharge unless a debtor can make a showing of an undue hardship resulting in an inability to repay the loans. No hardship on the part of Teran is at issue here, only whether Teran's Bar Loan is the type of loan contemplated by any subsection of § 523(a)(8).

Section 523(a)(8)(A)(i) (hereafter referred to as the "Program Section") excepts from discharge "an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution."

There is no dispute that the Bar Loan is generally an "educational loan," a term for which there is no set definition. That the loan was meant at least in part for a bar study course is enough, and an "educational loan" need not meet the rigorous standards of a "qualified education loan" contemplated in § 523(a)(8)(B) and discussed below. *See In re Moon*, 610 B.R. 616, 623-24 (Bankr. E.D. Wis. 2019).

Navient concedes that the Bar Loan is a wholly private loan, with no hint of government or nonprofit funding. Instead, Navient argues that because LAWLOANS was a program through which private loans as well as Stafford loans were made available to students, Teran's Bar Loan is a loan "made under any program funded in whole or in part by a governmental unit or nonprofit institution."

Case: 20-03075   Doc# 58   Filed: 02/15/22   Entered: 02/15/22 13:10:52   Page 6 of 14

### 1. **Funded by Nonprofit**

Curiously, while Navient's general argument is that the umbrella nature of the LAWLOANS program means that it is a program funded by *either* a government or nonprofit institution, the supporting evidence and caselaw asserted by Navient focus solely on nonprofit, and not government, involvement. Navient's MSJ relies heavily on *In re Pilcher*, 149 B.R. 595 (B.A.P. 9th Cir. 1993). In *Pilcher*, the plaintiff, a law student took out a private loan under a program called the Law Access Program, an umbrella program which made both private loans and federally guaranteed loans. *Id.* at 596. The Law Access Program was the culmination of a Multiparty Agreement between five private and nonprofit entities to create "a streamlined method for the procurement, processing, and service of law school educational loans." *Id.* at 599. The plaintiff asserted her loan was subject to bankruptcy discharge because neither of the nonprofits involved in the Law Access Program had anything to do with her private loan. *Id.* The Ninth Circuit BAP interpreted the plain language of the Program Section to mean that so long as a private loan was derived from a program that was even minimally funded by a nonprofit institution, that loan was nondischargeable. *Id.* at 600. Thus, even the small amount of participation by the nonprofit entities in the Law Access Program generally meant that the plaintiff's private loan was made by a program at least partially funded by a nonprofit entity and was thus nondischargeable.

Including *Pilcher*, every case cited by Navient determined that a private loan was nondischargeable because the loan was

made under a program that had at least a minimal amount of voluntary nonprofit involvement.³

Unlike *Pilcher* and every other case cited by Navient, Navient admits that there is no evidence that any nonprofit was involved with the LAWLOANS program by the time Teran took out his Bar Loan in 2008. Without any evidence of nonprofit involvement in the LAWLOANS program, the court is unable to apply the law of *Pilcher* to this matter. Without such evidence, it is unclear whether LAWLOANS could even legally originate Stafford loans.

As noted above, the most recent documentation of the Multiparty Agreement governing the LAWLOANS program is from 1995, the fourth Amendment to the Multiparty Agreement in almost as many years, and nearly thirteen years prior to the time Teran

---

³ *O'Brien v. First Marblehead Educ. Resources, Inc. (In re O'Brien)*, 419 F.3d 104 (2d Cir. 2005) (loan program that included loans guaranteed by a participating nonprofit); *Univ. v. Merchant (In re Merchant)*, 958 F.2d 738 (6th Cir. 1992) (same); *Decker v. EduCap, Inc.*, 476 B.R. 463 (W.D. Pa. 2012) (program in which privately made loans were serviced and guaranteed by nonprofit); *Medina v. Nat'l Collegiate Student Loan Tr. 2*, No. 17-05276-LT7, 2020 WL 5552687 (Bankr. S.D. Cal. Aug. 4, 2020) (private educational loan that was later guaranteed by a nonprofit); *In re Duits*, No. 14-05277-RLM-13, 2020 WL 256770 (Bankr. S.D. Ind. Jan. 15, 2020) (private student loan made under a program with a nonprofit that guaranteed federal loans); *Greer-Allen v. Nat'l Collegiate Student Loan Tr. 2005-1 (In re Greer-Allen)*, 602 B.R. 831 (Bankr. D. Mass. 2019) (same); *Cleveland v. Educ. Credit Mgmt. Corp. (ECMC) (In re Cleveland)*, 559 B.R. 265 (Bankr. N.D. Ga. 2016) (debtor's loans were either federal loans or private loans made under a program funded in part by a nonprofit); *Drumm v. New England Loan Marketing Assoc. (In re Drumm)*, 329 B.R. 23 (Bankr. W.D. Pa. 2005) (program included loans guaranteed by nonprofit); *In re Hammarstrom*, 95 B.R. 160 (Bankr. N.D. Cal. 1989) (same).

-8-

accessed his loan through the LAWLOANS program.  Navient does not assert this lack of documentation is because the 1995 Amendment was the final Amendment to the Multiparty Agreement.

At the hearing on the MSJ, Navient conceded that it "was unaware of any documents that postdate" the 1995 Amendment to the Multiparty Agreement, and that nonprofit involvement in the LAWLOANS program in 2008 could not be proved.  Immediately after this concession, Navient argued for the first time that because federal loans were distributed under the LAWLOANS program in 2008 as demonstrated by its own Quick Reference Guide (Box Decl., Dkt. 36), the program was funded in part by the government and thus still fell under the purview of the Program Section.

### 2. Funded by Government

The only case provided by Navient in support of the theory that LAWLOANS is a program funded in whole or in part by the government is a recent decision from the Southern District of New York, *Mader v. Experian Info. Sols., LLC.*, 2020 WL 427813 (S.D.N.Y. July 24, 2020).  In *Mader*, the plaintiff was a former seminary student who took out a private loan from Sallie Mae (that was later assigned to Navient) through an unnamed program that also made Stafford loans. *Id.* at *1.  The court determined that because Stafford loans were, by law, guaranteed by nonprofits or government units, the program through which the plaintiff took out his private loan was a program that was funded in part by a government unit or nonprofit institution pursuant to the requirement of the Program Section. *Id.* at *3.

Navient likens the LAWLOANS program to the program at issue in *Mader*. Just as the unnamed program in *Mader* made both private and Stafford loans, so too, did the LAWLOANS program.

The reasoning of *Mader* is not helpful or relevant in this case. In *Mader*, there was no dispute that the program that originated the plaintiff's private loan also made Stafford loans. There does appear to be such a dispute here. Navient cannot admit that it is unable to produce any evidence of nonprofit involvement in LAWLOANS program in 2008, and then immediately state that the LAWLOANS program in 2008 issued Stafford loans and therefore was funded in part by the government. As discussed above, the legal framework of Stafford loans made under FFEL meant that Stafford loans could not be made without nonprofit involvement. Inability to show nonprofit involvement inherently means that Navient is also unable to show that the LAWLOANS program was funded in part by the government or was able to make Stafford loans in 2008.

Navient contends that the Quick Reference Guide Sallie Mae produced for the 2007-2008 academic year advertised LAWLOANS' ability to grant Stafford loans. The court takes note of the reference guide, but also notes that this guide is only an advertisement produced by Sallie Mae. The Quick Reference Guide itself does not prove that LAWLOANS actually could or did make such loans in 2008. Further calling into question LAWLOANS ability to make Stafford loans in 2008 are Sallie Mae's own marketing materials to purchasers of student loan backed securities from the same year, which defines LAWLOANS as a program which provides law students with only supplemental

private loans, not Stafford loans (Dkt. 45). It appears Navient's predecessor's own accounts of LAWLOANS in 2008 are contradictory.

On the evidence presented, unlike *Pilcher* or *Mader*, Navient has not proven as a matter of law that LAWLOANS was a program funded in whole or part by a nonprofit or government entity at the time Teran took out the Bar Loan. The MSJ as to the Program Section must be denied.

### D. 11 U.S.C. § 523(a)(8)(B)

Section 523(a)(8)(B) (hereafter referred to as the "Qualified Loan Section") excepts from discharge "any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986 [26 USC § 221(d)(1)], incurred by a debtor who is an individual."

From the plain language of the Internal Revenue Code ("IRC"), the Bar Loan is not a qualified education loan as a matter of law. In reaching the conclusion that the Bar Loan is not a qualified education loan, a nesting doll of special terms under the IRC must be defined.

#### 1. Qualified Education Loan

The IRC defines a qualified educational loan as "any indebtedness incurred by the taxpayer solely to pay *qualified higher education expenses* . . . which are attributable to education furnished during a period during which the recipient was an *eligible student*." IRC § 221(d)(1) (emphasis added).

#### 2. Qualified Higher Education Expense

The IRC defines qualified higher education expenses as "the cost of attendance . . . at an *eligible educational*

-11-

*institution*, reduced by the sum of . . . [other scholarships, income, and loans]." IRC § 221(d)(2) (emphasis added).

### 3. Eligible Educational Institution

The IRC defines an eligible educational institution as one which meets specific attendance, accreditation and course offering standards under 20 U.S.C. § 1088 and is also eligible for federal funding under Title IV of Higher Education Act, 20 U.S.C. §§ 1070 *et seq.*

### 4. Eligible Student

The IRC defines an eligible student as one who is "enrolled or accepted for enrollment in a degree, certificate, or other program . . . leading to a recognized educational credential at an institution of higher education that is an eligible institution . . .." 26 U.S.C. § 25A(b)(3); 20 U.S.C. § 1091(a)(1).

### 5. The Bar Loan is Not a Qualified Educational Loan

Navient argues that the Bar Loan is a qualified educational loan because its terms required that (1) Teran be a student at an eligible educational institution at the time he applied for the Bar Loan; (2) he had to graduate from that institution prior to the disbursement of funds; and (3) the funds disbursed were less than the cost of attendance at that institution minus his other loans and income. These requirements set by Navient do mimic the definitions of an eligible educational institution, eligible student, and qualified higher education expenses. However, the attempts of Navient to mimic the terms that are crucial to a qualified educational loan do not transform the Bar Loan into a qualified educational loan. Teran was not an

-12-

eligible student when he received the Bar Study funds, and the funds were specifically meant to pay bar prep expenses, not to pay the cost of attendance at his law school.

The loan was meant for a bar prep program and for living expenses while preparing for the bar. BarBri does not meet the attendance, accreditation, or course offering standards of an eligible educational institution. The loan money is further attributable to education that Teran would undertake while he was not an eligible student.

The Bar Loan is not a qualified educational loan under the Qualified Loan Section as a matter of law, and summary judgment must be granted in favor of Teran.

**IV. DISPOSITION AND FURTHER PROCEEDINGS**

For the foregoing reasons, summary judgment should be GRANTED in favor of Teran as to the Qualified Loan Section and DENIED as to the Program Section. Before it enters any order on these matters, the court will conduct a status conference on February 25, 2022 at 11:00 a.m. to discuss further proceedings including whether Navient wishes to provide further factual support for nondischargeability under the Program Section.

\*\*END OF MEMORANDUM DECISION\*\*

**COURT SERVICE LIST**

ECF Recipients