1 James A. Michel (SBN 184730)
THE LAW OFFICE OF JAMES MICHEL
2 2912 Diamond St. #373
San Francisco, CA 94131-3208
3 Tel: (415) 239-4949
attyjmichel@gmail.com

4 Erika Angelos Heath (SBN 304683)
5 FRANCIS MAILMAN SOUMILAS, P.C.
369 Pine Street, Suite 410
6 San Francisco, CA 94104
Tel: (628) 246-1352
7 Fax: (215) 940-8000
eheath@consumerlawfirm.com

8

9 Attorneys for Plaintiff and the Classes

10 *Additional attorneys on signature page*

11

12 **UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
13 **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 14 **IN RE: OSCAR D. TERAN, Debtor** | Bankruptcy No. 10-31718 DM |
| 15 | Chapter 7 |
| 16 **OSCAR D. TERAN, on behalf of himself and all those similarly situated,** | Adversary No. 20-03075 |
| 17 | |
| **Plaintiffs,** | <u>**PROPOSED REDACTED DOCUMENT:**</u> |
| 18 | |
| 19 **v.** | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION** |
| 20 **NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION,** | |
| 21 | |
| 22 **Defendants.** | Date: Feb. 23, 2023 |
| 23 | Time: 9:30 a.m. |
| 24 | Location: Virtual |
| 25 | Hon. Dennis Montali |

26

27

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

I.   INTRODUCTION ....................................................................................... 1

II.  FACTS ........................................................................................................ 4

     A.   Teran's Experience ........................................................................ 4

     B.   The Class of Similarly Situated Borrowers .................................. 6

III. LEGAL STANDARD................................................................................. 10

IV.  ARGUMENT AND AUTHORITIES......................................................... 11

     A.   This Case Satisfies the Requirements of FED. R. CIV. P. 23(a)............................ 11

          1.   The Class Is Numerous. .................................................... 11

          2.   Common Questions of Law and Fact Exist. ...................... 12

          3.   Plaintiff's Claim is Typical of Class Members' Claims. ......................... 12

          4.   Plaintiff and His Counsel Will Adequately Represent the Class. ............. 13

     B.   This Case Satisfies the Requirements of FED. R. CIV. P. 23(b) .......................... 14

          1.   Common Questions of Law and Fact Predominate. ................................. 14

          2.   A Class Action Is Superior to Other Means of Adjudicating This Case. . 16

V.   CONCLUSION.......................................................................................... 16

**<u>TABLE OF AUTHORITIES</u>**

<u>Page(s)</u>

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013)....................................................................................14

*Carlin v. DairyAmerica, Inc.*,
  328 F.R.D. 393 (E.D. Cal. 2018)...................................................................11

*Crocker v. Navient Solutions, LLC, et al.*,
  AP No. 16-03175 (DRJ) (TXSB).................................................................1, 6

*Doninger v. Pac. Nw. Bell, Inc.*,
  564 F.2d 1304 (9th Cir. 1977) ....................................................................11

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ......................................................................13

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982)....................................................................................11

*Gen. Tel. Co. v. E.E.O.C.*,
  446 U.S. 318 (1980)....................................................................................11

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ......................................................................13

*Mazza v. Am. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ......................................................................14

*In Re Oscar D. Teran*,
  No. 10-31718-DM (N.D. Cal. Bank.) .............................................................5

*Ramirez v. Trans Union LLC*,
  951 F.3d 1008 (9th Cir. 2020) ....................................................................15

*Rannis v. Recchia*,
  380 F. App'x 646 (9th Cir. 2010) ................................................................11

*Soutter v. Equifax Info. Servs., LLC*,
  307 F.R.D. 183 (E.D. Va. 2015)...................................................................16

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016)...........................................................................14, 15

ii

*Vaquero v. Ashley Furniture Indus., Inc.*,
　824 F.3d 1150 (9th Cir. 2016) ...................................................................15

*Wal Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011) ..............................................................................11, 12

*Whiteway v. FedEx Kinko's Office and Print Servs., Inc.*,
　2006 WL 2642528 (N.D. Cal. Sept. 14, 2006) .........................................13

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
　594 F.3d 1087 (9th Cir. 2010) ...................................................................15

**Statutes**

11 U.S.C. § 523(a)(8)(B) ...................................................................................2

26 U.S.C. § 221(d)(1) .........................................................................................2

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005....................1, 6

Bankruptcy Code § 523(a)(8) .........................................................................5, 6

Cal. Civ. Code § 1785.31 .................................................................................13

**Federal Rules**

Fed. R. Bankr. P. 7023...................................................................................3, 10

Fed. R. Civ. P. 23 ..............................................................................................11

Fed. R. Civ. P. 23(a) ....................................................................10, 11, 12, 13

Fed. R. Civ. P. 23(a)(1).....................................................................................11

Fed. R. Civ. P. 23(a)(2).....................................................................................12

Fed. R. Civ. P. 23(a)(3).....................................................................................12

Fed. R. Civ. P. 23(a)(4).....................................................................................13

Fed. R. Civ. P. 23(b) .........................................................................10, 11, 14

Fed. R. Civ. P. 23(b)(2).....................................................................................14

Fed. R. Civ. P. 23(b)(2)......................................................................................3

Fed. R. Civ. P. 23(b)(3) ............................................................................. *passim*

iii

# Other Authorities

Mark Kantrowitz, *How To Bankrupt Your Student Loans*, Forbes, Nov. 14, 2020,
  *available at* https://www.forbes.com/sites/markkantrowitz/2020/11/24/how-
  to-bankrupt-your-student-loans/ (last visited Dec. 15, 2022) ..................................................2, 9

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*,
  84 N.Y.U. L. Rev. 97 (2009) ...................................................................................................12

Robert G. Cameron, *Busting myths about bankruptcy and private student loans*,
  Consumer Financial Protection Bureau, April 12, 2022, available at
  https://www.consumerfinance.gov/about-us/blog/busting-myths-about-
  bankruptcy-and-private-student-loans (last viewed Dec. 16, 2022) .........................................9

iv

# I. __INTRODUCTION__

Pursuant to this Court's Scheduling Order, ECF 64, Plaintiff Oscar Teran now moves to certify three (3) classes of borrowers who, like him, had a loan discharged in bankruptcy that Defendants Navient Solutions, LLC and Navient Credit Finance Corporation (collectively, "Navient") nevertheless sought to collect and misleadingly reported as outstanding with a balance to the credit reporting agencies even after the discharge. The proposed classes here are very similar to one certified under FED. R. BANKR. P. 7023 for settlement purposes in the Fifth Circuit *Crocker* matter.[1] The main difference between this case and *Crocker* is that it covers borrowers within California and the geographic boundaries of the Ninth Circuit instead of the Fifth Circuit. For similar reasons to *Crocker*, Plaintiff's proposed class here should be certified.

Plaintiff Teran, a California resident, took out a private Bar Study loan on February 13, 2008 so he could fund a private Texas bar exam preparation course with BarBri. This loan was discharged by Order of this Court in Plaintiff's 2010 bankruptcy, and Defendants received notice of the August 17, 2010 discharge. Nevertheless, Defendants continued to bill Plaintiff, demand payments from him, and, as a further effort to compel payments, reported the discharged loan on Plaintiff's credit reports as outstanding with a balance of approximately $9,000 as of May 2020, years after the discharge order. Plaintiff acceded to Defendants' pressure tactics and has paid approximately $13,878 post-discharge to Defendants, money he did not legally owe.

Plaintiff's Bar Study loan is among a category of loans that Defendants unlawfully sought to collect and which, in that effort, it misleadingly reported to the credit reporting agencies post-discharge. It is well known that the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) ("BAPCPA"), began to characterize

---

[1] *See Crocker v. Navient Solutions, LLC, et al.*, AP No. 16-03175 (DRJ) (TXSB), ECF No. 367 (final approval of class settlement covering "Covered Loans"), ECF Nos. 346-2, at ¶¶ 1.23-1.24, and 346-3, at ¶ 2 (collectively defining "Covered Loans"); *see also* Notice of Proposed Class Action Settlement, *available at* http://www.navientclassaction.com/wp-content/uploads/2021/09/Crocker-Class-Notice-Mailing-Version.pdf (last visited Dec. 15, 2022).

1

some private student loans as nondischargeable, but that certain student loans remained dischargeable. Broadly speaking, these dischargeable loans are ones that students may take out but they are *not* used at Title IV colleges or institutions or they are *not* for traditional educational purposes, such as tuition, room and board. The Bankruptcy Code makes clear that "qualified" education loans may be excepted from discharge, but such loans are taken "solely to pay" for certain enumerated, "qualified educational expenses" incurred by an "eligible student" for use at an "eligible educational institution." *See* 11 U.S.C. § 523(a)(8)(B); 26 U.S.C. § 221(d)(1); *see also* ECF 58 (Order denying Defendants' Motion for Summary Judgment). By contrast, it is well known that other loans, such as the one here, are *not* "qualified." Examples of such loans include those taken to pay for bar study courses, medical residences, relocation expenses, computers, professional licenses or certifications, and, regardless of purpose, to pay expenses at non-Title IV schools in the U.S., to foreign colleges and universities, and to K-12 schools (referred to herein collectively as "non-qualified" student loans).[2]

Discovery in this case has revealed that, within the Ninth Circuit alone,



Although Navient has

. Discovery also revealed that Navient

, as it did for Teran and numerous other Californians to strong-arm these borrowers to pay.

---

[2]    *See, e.g.,* Mark Kantrowitz, *How To Bankrupt Your Student Loans*, FORBES, Nov. 14, 2020, *available at* https://www.forbes.com/sites/markkantrowitz/2020/11/24/how-to-bankrupt-your-student-loans/ (last visited Dec. 15, 2022).

As will be discussed more fully below, there is no question that the classes of borrowers with discharged non-qualified Navient loans proposed here are numerous and that common issues exist and will predominate, and that Teran is a typical and adequate class representative. Also, the superior way of resolving this controversy is a class action, instead of individual proceeding one borrower at a time, raising essentially the same issues and seeking the same relief. Plaintiff therefore moves this Court to certify that following classes pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) (incorporated by Fed. R. Bankr. P. 7023):

### Injunctive Relief Class for Non-Qualified Loans ("Class 1").
Pursuant to Fed. R. Civ. P. 23(b)(2):

Every natural person residing in the United States and its Territories: (1) who obtained a bankruptcy discharge order covering a Navient debt from October 17, 2005 until the time that class notice is to be provided in this matter; (2) the covered debt was for the purpose of: bar study, relocation, medical residency, career training, continuing education, purchasing computer(s), or obtaining professional license(s) or, regardless of purpose, for study at any college or university that Navient's records classify as non-Title IV, K-12, unaccredited, or not located within the U.S.; and (3) which covered debts reflect a balance on Navient's records as of December 15, 2022.

### Ninth Circuit Class for Non-Qualified Loans ("Class 2").
Pursuant to Fed. R. Civ. P. 23(b)(3):

Every natural person residing in the United States and its Territories: (1) who obtained a bankruptcy discharge order within the Ninth Circuit covering a Navient debt from October 17, 2005 until the time that class notice is to be provided in this matter; (2) the covered debt was for the purpose of: bar study, relocation, medical residency, career training, continuing education, purchasing computer(s), or obtaining professional license(s) or, regardless of purpose, for study at any college or university that Navient's records classify as non-Title IV, K-12, unaccredited, or not located within the U.S.; and (3) from whom Navient collected any sum of money toward that covered debt after the discharge order.

**California Unfair Collection and Reporting Class for Non-Qualified Loans ("Class 3").**
Pursuant to FED. R. CIV. P. 23(b)(3):

Every natural person residing in the State of California: (1) who obtained a bankruptcy discharge order covering a Navient debt from October 17, 2005 until the time that class notice is to be provided in this matter; (2) the covered debt was for the purpose of: bar study, relocation, medical residency, career training, continuing education, purchasing computer(s), or obtaining professional license(s) or, regardless of purpose, for study at any college or university that Navient's records classify as non-Title IV, K-12, unaccredited, or not located within the U.S.; and (3) on whose credit report Navient reported the covered debt with an outstanding balance after the date of the discharge order between September 1, 2018 until the time that class notice is to be provided in this matter.

## II.  FACTS

### A.  Teran's Experience

Teran started law school at UC Hastings in August 2005. As a first-generation college graduate, and the son of a single, working mother, he was excited by the opportunities that law school promised him. ECF 42, Declaration of Oscar D. Teran ("Teran Decl."), at ¶ 2.

On or about February 13, 2008, shortly before his graduation from law school, Mr. Teran obtained his Bar Study Loan from Sallie Mae Bank in order to pay for expenses associated with studying for the Texas bar examination. ECF 42, Teran Decl., at ¶ 3; *see also* ECF 36, Declaration of Stephanie Box ("Box Decl."), at ¶ 4, Ex. A. ███████████████████████████ ████████████████████████████████████████████████████. ECF 36, Box Decl., at ¶ 4, Ex. A (Section A); *see also* ECF 42, Teran Decl., at ¶ 3. ████████████████████████. ECF 36, Box Decl., ¶ at 4, Ex. A (Section A, showing an anticipated graduation date of 5/18/08, and the second disbursement date of 5/19/08).) Teran graduated from law school on May 18, 2008, as scheduled. ECF 42, Teran Decl., at ¶ 4.

After his graduation, Teran used the funds from the note to pay for his BarBri study course in Texas, and for living expenses while he was preparing for the Texas bar exam. ECF 42, Teran

Decl., at ¶¶ 5-6, Ex. 1-2; *see also* ECF 36, Box Decl., at ¶ 4, Ex. A (Section A, showing the Texas bar exam for 7/29/08).) He took the Texas bar exam at the end of July 2008. ECF 42, Teran Decl., at ¶ 7.

Unfortunately, Teran struggled financially in the subsequent years, as he attempted to use his legal aid salary to pay off credit card balances that accumulated while he was a student. ECF 42, Teran Decl., at ¶ 9. By May 10, 2010, Teran decided he was out of options financially and he filed a petition for Chapter 7 bankruptcy in this Court. (*In Re Oscar D. Teran*, Case No. 10-31718-DM (N.D. Cal.) ("Bankruptcy Case"), ECF 1; *see also* ECF 42, Teran Decl., at ¶ 10. He listed the Bar Study Loan in Schedule F of his bankruptcy petition, in the amount of $15,752.00. *Id*. at 20 (Chela loan from 2/1/08).

Although Defendants received notice of this bankruptcy petition, they did not file an adversary proceeding contesting the dischargeability of the Bar Study Loan, nor did Teran reaffirm the debt. *See generally*, Bankruptcy Case. Teran obtained his bankruptcy discharge on August 17, 2010. Bankruptcy Case at ECF 11. The Bar Study Loan was covered by the discharge and not excepted from discharge as within the scope of section 523(a)(8) as previously discussed in the parties' summary judgment briefing in this matter.

The Bar Study Loan was ultimately assigned to Defendant Navient Credit Finance Corporation, and has been serviced by Defendant Navient Solutions, LLC. *See* ECF 14, Answer, at ¶¶ 9-10, 25, 36. Defendants are large, sophisticated financial institutions. For example, as of December 31, 2020, Navient Corporation had approximately 5,560 regular employees, and earned annual net, after-tax income of $412 million.[3]

After Mr. Teran's discharge, Defendants continued to seek to collect the debt as if it had not been discharged. For example, they sent regular billing statements to Mr. Teran seeking payment and they even reported the debt to the credit bureaus as outstanding and with a significant

---

[3]     Form 10-K, at 9 & 14, *available at* https://navient.com/Images/NAVI_2020_10-K_2-26-21_Final_tcm5-22675.pdf (last visited Dec. 15, 2022).

Case: 20-03075   Doc# 70   Filed: 12/16/22   Entered: 12/16/22 15:23:52   Page 10 of 22

balance owing. ECF 42, Teran Decl., at ¶ 12. As demanded by Defendants, Teran ███████████████████████████████████████████████████████████████████████████████, [4] and Navient continued to place the debt on his credit report with an outstanding balance. Ex. 1 at TERAN_NAVIENT_0068-69 (excerpt of Trans Union report), TERAN_NAVIENT_0070-73 (excerpt of Equifax report), TERAN_NAVIENT_0074-76 (excerpt of Experian report).

**B.    The Class of Similarly Situated Borrowers**

The instant adversary proceeding was commenced by Mr. Teran, on behalf of himself and those similarly situated who have dischargeable Consumer Education Loans, on August 31, 2020. ECF 1.[5] Class discovery in this matter has revealed a numerous class of similarly situated borrowers – indeed, discovery demonstrates that Teran's case is but the tip of the iceberg.

Specifically, Navient services millions of student loans and is well aware of the 2005 Bankruptcy Code amendments, after which many non-qualified loans remained dischargeable in bankruptcy. Ex. 2, Stine Dep., at 25:16-26:4 (███████████████████████████████████████████████████████████████████████████████); Ex. 3, Zemetro Dep., at 35:5-12 (2.5 million borrowers). But until April 2022, well after the filing of this lawsuit and perhaps because of it, Navient treated non-qualified loans like Teran's Bar Study loan as non-dischargeable. Ex. 3, Zemetro Dep., at 25:1-22, 32:1-5.

In connection with the *Crocker* litigation with the Fifth Circuit, Navient ████████████████████████████████████████████████████████████████████████. Ex. 4, Theurer Dep., at 21:13-22, 31:4-8, 102:13-103:15. In this case, Navient produced two subsets of the same list, one for the Northern District of California and one for the Ninth Circuit. Ex. 4,

---

[4]    *See* Ex. 8 at 6, cell BE2524.

[5]    In his Complaint, Mr. Teran asserts a dischargeability cause of action under section 523(a)(8) of the Bankruptcy Code. ECF 1 at ¶¶ 81-82. He further seeks contempt sanctions and remedies for Defendants' conduct in continuing to collect payments on these discharged consumer debts. *Id.*, at ¶¶ 73-80. Finally, Mr. Teran also asserts a cause of action under the CCRAA for its credit reporting of the discharged debt. *Id.*, at ¶¶ 83-97.

Theurer Dep., at 12:18-14:10, 21:13-2217, 102:13-103:15; Ex. 5, Petersen Dep., at 32:9-15; Ex. 6, Skinner Dep., at 19:21-20:8. *See* Ex. 7 (excerpt from Northern District of California Excel list); Ex. 8 (excerpt from Ninth Circuit Excel list).

The Excel lists in this case identified borrowers ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ Ex. 4, Theurer Dep., at 43:5-17, 60:1-16, 66:11-14; Ex. 5, Peterson Dep., at 50:14-51:6.

The Excel lists show ████████████████████████ ████████████████████████████████████████████ ██████████. Ex. 4, Theurer Dep., at 91:18-23, 93:12-20, 94:1-95:14. *See also* Exs. 7 and 8 (excerpts from Excel lists). ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████. Ex. 4, Theurer Dep., at 48:4-14, 50:7-58:8, 63:9-90:21, 91:12-17; *see also* Ex. 8 at 6, cell BE2524.

Defendant's corporate representative Patrick E. Theurer, who oversaw the preparation of the Excel lists, agreed that as of December 31, 2020, the query end date for the Excel spreadsheet, Navient had collected ██████████████ from the borrowers of these loans post-discharge. Ex. 4, Theurer Dep., at 80:24-81:18, 91:12-17.

Other defense witnesses admitted at their depositions that Navient also services additional categories of loans that are known to be non-qualified and thus dischargeable in bankruptcy. For example, Navient representatives Patricia Peterson and Dennis Skinner testified that ████████████ ████████████████████████████████████ Ex. 5, Peterson Dep., at 52:3-7; Ex. 6, Skinner Dep., at 33:11-22, and for ████████████████████████████, Ex. 5, Peterson Dep., at 53:12-54:3; Ex. 6, Skinner Dep., 34:4-16.

That certain categories of student loans have remained dischargeable in bankruptcy since 2005 is no secret, and information about them is widely available to Defendants and the public. For example, a *Forbes* magazine publication lists the following loans as dischargeable:

- Bar Study Loans and Residency and Relocation Loans are not qualified education loans because they are borrowed for expenses incurred after the student graduated and because the expenses are not qualified higher education expenses.

- Continuing Education Loans and Career Training Loans are not qualified education loans because they are made to students who are not enrolled on at least a half-time basis. Also, for a student loan to be a qualified education loan, the student must be pursuing a degree or certificate or other recognized education credential at a college or university that is eligible for Title IV federal student aid. Continuing education students are not pursuing a degree or certificate.

- K-12 Loans are not qualified education loans because the student cannot be enrolled in an elementary or secondary school. For similar reasons, loans made to dual enrollment students are not qualified education loans, since a dual enrollment student is enrolled simultaneously in a college and an elementary or secondary school.

- Direct-to-Consumer Loans may be dischargeable because they are designed to permit borrowing beyond the college's cost of attendance, as they are not school certified.

- Mixed-Use Loans are not qualified education loans because they are not borrowed solely to pay for qualified higher education expenses. Examples of mixed-use loans include credit cards, auto loans, personal loans, home equity loans, home equity lines of credit and other types of mortgages (e.g., a cash-out refinance).

- Retirement Plan Loans are not qualified education loans because such loans are excluded from the definition of a qualified education loan.

- Loans Made by Relatives are not qualified education loans because the debt is owed to someone who is related to the borrower. This includes loans owed to a brother or sister (whether by whole or half-blood), spouse, ancestor or lineal descendant.

8

- Loans for Prior-Year Balances are not qualified education loans because they are not made within a reasonable period of time (90 days) before or after the qualified expenses are paid or incurred. This requirement does not apply to a refinance of a qualified education loan.

- Loans for the Purchase of a Computer and Obtaining Professional Licenses or Certification are not qualified education loans because these expenses were added to the definition of cost of attendance after August 4, 1997. Room and board for less-than-half-time students was also added after this date, but those loans would also be non-qualified because the students are enrolled less than half-time.

- Loans Made to the Student's Grandparent, Aunt, Uncle, Niece, Nephew, Sibling, Cousin or Stranger are not qualified education loans, since the student must be the borrower, the borrower's spouse or a dependent of the borrower.

- Loans for Unaccredited Colleges or Universities are not qualified education loans because the loan must have been used to pay for qualified expenses at an eligible institution, which is defined as a college or university that is eligible for Title IV federal student aid.

- Loans for Foreign Colleges and Universities might not be qualified education loans, depending on the specific college or university, for similar reasons. Only about 400 foreign colleges and universities are eligible for Title IV federal student aid.

Mark Kantrowitz, *How To Bankrupt Your Student Loans*, FORBES, Nov. 14, 2020, *available at* https://www.forbes.com/sites/markkantrowitz/2020/11/24/how-to-bankrupt-your-student-loans/ (last visited Dec. 15, 2022). Other widely disseminated publications provide comparable information, including through government websites such as that of the Consumer Financial Protection Bureau ("CFPB"). *See* Robert G. Cameron, *Busting myths about bankruptcy and private student loans*, CONSUMER FINANCIAL PROTECTION BUREAU, April 12, 2022, *available at* https://www.consumerfinance.gov/about-us/blog/busting-myths-about-bankruptcy-and-private-student-loans (last viewed Dec. 16, 2022).

Despite the fact these loans were discharged, Navient continued collecting on them long after bankruptcy, including through its credit reporting practices. Navient is aware that a loan discharged in bankruptcy should be reported to the credit agencies as showing a zero balance. Ex. 3, Zemetro Dep., at 38:23-39:15. Nevertheless, each time a borrower on one of these loans

9

comes out of bankruptcy, Navient systematically returns the loan to active servicing, mails the debtor a letter advising them that they are still responsible for repayment of the loan, Ex. 3, Zemetro Dep., at 46:17-47:3, and ████████████████████████████████████████. *Id.* at 41:9-42:1; Ex. 2, Stine Dep., at 27:2-3; Ex. 4, Theuer Dep., at 84:21-85:10 (███████████████████ ████████████████████████████████). As shown by Mr. Teran's own credit reports, Navient continued reporting that he had a balance of almost $9,000 due approximately 10 years after that loan was discharged in bankruptcy. Ex. 1 at TERAN_NAVIENT_0068-69 (excerpt of Trans Union report), TERAN_NAVIENT_0070-73 (excerpt of Equifax report), TERAN_NAVIENT_0074-76 (excerpt of Experian report).

A Navient database expert confirmed that Navient can ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████. Ex. 6, Skinner Dep., at 29:12-35:9.

## III.    <u>LEGAL STANDARD</u>

In federal court, Plaintiffs seeking to represent a class must satisfy the threshold requirements of Federal Rule of Civil Procedure 23(a) as well as the requirements of one subsection of Rule 23(b).[6] Rule 23(a) provides that a case is appropriate for certification as a class action if: "the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a) (numbering omitted). Rule 23(b)(3) provides that a case may be certified as a class action if: "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual

---

[6]    These requirements are both incorporated into adversary proceedings through FED. R. BANKR. P. 7023.

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

Plaintiff bears the burden of demonstrating that each element of Rule 23 is satisfied. A court may certify a class where it determines that a plaintiff has borne his or her burden. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158-61 (1982); *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977). The court must conduct a "'rigorous analysis,'" which may require it "to probe behind the pleadings before coming to rest on the certification question." *Wal Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." *Id*.

## IV. **ARGUMENT AND AUTHORITIES**

### A. This Case Satisfies the Requirements of FED. R. CIV. P. 23(a)

#### 1. *The Class Is Numerous.*

A proposed class is "numerous" if it "is so large that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). This "does not mean that joinder must be impossible, but rather means only that the court must find that the difficulty or inconvenience of joining all members of the class makes class litigation desirable." *Carlin v. DairyAmerica, Inc.*, 328 F.R.D. 393, 399 (E.D. Cal. 2018) (citation omitted). No specific numerical threshold is required; instead, the law "requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 330 (1980); *see also Rannis v. Recchia*, 380 F. App'x 646, 650–51 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members.").

Here, numerosity is easily satisfied. Defendants have produced Excel lists with ███████ of borrowers within the Norther District and California and ██████████ of borrowers within the Ninth Circuit who meet the class definitions proposed here. Each borrower had loans discharged in bankruptcy that Defendants █████████████████████████████████████████ ██████████████████ and that fall into the categories of loans that are generally dischargeable.

11

The sheer volume of loans on the Excel lists by itself satisfies the numerosity requirement of Rule 23(a) here.

### 2. *Common Questions of Law and Fact Exist.*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). To satisfy Rule 23(a)(2) commonality, "'[e]ven a single [common] question' will do." *Dukes*, 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

Here, both legal questions and key evidentiary elements are common to the proposed classes. A core question in this class case is: (1) did Navient know that the proposed class's loans here were discharged in bankruptcies? The answer is yes, and the Excel lists produced by Defendants from data extracted from PACER and its internal Enterprise Date Warehouse demonstrate ███████████████████████████████████████████. Another common question is: (2) did Navient continue to collect on these loans post-discharge? Again, there is a common, affirmative answer for all class loans predicated upon common evidence. Next, (3) did Navient report these loans post-discharge to the credit reporting agencies as outstanding and with a balance owing or still have them on its books with a balance? Again, the Excel lists and testimony about Navient's credit reporting practices provide common evidence and common answers for all class members. Ex. 3, Zemetro Dep., at 40:9-41:1; Ex. 2, Stine Dep., at 27:2-3. Finally, (4) did class members sustain an injury as a result of Navient's post-discharge practices concerning the class loans? The answer again is a common, affirmative one, mostly derived from Navient's own collection and credit reporting records. *See* Ex. 4, Theurer Dep., at 80:24-81:18, 91:12-17 ███████████████████████████████████████.

### 3. *Plaintiff's Claim is Typical of Class Members' Claims.*

Typicality is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality test is "whether other members have the same or similar injury, whether the action is based on conduct which is not

12

unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). It focuses on "the nature of the claim . . . of the class representative, and not . . . the specific facts from which it arose." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon*, 976 F.2d at 508).

Plaintiff's claims are entirely typical of those of absent class members. Like everyone else in the proposed classes, Defendants' conduct caused economic injury to Plaintiff as a result of common collection and credit reporting practices that affected every loan and every borrower in the proposed classes. Therefore, the Rule 23(a) requirement of typicality is satisfied here.

4.      *Plaintiff and His Counsel Will Adequately Represent the Class.*

Rule 23(a)(4) requires that the named plaintiff and his or her counsel must "fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). Legal adequacy turns on two questions: (1) whether the class representative's interests are common with, and not antagonistic to, the class's interests; and (2) whether the class representative is "able to prosecute the action vigorously through qualified counsel." *Whiteway v. FedEx Kinko's Office and Print Servs., Inc.*, 2006 WL 2642528, at *7 (N.D. Cal. Sept. 14, 2006) (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)). Both are satisfied here.

First, no conflict exists between Plaintiff and absent class members. Each has the same interest in recovering the money they paid towards these discharged debts, as well as the uniform statutory damages available under the CCRAA.[7] Moreover, Plaintiff has participated vigorously in this matter, conferring with his attorneys, assisting with evidence, and providing any necessary affidavits. He is familiar with the facts underlying this case and is aware of his duties as class representative and agrees to them.

---

[7]      Under the CCRAA, each member of the California Unfair Collection Class is entitled to recover what the CCRAA calls statutory "punitive" damages of between $100 and $5,000 for each violation. CAL. CIV. CODE § 1785.31.

13

Second, Plaintiff has secured representation with significant experience in this type of litigation. Francis Mailman Soumilas, P.C. has extensive experience in consumer class action litigation, class trials, and appeals. *See* Ex. 9, Firm Biography of Francis Mailman Soumilas, P.C. The adequacy requirement is satisfied. The rest of Plaintiff's team is also well qualified to assist with the more technical, bankruptcy-specific aspects of the prosecution of this matter. *See* Ex. 10, Biography of James Michel.

### B.   This Case Satisfies the Requirements of FED. R. CIV. P. 23(b)

The injunctive relief class, proposed class No. 1, must only satisfy Rule 23(b)(2), which it does here because, as discussed above, Navient has acted on grounds that apply generally to the class with respect to its post-discharge collection and credit reporting practices.

For purposes of proposed classes No. 2 and No. 3, Plaintiff must also satisfy the requirements of Rule 23(b)(3) because he is seeking monetary damages, as discussed below.

#### 1.   *Common Questions of Law and Fact Predominate.*

A plaintiff must demonstrate the superiority of maintaining a class action and show 'that the questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 596 (9th Cir. 2012) (quoting FED. R. CIV. P. 23(b)(3)). "[T]he focus of the predominance inquiry" is whether "a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (citation omitted). It "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).

The common and predominating legal issues here are discussed under commonality, *supra*. They relate to Navient's knowledge of the discharges for all class loans and persistent, post-discharge collection and credit reporting practices. The Excel lists and Navient witness testimony

14

about uniform collection and credit reporting practices post-discharge provide detailed, cohesive, and common evidence for the classes.

Further, multiple Navient witnesses testified that the treatment of these types of loans post-discharge is not haphazard or individualized. Ex. 4, Theuer Dep., at 84:21-85:10 (█████████ █████████████████████████████████████████████████); Ex. 2, Stine Dep., at 17:23-18:5 (█████████████████████████████████████████████████). Navient ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Ex. 2, Stine Dep., at 18:14-19:3 ██████████████████████████████████████████████████████). Nevertheless, until recently, Navient continued to treat the thousands of loans at issue in this class case as "qualified" and thus non-dischargeable, despite well published and widely available guidance that they fall within the categories of non-qualified loans that can be discharged. Ex. 3, Zemetro Dep., at 25:1-22, 32:1-5.

No individual damages issues exist because Plaintiff is seeking damages of already calculated and collected sums that could not legally have been collected post-discharge as well as uniform statutory damages under the CCRAA for each member of the class, obviating any need for an individual inquiry into causation and damages for each class member.[8] *See, e.g., Ramirez v. Trans Union LLC*, 951 F.3d 1008, 1033 n.14 (9th Cir. 2020) (district court properly rejected predominance challenge based upon purported availability of different amounts of statutory damages); *see also Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) ("damages calculations alone cannot defeat certification").

Common issues of law and fact clearly predominate over any individual issue here.

---

[8] Even if they did, "[T]he need for individual damages calculations does not, alone, defeat class certification." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016). Indeed, when "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045.

15

1

     **1.**  *A Class Action Is Superior to Other Means of Adjudicating This Case.*

2

   Finally, Rule 23(b)(3) requires "that a class action is superior to other available methods

3 for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "[T]here is a

4 strong presumption in favor of a finding of superiority where . . . the alternative to a class action

5 is likely to be no action at all for the majority of class members." *Souter v. Equifax Info. Servs.,*

6 *LLC*, 307 F.R.D. 183, 218 (E.D. Va. 2015) (citation omitted).

7    Here, individual class members do not have an interest in controlling the prosecution of

8 this case. Most of them do not know that Defendants violated the bankruptcy and consumer

9 protection law at issue here and unless this case is certified as a class action, they will not be

10 compensated for Defendants' violations. Even in the unlikely event that all the proposed class

11 members become aware of their rights and could locate counsel who will agree to represent them,

12 a multiplicity of small-stakes lawsuits will result in an inefficient administration of this controversy

13 and needlessly expend a great deal of judicial resources.

14    Accordingly, certification of this matter as a class action is the superior method of

15 adjudicating this case.

16 **V.**  <u>**CONCLUSION**</u>

17    For all the reasons set forth above, Plaintiff respectfully requests that this Court grant

18 Plaintiff's Motion for Class Certification and enter the Proposed Order included herewith.

19                Respectfully submitted,

20  Dated:  December 16, 2022   **OSCAR D. TERAN**,

21                by his attorneys,

22                */s/ Erika Heath*

23                Erika A. Heath
               **FRANCIS MAILMAN SOUMILAS, P.C.**

24                369 Pine Street, Suite 410
               San Francisco, CA 94104

25                Tel: 628-246-1352
               Fax: 215-940-8000

26                eheath@consumerlawfirm.com

27

James Michel
**THE LAW OFFICE OF JAMES MICHEL**
2912 Diamond St #373
San Francisco, CA 94131-3208
Tel: (415) 239-4949
attyjmichel@gmail.com

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis*
John Soumilas*
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff and the Class*

17