1  Payam Khodadadi (SBN 239906)
   McGuireWoods LLP
2  1800 Century Park East, 8th Floor
   Los Angeles, CA 90067-1501
3  Telephone:    310.315.8208
   Facsimile:     310.315.8210
4  Email: pkhodadadi@mcguirewoods.com

5  Joseph A. Florczak (admitted *pro hac vice*)
   McGuireWoods LLP
6  77 W. Wacker Drive, Suite 4100
   Chicago, IL 60601
7  Telephone:    312.849.8100
   Facscimile:   312.849.3690
8  Email:  jflorczak@mcguirewoods.com

9  *Counsel for Navient Solutions, LLC*
   *and Navient Credit Finance Corporation*
10

11              **UNITED STATES BANKRUPTCY COURT**

12              **NORTHERN DISTRICT OF CALIFORNIA**

13                  **SAN FRANCISCO DIVISION**

14

| | |
|---|---|
| 15  **IN RE:  OSCAR D. TERAN, Debtor** | Bankruptcy No. 10-31718 |
| 16 | Chapter 7 |
| 17  **OSCAR D. TERAN, on behalf of himself and** | Adversary No. 20-03075 |
| 18  **all those similarly situated,** | |
| 19       **Plaintiffs,** | **DEFENDANTS' OPPOSITION TO** |
| 20  **v.** | **PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION** |
| 21 | |
| 22  **NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION,** | Date:          Feb. 23, 2023 |
| 23       **Defendants.** | Time:          9:30 a.m. Location:      Virtual |
| 24 | Hon. Dennis Montali |

25

26

27

28

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

Page

Introduction ................................................................................................................1

Standard of Review ......................................................................................................2

The Proposed Classes As Stated In Plaintiff's Motion ................................................3

Argument ......................................................................................................................5

I.  This Court Lacks Authority to Enforce Discharge Orders Issued Outside of the Northern District of California ............................................................5

    a.  The Bankruptcy Discharge Injunction Pursuant to Section 524 of the Bankruptcy Code Is an Individual, Court Ordered Injunction and May Only Be Remedied Through a Contempt Citation ....................5

        1.  Only the Issuing Court is Empowered to Enforce A Discharge Injunction through a Contempt Citation. ....................6

II.  Teran Has Waived His Right to Participate in a Class Action .................8

III.  Neither the Proposed Injunctive Class Nor the Proposed Ninth Circuit Class Can Proceed Without An Amended Complaint ......................................10

IV.  The Proposed Classes Do Not Meet the Requirements of Rule 23(a) ..............11

    a.  Teran's Claims are Not Typical of the Proposed Classes .......................11

    b.  Teran is Not an Adequate Class Representative ....................................14

V.  The Proposed Classes Does Not Meet the Requirements of Rule 23(b) ............15

    a.  The Proposed Injunctive Class Does Not Meet the Requirements of Rule 23(b)(2) ....................................................................................15

    b.  Teran's Request for a Declaratory Judgment Is Improper for the Proposed Injunctive Class ....................................................................16

    c.  The Proposed Damages Classes Do Not Meet the Requirements of Rule 23(b)(3) ....................................................................................17

Conclusion.................................................................................................................25

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A. B. v. Hawaii State Dep't of Educ.*,
　30 F.4th 828 (9th Cir. 2022) ...................................................................................... 11

*Alderwoods Group., Inc. v. Garcia*,
　682 F.3d 958 (11th Cir. 2012).......................................................................................5

*Amara v. CIGNA Corp.*,
　775 F.3d 510 (2d Cir. 2014)........................................................................................16

*Amchem Prods. v. Windsor*,
　521 U.S. 591 (1997)............................................................................................. 14, 17

*Anderson v. Credit One Bank, N.A.*,
　884 F.3d 382 (2d Cir. 2018)......................................................................................6, 8

*AT&T Mobility LLC v. Concepcion*,
　563 U.S. 333 (2011) .......................................................................................................9

*Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*,
　637 F.3d 827 (7th Cir. 2011)........................................................................................14

*Banga v. Chevron U.S.A. Inc.*,
　No. C-11-01498 JCS, 2013 WL 71772 (N.D. Cal. Jan. 7, 2013) .........................21

*Barrientos v. Wells Fargo Bank, N.A.*,
　633 F.3d 1186 (9th Cir. 2011)............................................................................5, 6, 15

*In re Belton v. GE Cap. Retail Bank*,
　961 F.3d 612 (2d Cir. 2020).........................................................................................8

*Berlowitz v. Nob Hill Masonic Mgmt.*,
　No. C-96-01241 MHP, 1996 WL 724776 (N.D. Cal. Dec. 6, 1996) ....................11

*Bessette v. Avco Fin. Serv., Inc.*,
　230 F.3d 439 (1st Cir. 2000)..........................................................................................5

*Bilbrey by Bilbrey v. Brown*,
　738 F.2d 1462 (9th Cir. 1984).....................................................................................17

*Bock v. Salt Creek Midstream, LLC*,
　No. 19-1163, 2020 WL 3989646 (D.N.M. July 15, 2020)........................................9

*Bock v. Salt Creek Midstream, LLC*,
　No. Civ. No. 19-1163, 2020 WL 5640669 (D.N.M. Sept. 22, 2020)......................9

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

*Bradley v. Fina*,
  550 F. App'x 150 (4th Cir. 2014)....................................................................5

*Brecher v. Republic of Argentina*,
  806 F.3d 22 (2d Cir. 2015)........................................................................20

*C. P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*,
  No. 3:20-CV-06145-RJB, 2022 WL 16835839 (W.D. Wash. Nov. 9, 2022).....................10

*Carrera v. Bayer Corp.*,
  727 F.3d 300 (3d Cir. 2013)......................................................................21

*Castellanos v. City of Reno*,
  No. 319CV00693MMDCLB, 2021 WL 3634662 (D. Nev. Aug. 16, 2021)........................20

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013).................................................................................2

*CompuCredit Corp. v. Greenwood*,
  132 S. Ct. 665 (2012).............................................................................9

*Connor v. First Student, Inc.*,
  5 Cal. 5th 1026 (2018)............................................................................22

*Costelo v. Chertoff*,
  258 F.R.D. 600 (C.D. Cal. 2009) ...............................................................11

*Cox v. Zale Del., Inc.*,
  239 F.3d 910 (7th Cir. 2001)....................................................................5

*In re Crocker*,
  941 F.3d 206 (5th Cir. 2019).....................................................................7

*DeBremaecker v. Short*,
  433 F.2d 733 (5th Cir.1970) ....................................................................20

*Duarte v. J.P. Morgan Chase Bank*,
  No. CV131105GHKMANX, 2014 WL 12561052 (C.D. Cal. Apr. 7, 2014) ....................21

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011).....................................................................14

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014)....................................................................21

*Fosmire v. Progressive Max Ins. Co.*,
  277 F.R.D. 625 (W.D. Wash. 2011) ..........................................................25

*Garfield v. Ocwen Loan Servicing*,
  811 F.3d 86 (2d Cir. 2016) ......................................................................5

*Gen. Tel. Co. of Sw. v. Falcon,*
    457 U.S. 147 (1982) .......................................................................................... 11, 14

*Gunn v. Univ. Comm, to End the War in Viet Nam,*
    399 U.S. 383 (1970) ................................................................................................ 6

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1988) ........................................................................... 14, 17

*Hanni v. Am. Airlines, Inc.,*
    No. C 08-00732 CW, 2010 WL 289297 (N.D. Cal. Jan. 15, 2010) ...................................... 20

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ............................................................................... 12

*Huebner v. Radaris, LLC,*
    No. 14-CV-04735-VC, 2016 WL 8114189 (N.D. Cal. Apr. 12, 2016) .................................. 22

*Ikeda v. San Francisco Firemen Credit Union,*
    No. 20-CV-08071-TSH, 2021 WL 4776705 (N.D. Cal. Oct. 13, 2021) ............................... 22

*J.L. v. Cissna,*
    No. 18-CV-04914-NC, 2019 WL 415579 (N.D. Cal. Feb. 1, 2019) .................................... 10

*In re Joubert v. ABN AMRO Mort. Group., Inc.,*
    411 F.3d 452 (3d Cir. 2005) ................................................................................. 5

*Kang v. Credit Bureau Connection, Inc.,*
    No. 118CV01359AWISKO, 2022 WL 658105 (E.D. Cal. Mar. 4, 2022) ............................... 21

*Matsushita Elec. Indus. Co. v. Epstein,*
    516 U.S. 367 (1996) (Ginsburg, J., concurring in part and dissenting in part) ..................... 24

*McGraw-Edison Co. v. Preformed Line Products Co.,*
    362 F.2d 339 (9th Cir. 1966) ............................................................................... 17

*In re Nexium Antitrust Litig.,*
    777 F.3d 9 (1st Cir. 2015) .................................................................................. 20

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC,*
    31 F.4th 651 (9th Cir. 2022), *cert. denied sub nom. StarKist Co. v. Olean*
    *Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others Similarly*
    *Situated*, 143 S. Ct. 424 (2022) ........................................................................... 17

*Patterson v. Raymours Furniture Co.,*
    96 F. Supp. 3d 71 (S.D.N.Y. 2015) ......................................................................... 9

*Reagan v. Am. Home Mortg. Servicing Inc.,*
    No. C 11-00704 WHA, 2011 WL 2149100 (N.D. Cal. May 31, 2011) .................................. 23

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

*Sanchez v. Wal Mart Stores*,
  No. 06-CV-02573 (JAM) (KJM), 2009 WL 1514435 (E.D. Cal. May 28,
  2009) ..................................................................................................................... 25

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) .................................................................................................. 2

*In re Shanks*,
  No. 14-5189, 2014 WL 4365962 (Bankr. N.D. Ga. Aug. 28, 2014) .................... 14

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ............................................................................... 23

*Solow v. Kalikow (In re Kalikow)*,
  602 F.3d 82 (2d Cir. 2010) ..................................................................................... 15

*Taggart v. Lorenzen*,
  139 S. Ct. 1795 (2019) .............................................................................. 6, 7, 8, 17, 24

*Trujillo v. First American Registry, Inc.*,
  157 Cal. App. 4th 628, 68 Cal.Rptr.3d 732 (2008) ............................................. 22

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036, 194 L.Ed.2d 124 (2016) ............................................................ 17

*United Student Aid Funds, Inc. v. Espinosa*,
  559 U.S. 260 (2010) ................................................................................................ 12

*Vietnam Veterans of Am. v. C.I.A.*,
  288 F.R.D. 192 (N.D. Cal. 2012) .......................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................... 2, 11, 12, 15, 16

*Walls v. Wells Fargo Bank, N.A.*,
  276 F.3d 502 (9th Cir. 2002) ........................................................................ 5, 6, 7

*Wang v. Chinese Daily News, Inc.*,
  737 F.3d 538 (9th Cir. 2013) ................................................................................. 17

*Windham v. Am. Brands, Inc.*,
  565 F.2d 59 (4th Cir. 1977) (en banc), *cert. denied*, 435 U.S. 968 (1978) ........... 24

*Yokoyama v. Midland Nat. Life Ins. Co.*,
  594 F.3d 1087 (9th Cir. 2010) ............................................................................... 22

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ............................................................................... 23

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

**Statutes**

11 U.S.C. § 523(a)(8)(A)(i) ................................................................... 13, 15

11 U.S.C. § 523(a)(8)(A)(B) .......................................................................... 13

11 U.S.C. § 524(a)(2) ................................................................................. 5, 6

28 U.S.C. § 157 ............................................................................................... 7

28 U.S.C. § 1334 ........................................................................................ 7, 8

28 U.S.C. § 2201 ........................................................................................... 16

Bankruptcy Code § 524 .................................................................. 5, 15, 18

California Consumer Credit Reporting Agencies Act ................................. 1

CCRAA .................................................................. 2, 3, 18, 21, 22, 23

Fair Credit Reporting Act ............................................................................ 21

FCRA ............................................................................................................. 22

Federal Arbitration Act § 2 ........................................................................... 9

**Other Authorities**

1st Sess. (1973) .............................................................................................. 7

Fed. R. Civ. P 23(a)(3) ........................................................................... 11, 14

Fed. R. Civ. P. 23(b)(3)(A)-(D) ................................................................... 23

Federal Rule of Bankruptcy Procedure 7001(9) ....................................... 16

Federal Rule of Civil Procedure 23 .................................................. 2, 20, 25

Federal Rule of Civil Procedure Rule 23 ..................................................... 6

H.R. Rep. No. 95–595 (1978), reprinted in 1978 U.S.C.C.A.N. 5963 ......................................... 7

5 James W. Moore, *Moore's Federal Practice* § 23.21[3][c] (2001) ............ 20

Report of the Commission on the Bankruptcy Laws of the United States, H.R.
    Doc. No. 137, 93d ................................................................................... 7

Rule 23(a) ........................................................................ 1, 2, 11, 12, 17

Rule 23(a)(4) ................................................................................................. 14

vi
DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

Rule 23(b)..................................................................................2, 15

Rule 23(b)(2).............................................................2, 3, 15, 16

Rule 23(b)(3)..................................................2, 3, 17, 21, 22, 23, 24

Rule 9014..................................................................................6, 15

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

1      Navient Solutions, LLC and Navient Credit Finance Corporation (together, "Navient"), by

2  and through undersigned counsel, hereby file their opposition (the "Opposition") to the Motion for

3  Class Certification [Dkt. Nos. 67, 70] (the "Motion" or "Mot.")[1] filed by plaintiff Oscar D. Teran

4  ("Plaintiff" or "Teran").  In support, Navient respectfully states as follows:

5  **INTRODUCTION**

6      In the Motion, Teran sets forth three Proposed Classes – one class seeking injunctive relief

7  and two classes seeking monetary relief.  All three proposed classes stem from Teran's allegation

8  that Navient improperly collected on debts that were purportedly discharged in bankruptcy.  The

9  second of the two proposed monetary relief classes is confined to a proposed class allegedly

10 harmed under the California Consumer Credit Reporting Agencies Act ("CCRAA").

11     First, the Court lacks authority to adjudicate many of the discharge claims that are core to

12 Plaintiff's requested classes.  Under binding Ninth Circuit precedent and under the standards of

13 every Circuit court to consider the issue, this Court lacks the authority to enforce discharge orders

14 entered by courts outside the Northern District of California.  The Ninth Circuit also prohibits the

15 use of an adversary proceeding to enforce discharge violation claims, which must be brought as a

16 contested motion in the bankruptcy case that issued the discharge order, and such contested matters

17 cannot be brought on a class basis under the Federal Rules of Bankruptcy Procedure.

18     This same Ninth Circuit authority has likewise rejected attempts to use a duplicative

19 injunction to enforce discharge orders, as Plaintiff requests here.  And, against this backdrop,

20 Plaintiff's request for declaratory relief is inappropriate under prevailing caselaw.  These factors

21 alone are fatal to Plaintiff's proposed injunctive and bankruptcy discharge-related classes.

22     Moreover, Teran has failed to demonstrate the elements necessary to certify a class for any

23 of the three Proposed Classes.  Teran, along with many other putative class members, has

24 contractually waived his ability to participate in a class action.  And Teran cannot satisfy the

25 typicality or adequate representation requirements of Rule 23(a).  There are manifest conflicts

26 between his interests and the interests of the putative members of the Proposed Classes.  The failure

27 _____

28 [1] Capitalized terms not otherwise defined herein have the meaning given them in the Motion.

1

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

1  to meet each of these prerequisites is fatal to class certification.

2      Teran has likewise failed to demonstrate any of the prerequisites required under Rule 23(b).

3  The relief sought by Teran for the proposed Rule 23(b)(2) injunctive class is entirely duplicative

4  of the existing discharge injunctions already in place for the putative members of that class, and

5  the monetary relief effectively sought by that proposed class is not incidental to the injunctive

6  relief sought.  Nor is such alleged monetary relief susceptible to a uniform determination,

7  precluding certification under Rule 23(b)(2).

8      Likewise, Teran cannot meet the predominance and superiority requirements of the

9  proposed damages classes under Rule 23(b)(3).  Individual questions regarding Teran's claims for

10  damages and restitution overshadow any liability analysis and are not amenable to class treatment,

11  rendering the class unascertainable.  These individual questions, highlighted in particular by the

12  rigorous showing of actual harm that the putative CCRAA class members would have to show,

13  similarly preclude a finding that class adjudication of these matters is superior to adjudication in

14  individual actions.  For these reasons, the Court should not certify Plaintiff's Proposed Classes.

15                          <u>S</u>TANDARD OF <u>R</u>EVIEW

16      Plaintiff must "affirmatively demonstrate [his] compliance" with each requirement of

17  Federal Rule of Civil Procedure 23, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011), by

18  offering "evidentiary proof" to satisfy each requirement by a preponderance of the evidence,

19  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  Plaintiff's evidentiary proffer is subject to a

20  "rigorous analysis" by this Court.  *See Wal-Mart*, 564 U.S. at 351.  A class action is "an exception

21  to the usual rule that litigation is conducted by and on behalf of the individual named parties only."

22  *Comcast Corp.*, 569 U.S. at 33 (internal quotation marks and citation omitted).  A case cannot be

23  certified as a class action unless it meets all the prerequisites of Rule 23(a)—commonly referred

24  to as "numerosity," "commonality," "typicality," and "adequacy"—and at least one of the prongs

25  of Rule 23(b).  *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398

26

27

28

1 | (2010).[2]

3 | **Injunctive Relief Class for Non-Qualified Loans ("Class 1") (the "Proposed Injunctive Class")**

4 | Pursuant to FED. R. CIV. P. 23(b)(2): Every natural person residing in the United States and its Territories: (1) who obtained a bankruptcy discharge order covering a Navient debt from October 17, 2005 until the time that class notice is to be provided in this matter; (2) the covered debt was for the purpose of: bar study, relocation, medical residency, career training, continuing education, purchasing computer(s), or obtaining professional license(s) or, regardless of purpose, for study at any college or university that Navient's records classify as non-Title IV, K-12, unaccredited, or not located within the U.S.; and (3) which covered debts reflect a balance on Navient's records as of December 15, 2022.

9 | **Ninth Circuit Class for Non-Qualified Loans ("Class 2") (the "Proposed Ninth Circuit Class")**

10 | Pursuant to FED. R. CIV. P. 23(b)(3): Every natural person residing in the United States and its Territories: (1) who obtained a bankruptcy discharge order within the Ninth Circuit covering a Navient debt from October 17, 2005 until the time that class notice is to be provided in this matter; (2) the covered debt was for the purpose of: bar study, relocation, medical residency, career training, continuing education, purchasing computer(s), or obtaining professional license(s) or, regardless of purpose, for study at any college or university that Navient's records classify as non-Title IV, K-12, unaccredited, or not located within the U.S.; and (3) from whom Navient collected any sum of money toward that covered debt after the discharge order.

15 | **California Unfair Collection and Reporting Class for Non-Qualified Loans ("Class 3") (the "Proposed CCRAA Class")**

17 | Pursuant to FED. R. CIV. P. 23(b)(3): Every natural person residing in the State of California: (1) who obtained a bankruptcy discharge order covering a Navient debt from October 17, 2005 until the time that class notice is to be provided in this matter; (2) the covered debt was for the purpose of: bar study, relocation, medical residency, career training, continuing education, purchasing computer(s), or obtaining professional license(s) or, regardless of purpose, for study at any college or university that Navient's records classify as non-Title IV, K-12, unaccredited, or not located within the U.S.; and (3) on whose credit report Navient reported the covered debt with an outstanding balance after the date of the discharge order between September 1, 2018 until the time that class notice is to be provided in this matter.

22 | Mot. at 3-4.[3]

---

25 | [2] Navient notes that the hearing to be scheduled on the Motion is an evidentiary hearing, and Navient reserves all rights to present its own evidence and/or supplement its own briefing based upon evidence presented by Plaintiff at such hearing.

27 | [3] Navient will refer to the "Proposed Ninth Circuit Class" and the "Proposed CCRAA Class" collectively as the "Proposed Damages Classes." Navient will refer to all three proposed classes collectively as the "Proposed Classes."

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

Navient has endeavored to determine some indicative aspects of the makeup of these proposed classes. Navient began this process by directing a search of certain borrower records involving loans for (a) bar study courses, (b) medical residency or relocation expenses, or (c) attendance at non-Title IV schools against the Court's PACER system (through a third-party vendor) to determine if the borrower on each such loan was subject to a bankruptcy discharge within the Ninth Circuit. This search resulted in a list of 8,703 unique bankruptcy cases. Of these cases, approximately 7,678 involved Chapter 7 discharges and approximately 1,025 cases involved discharges through a Chapter 13 plan process.

| Jurisdictions | Number of Discharges |
|---|---|
| Alaska | 28 |
| Arizona | 1,429 |
| N.D. Cal. | 1,008 |
| C.D. Cal. | 2,728 |
| E.D. Cal. | 1,298 |
| S.D. Cal. | 653 |
| Guam | 1 |
| Hawaii | 86 |
| Idaho | 170 |
| Montana | 67 |
| Nevada | 690 |
| Oregon | 484 |
| E.D. Wa. | 109 |
| W.D. Wa. | 708 |

Navient also endeavored to determine which judges within the Northern District of California issued discharge orders from within this District. A summary chart of Navient's findings is below.

| Judge | Active on N.D. Cal. Bench | Number of Discharges |
|---|---|---|
| Judge Alan Jaroslovsky | N | 100 |
| Judge Arthur S. Weissbrodt | N | 109 |
| Judge Charles Novack | Y | 95 |
| Judge Dennis Montali | Y | 95 |
| Judge Edward D. Jellen | N | 90 |
| Judge Hannah L. Blumenstiel | N | 72 |
| Judge James R. Grube | N | 4 |
| Judge Leslie J. Tchaikovsky | N | 67 |
| Judge M. Elaine Hammond | Y | 93 |
| Judge Marilyn Morgan | N | 12 |
| Judge Randall J. Newsome | N | 63 |
| Judge Roger L. Efremsky | Y | 165 |
| Judge Stephen L. Johnson | Y | 131 |

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

| Judge Thomas E. Carlson | N | 66 |
| Judge William J. Lafferty | Y | 117 |

<u>**ARGUMENT**</u>

**I. This Court Lacks Authority to Enforce Discharge Orders Issued Outside of the Northern District of California**

    **a. The Bankruptcy Discharge Injunction Pursuant to Section 524 of the Bankruptcy Code Is an Individual, Court Ordered Injunction and May Only Be Remedied Through a Contempt Citation**

The Bankruptcy Code provides in relevant part that a discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect" any debt for which a debtor received a discharge in bankruptcy. 11 U.S.C. § 524(a)(2). Thus, when a bankruptcy court enters an order discharging a debtor from his or her liability on eligible, properly scheduled prepetition debts, it effects an injunction against collection on discharged debts.

There is no statutory provision (in the Bankruptcy Code or elsewhere) establishing an express cause of action for alleged violations of bankruptcy discharge orders. As a result, every court to consider the issue (including the Ninth Circuit) has either expressly held or strongly indicated that no private right of action exists by which a debtor can assert claims that a creditor has violated his or her discharge. *See, e.g.*, *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1188–89 (9th Cir. 2011); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002); *Garfield v. Ocwen Loan Servicing*, 811 F.3d 86, 91–92 (2d Cir. 2016); *Bradley v. Fina*, 550 F. App'x 150, 154 (4th Cir. 2014); *Alderwoods Group., Inc. v. Garcia*, 682 F.3d 958, 966, 970 (11th Cir. 2012); *Cox v. Zale Del., Inc.*, 239 F.3d 910, 915 (7th Cir. 2001); *Pertuso*, 233 F.3d at 421–23; *Bessette v. Avco Fin. Serv., Inc.*, 230 F.3d 439, 445 (1st Cir. 2000); *see also In re Joubert v. ABN AMRO Mort. Group., Inc.*, 411 F.3d 452, 456 (3d Cir. 2005).

Since a discharge order "operates as an injunction," 11 U.S.C. § 524(a)(2), violations must be addressed through a motion or request to hold the creditor in contempt, not through an adversary proceeding. *See, e.g.*, *Barrientos*, 633 F.3d at 1191 ("Contempt proceedings for a violation of §

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

524 must be initiated by motion in the bankruptcy case under Rule 9014 and not by adversary proceeding."); *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 509 (9th Cir. 2002). As the Second Circuit has held, this is the case even though the scope of the discharge injunction is defined by statute: "Neither the statutory basis of the [discharge] order nor its similarity—even uniformity—across bankruptcy cases alters the simple fact that the discharge injunction is an order issued by the bankruptcy court[.]" *Anderson v. Credit One Bank, N.A.*, 884 F.3d 382, 390–91 (2d Cir. 2018).

In short, Plaintiff is not permitted to seek enforcement of a discharge violation in an adversary proceeding but must do as a contested matter in his primary bankruptcy case. *Barrientos*, 633 F.3d at 1191. And this limitation precludes him from bringing his discharge violation claims as a class action, as Federal Rule of Civil Procedure Rule 23 governing class certification is incorporated by Federal Rule of Bankruptcy Procedure FRBP 7023. Class treatment is not available under the 9000-series Federal Rules of Bankruptcy Procedure governing contested matters under which this claim must be brought.

### 1. Only the Issuing Court is Empowered to Enforce A Discharge Injunction through a Contempt Citation.

From the clear rule that discharge injunctions can only be enforced through actions for contempt, it follows that this Court lacks authority to impose the nationwide or Circuit-wide relief that Plaintiff seeks. That authority is lacking because the power to address contemptuous conduct in violation of an injunction resides uniquely and solely in the court that issued the order allegedly violated. *See, e.g., Gunn v. Univ. Comm, to End the War in Viet Nam*, 399 U.S. 383, 389 (1970).

The United States Supreme Court, in *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019), confirmed that this limitation applies in cases alleging violations of discharge injunctions (which are statutory and uniform) to the same extent as in cases involving non-statutory injunctions that are hand-crafted by individual judges.

As the Court said in *Taggart*, "[t]he statutes specifying that a discharge order 'operates as an injunction'; § 524(a)(2), and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, § 105(a), bring with them the 'old soil' that has long governed how courts enforce injunctions. . . . [A]s part of the 'old soil' they bring

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

with them, the bankruptcy statutes incorporate the traditional standards in equity practice for determining when a party may be held in civil contempt for violating an injunction." 139 S. Ct. at 1801.

This "old soil" includes the "traditional" limitation from "equity practice" that only the issuing court can address contempt claims for violating an injunction. Indeed, this understanding has been endorsed by the Ninth Circuit in *Walls*, where, in examining whether a private right of action existed for bankruptcy discharge violations, the court noted:

> Implying a private remedy here could put enforcement of the discharge injunction in the hands of a court that did not issue it (perhaps even in the hands of a jury), which is inconsistent with the present scheme that leaves enforcement to the bankruptcy judge whose discharge order gave rise to the injunction. This makes a good deal of sense, given that the equities at issue are bankruptcy equities, and it would undermine Congress's deliberate decision to place supervision of discharge in the bankruptcy court:

276 F.3d at 509-10 (citing Report of the Commission on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93d Cong., 1st Sess. (1973), quoted in H.R. Rep. No. 95–595 at 46–47 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6008.)

The Fifth Circuit, in a 2019 opinion issued after *Taggart* was decided, reached the same conclusion, this time in the precise class-action context now before this Court. *See In re Crocker*, 941 F.3d 206 (5th Cir. 2019). In *Crocker*, the bankruptcy court determined it had jurisdiction to interpret and enforce against Navient discharge orders entered in other districts. *See id.* at 215. In essence, the *Crocker* bankruptcy court reasoned that: (a) because a discharge injunction was not subject to discretionary interpretation, there should not be any obligation to return to the issuing court for its enforcement; and (b) when enforcing a discharge, a court is simply enforcing the statute. *Id.* The bankruptcy court also cited as authority 28 U.S.C. § 157, which sets out many of the procedures for bankruptcy courts and the authority of the district courts over them, and 28 U.S.C. § 1334, which grants to district courts "original and exclusive jurisdiction of all cases under" the Bankruptcy Code, with some exceptions. *Id.*

The Fifth Circuit soundly rejected the bankruptcy court's reasoning and conclusion, focusing its analysis on a narrow question: "[O]ur question is limited: may a different bankruptcy court than the one that issued the discharge that caused the injunction to arise, enforce that

injunction regardless of whether the impediment is jurisdiction, venue, prudential considerations, or something else?" *Id*.

In ruling that the issuing court was the sole place where the contempt proceeding could occur, the Fifth Circuit found that "the Supreme Court decision [in *Taggart*] placed the civil contempt that results from violating a bankruptcy discharge injunction under the general principles for contempt" and held that enforcement of discharge injunctions through contempt proceedings is limited to the "originating court." *Id*. at 216 (citing *Taggart*, 139 S. Ct. at 1801; *Anderson*, 884 F.3d at 390–91.)

Similarly, the Second Circuit has strongly endorsed this view in its published decisions. *See In re Belton v. GE Cap. Retail Bank*, 961 F.3d 612, 617-18 (2d Cir. 2020):

> [W]e question whether a bankruptcy court would even have jurisdiction to hold a creditor in contempt of another court's order. Most circuits that have considered the issue have rejected the notion. . . . And those cases are buttressed by the Supreme Court's recent decision in Taggart, which made clear that the contempt powers provided under sections 524(a)(2) and 105(a) "bring with them the 'old soil' that has long governed how courts enforce injunctions."

*See also Anderson*, 844 F.3d at 391 ("[V]iolations of this court-ordered injunction are enforceable only by the bankruptcy court and only by a contempt citation.").

In sum, the Ninth Circuit along with leading circuit authority has explicitly held that only the issuing court may enforce a bankruptcy discharge order, precluding certification of any of the proposed classes.

## II.     Teran Has Waived His Right to Participate in a Class Action

Further, Teran has waived his right to participate in a class action. In the promissory note for his Bar Study Loan,[4] Teran agreed that, upon the invocation of either party's election to arbitrate issues regarding his loan, he waived his ability to participate in any class action. Box Decl., Ex. A at 7.

Navient has already elected to arbitrate Teran's claims, in a motion to compel arbitration

---

[4] Plaintiff's redacted Bar Study Loan promissory note is attached as Exhibit A ("Ex. A") to the attached Declaration of Stephanie Box ("Box Decl.")

Case: 20-03075   Doc# 101   Filed: 02/03/23   Entered: 02/03/23 17:14:31   Page 16 of 33

that remains pending before the Court. Section 2 of the Federal Arbitration Act "requires courts to enforce agreements to arbitrate according to their terms," *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012) (citation omitted); *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 78–79 (S.D.N.Y. 2015). Importantly, however, even if the Court were to determine that the claims in this lawsuit were not subject to mandatory arbitration, such ruling would not affect the class action waivers contained in Teran's Bar Study Loan, which remain enforceable. Indeed, courts have upheld class action waivers even where the underlying arbitration clause was not enforceable. *See, e.g., Bock v. Salt Creek Midstream, LLC*, No. 19-1163, 2020 WL 3989646, at *16 (D.N.M. July 15, 2020), *report and recommendation adopted*, 2020 WL 5640669 (D.N.M. Sept. 22, 2020). The arbitration agreement in *Bock* contained language waiving "any right for any dispute to be brought, heard, decided, or arbitrated as a class and/or collective action." *Id.* at * 14. Although the plaintiffs argued the class action waiver was "part and parcel of the arbitration agreement," the court rejected that interpretation, finding that the language of the waiver "plainly applies to '*any* dispute' that can 'be brought, heard, decided, *or arbitrated*.'" *Id.* at *15 (emphasis in original). The court determined that this disjunctive language "clearly contemplate[d] disputes that can be resolved in arbitration *or* a forum other than arbitration, that is, a court of competent jurisdiction." *Id.* Just as *Bock* emphasized the language of the waiver itself, so too should the agreement here be read according to its plain terms.

The "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344 (2011). Here, application of the class action waiver requires nothing more than either party's election to arbitrate. Further, "[t]he text of the class action waiver clause provides [] support for the conclusion that the parties intended for the class action waiver clause[] to apply outside of the context of arbitration," *Ranzy*, 2011 WL 13257274, at *5, as the waiver in this case encompasses "any Claims" arising from the Note, not merely claims in active arbitration. Box Decl., Ex. A. at 6. In addition, the agreement here contains a severability clause, such that even a finding that the arbitration provision is unenforceable has "no effect on the applicability of the class action waiver." *Bock v. Salt Creek Midstream, LLC*, No. Civ. No. 19-1163, 2020 WL 5640669, at *9

(D.N.M. Sept. 22, 2020) ("*Bock II*") (enforcing a class action waiver after declining to compel arbitration because "[b]y its plain language, the class action waiver provision [was] not tied to the arbitration provisions" of the arbitration agreement).

Accordingly, Teran (and many other members of the purported class) have waived any ability to participate in a class action. Without a valid class representative (Teran), the Court cannot certify the purported class.

## III. Neither the Proposed Injunctive Class Nor the Proposed Ninth Circuit Class Can Proceed Without An Amended Complaint

Here, Teran's three Proposed Classes are defined for the first time in this Motion. The first two of the three Proposed Classes in Teran's motion are materially different, and as detailed in full above, greatly expand both the geographical reach and scope of the original proposed classes. "[A] plaintiff can modify the proposed class if the proposed modifications are (1) minor, (2) require no additional discovery, and (3) do not cause prejudice to the Defendants." *C. P. by & through Pritchard v. Blue Cross Blue Shield of Illinois*, No. 3:20-CV-06145-RJB, 2022 WL 16835839, at *3 (W.D. Wash. Nov. 9, 2022). Teran's vastly expanded class definitions fail that test.

In the Complaint, Teran proposed a primary class limited jurisdictionally to "[p]ersons who filed for bankruptcy protection in the U.S. Bankruptcy Court for the Northern District of California," (Complt. par. 57) and a subclass limited jurisdictionally to "persons with addresses in the State of California who filed for bankruptcy protection in the U.S. Bankruptcy Court for the Northern District of California." (Complt. par. 58). The Proposed Injunctive Class and the Proposed Ninth Circuit Class expand those jurisdictional constraints significantly to include "[e]very natural person residing in the United States and its Territories." The only meaningful limitation on the Proposed Injunctive Class is that its members "obtained a bankruptcy discharge order covering a Navient debt [after] October 17, 2005," and the only meaningful limitation on the Proposed Ninth Circuit class is that it applies only to borrowers who received discharges within the Ninth Circuit. As explained by this Court in *J.L. v. Cissna*, No. 18-CV-04914-NC, 2019 WL 415579, at *5 (N.D. Cal. Feb. 1, 2019), district courts in this Circuit typically employ one of three options when addressing a modified class definition—(1) require the plaintiffs to amend their

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

complaint, (2) permit the plaintiffs to proceed on a class narrower than the one proposed in the complaint, or (3) permit the plaintiffs to proceed with a modified class definition. However, regarding the last option, modification is appropriate only "so long as the proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants." *Id.*

Under that framework, modification here is not permissible, because Teran's proposed modifications are substantial and would require significantly more discovery across a nationwide class of debtors. The only proper course of action for Teran to proceed on those class definitions is through an amended complaint. *See Costelo v. Chertoff*, 258 F.R.D. 600, 604–05 (C.D. Cal. 2009) ("The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it."); *Berlowitz v. Nob Hill Masonic Mgmt.*, No. C-96-01241 MHP, 1996 WL 724776, at *2 (N.D. Cal. Dec. 6, 1996) ("The court is bound by the class definition provided in the complaint…[t]he court will not consider certification of the class beyond the definition provided in the complaint unless plaintiffs choose to amend it.").

## IV. The Proposed Classes Do Not Meet the Requirements of Rule 23(a)

For the Court to certify any of the three Proposed Classes, Teran must satisfy each of the elements of Rule 23(a) of the Federal Rules of Civil Procedure as to each proposed class. The trial court has an obligation to perform a "rigorous analysis" before concluding that a class has satisfied the requirements of Rule 23(a). "Frequently [this] will entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 350; *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action . . . . [S]ometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.") (internal citation and quotation marks omitted).

### a. Teran's Claims are Not Typical of the Proposed Classes

As set forth by the Ninth Circuit, the "test of typicality" under Fed. R. Civ. P 23(a)(3) "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir.

2022). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). A court should not certify a class if "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *Id.*

As the Supreme Court noted, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Wal-Mart*, 564 U.S. at 350. "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

Any legal theories under which Teran may recover differ substantially from those of the putative members of the Proposed Classes. Teran received a discharge order pursuant to his Chapter 7 plan in his particular bankruptcy proceeding, but would purport to represent the interests of both (a) Chapter 13 debtors with potentially different and varied plans, as well as (b) the interests of Chapter 7 debtors with uniform discharge orders. As the Court is aware, Chapter 13 plans may specify varying treatments for classes of creditors pursuant to a plan. Further, the Supreme Court has held that the terms of confirmed Chapter 13 plans constitute final judgments with *res judicata* effect, even in circumstances when the terms of the confirmed plan may be contrary to statutory requirements. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 275 (2010). Thus, each Chapter 13 debtor has potentially unique defenses or circumstances that may not apply to Teran.

Apart from the character of the bankruptcy discharge at issue, the legal claims and defenses regarding Teran's particular loan—the Bar Study Loan—also vary significantly from the class of loans whom he would purport to represent. There are numerous other loan programs involving borrowers with a discharge from within the Ninth Circuit, as illustrated in the chart below:[5]

---

[5] This chart excludes loans where there is no outstanding balance and where Navient's records do not show any payments made following the date of discharge.

12

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

| Loan Program | Number of Loans |
|---|---|
| Third Party | 1 |
| Alternative Loan Program | 5 |
| American Express Loan Program | 1 |
| Bar Study | 304 |
| College Advantage | 20 |
| Chase | 2 |
| Career Training | 1805 |
| DOC Loan | 2 |
| Grad Excel | 477 |
| Excel | 14 |
| Tuition Answer | 25 |
| Private Credit Consolidation | 10 |
| Excel | 10 |
| NYU Excel | 10 |
| New Family Education Program | 1 |
| LAWLOANS | 25 |
| MEDLOANS | 56 |
| MBA LOANS | 3 |
| MEDEX | 42 |
| University of Phoenix | 3 |
| Signature Student Loan | 230 |

The legal rights and defenses available to the borrowers in this population in many circumstances vary markedly from Teran's Bar Study Loan, with each loan program (or even individual loans within such program) requiring a separate analysis as to whether such loan is (a) made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution and is thus exempt from discharge under 11 U.S.C. § 523(a)(8)(A)(i) or (b) was for attendance at a Title-IV eligible institution or program and thus is outside the class definition and exempt from discharge under 11 U.S.C. § 523(a)(8)(A)(B).[6]

Finally, some of the borrowers in the putative classes may have viable undue hardship claims, which Teran has not asserted. Neither can Teran represent the interests of any borrowers

---

[6] Navient has contemporaneously filed sample documents regarding some of these loan programs as illustrative examples of the variations among such programs. *See, e.g*, Box Decl., Exhibit B-1 (LAWLOANS Bar Study Loan Application); B-2 (Grad Excel Loan Program); B-3 (Tuition Answer Loan Application); B-4 (LAWLOANS Program Quick Reference Guide); B-5 MEDLOANS Loan Program Quick Reference Guide); B-6 (MBA Loans Quick Reference Guide); B-7 (Signature Loan Program Quick Reference Guide); B-8 (Smart Option Quick Reference Guide).

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

whose loans are owned by entities other than Navient. *Cf. In re Shanks*, No. 14-5189, 2014 WL 4365962, at *1 (Bankr. N.D. Ga. Aug. 28, 2014) (explaining that the holder of student loan debt is a required party for purposes of dischargeability determinations).

Plainly, the claims of Teran are not typical of the amalgamated purported classes and thus do not meet the requirements of Rule 23(a)(3).

### b. Teran is Not an Adequate Class Representative

Teran is not an adequate class representative under Rule 23(a)(4). The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the purported class they seek to represent. *Falcon*, 457 U.S. 147 at 157–158, n. 13 (1982). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625–26 (1997). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988). Teran cannot pass muster under any of these criteria.

As a threshold matter, as discussed above, Teran executed an enforceable class action waiver and therefore cannot serve as an adequate representative of the putative members of the Proposed Classes. Further, Teran's apparent disinterest in pursuing claims potentially available to the purported class, including undue hardship claims, also creates a manifest conflict with members of the class. *See Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.,* 637 F.3d 827, 830 (7th Cir. 2011) ("A representative can't throw away what could be a major component of the class's recovery."). In addition, Teran cannot effectively represent borrowers with loan programs with unique attributes and individualized defenses that differ from his own, including without limitation the potential enforceability of class action waivers or arbitration agreements under differing state laws and/or judicial determinations of whether programs other than the LAWLOANS program were funded in whole or in part by governmental units or nonprofits and therefore are excepted

from discharge under Section 523(a)(8)(A)(i).

## V.    The Proposed Classes Does Not Meet the Requirements of Rule 23(b)

### a.    The Proposed Injunctive Class Does Not Meet the Requirements of Rule 23(b)(2)

As set forth above, a discharge order is an injunction. It prohibits creditors from collecting or attempting to collect certain prepetition debts. Litigants enforce discharge injunctions through contempt proceedings. *See, e.g., Barrientos*, 633 F.3d at 1191 ("Contempt proceedings for a violation of § 524 must be initiated by motion in the bankruptcy case under Rule 9014 and not by adversary proceeding."). Against this backdrop, Teran's Proposed Injunctive Class fails because the relief sought would be duplicative of the discharge injunction Teran has already received. That is, the discharge that Teran obtained already enjoins—to the extent applicable—creditors from attempting to collect prepetition debts that are discharged. In other words, Teran's requested injunction demands no more relief than what the Bankruptcy Code already provides. *See id.* at 1190 ("Plaintiff in reality seeks a contempt order for the violation of an injunction that already exists . . . He cannot seek a second-order injunction, as it were. An injunction against violating an existing injunction would be superfluous, adding no judicial action and providing no additional relief.") (citing *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 93–94 (2d Cir. 2010)).

Furthermore, monetary relief is not incidental to the requested injunctive relief. The Supreme Court held in *Wal-Mart* that claims for monetary relief cannot be certified in an injunctive class under Rule 23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief." *Wal-Mart*, 564 U.S. at 360. In that case, the monetary claims were to restore backpay, similar to the claims for restitution in this case. The Court explained: "[C]laims for individualized relief . . . do not satisfy the Rule. The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Id.* (quotations and citations omitted). Unlike in other cases where debtor class actions have been certified (for claims other than discharge-violation claims), a class action here will not eliminate piecemeal litigation because the "circumstances and court orders differ" among all of the debtor-

Case: 20-03075    Doc# 101    Filed: 02/03/23    Entered: 02/03/23 17:14:31    Page 23 of 33

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

class members' bankruptcy cases.

Significantly, Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, at 360-61; *see also, e.g., Amara v. CIGNA Corp.*, 775 F.3d 510, 519 (2d Cir. 2014) ("Class actions based on claims for individualized monetary relief—implicating the due process rights of absent class members, who need not be given notice and opt-out rights pursuant to Rule 23(b)(2)—are impermissible under this provision."). Under Plaintiff's Proposed Injunctive Class, for the putative class members who have already paid off their loans, it is obvious that monetary claims are not incidental because there is nothing to enjoin after collections have ceased; the real relief such class members seek is purely monetary. *Cf., e.g., Wal-Mart*, 564 U.S. at 348 n.4. And for all class members, regardless of their loan balances, it is equally obvious that the monetary relief potentially available (1) is not automatically recoverable, and (2) varies for each class member.

Not only is the potential top-line monetary relief different from borrower to borrower even if liability were established (*e.g.*, what is their loan balance, and how much did they pay post-discharge), Navient's defenses to individual claims (discussed further below) prevent such relief from being incidental. *Id.* at 367. Although Teran attempts to sidestep the full requirements of Rule 23(b)(2) by separating out the Proposed Injunctive Class from the two Proposed Damages Classes, in reality, it is plain that the gravamen of Teran's Complaint as to all of the Proposed Classes is one of monetary relief.

### b. Teran's Request for a Declaratory Judgment Is Improper for the Proposed Injunctive Class

Teran requests a declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that Plaintiff's and the purported Proposed Injunctive Class members' loans were discharged upon entry of the applicable discharge orders. *See* Complt. par. 78. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides in relevant part that "in a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Nevertheless, "courts have generally recognized two criteria

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

for determining whether declaratory relief is appropriate: '(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir. 1984) (quoting *McGraw-Edison Co. v. Preformed Line Products Co.,* 362 F.2d 339, 342 (9th Cir. 1966)).

Here, a separate declaratory judgment for either Teran or members of the Proposed Injunctive Class would be pure surplusage, and it would be inappropriate given the twin aims of legal certainty and conflict resolution and also usurp the authority of the issuing courts to determine any contempt remedies. *See Taggart*, 139 S. Ct. at 1804 (rejecting strict liability framework in assessing contempt for discharge violations, requiring instead that no "fair ground of doubt" exists regarding the legality of a creditor's collection actions to impose contempt sanctions).

### c. The Proposed Damages Classes Do Not Meet the Requirements of Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must "predominate over any questions affecting only individual members"; and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods..*, 521 U.S. at 615. Rule 23(b)(3), by its plain terms, imposes a "far more demanding" inquiry into the common issues which serve as the basis for class certification. *Amchem Prods.*, 521 U.S. at 623-24.

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual issues' in the case, and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Wang v. Chinese Daily News, Inc.,* 737 F.3d 538, 545 (9th Cir. 2013) (quoting *Hanlon*, 150 F.3d at 1022). Specifically, "'[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, 143 S. Ct. 424 (2022) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct.

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

1036, 1045, 194 L.Ed.2d 124 (2016)).

                i.       **Common Questions Do Not Predominate Over Questions Affecting Only Individual Members**

Common questions do not predominate here: Virtually the only common thread relating to liability among the purported class members is receipt of a bankruptcy discharge in some form from any court within the Ninth Circuit (for the Proposed Ninth Circuit Class) or within just California (for the Proposed CCRAA Class). To determine damages in the manner that Teran seeks, a plethora of individualized factors must be resolved for each member of the class. These individualized factual determinations regarding the claims overwhelm the common questions of liability and make class treatment for such claims infeasible, much less superior. Such individual inquiries include, among others:

- Did the putative class member make any misrepresentation about his or her enrollment status?

- Did the putative class member execute a class action waiver that precludes his or her participation as a class member in this action?

- Did the putative class member re-affirm her student loan debt under Section 524 or otherwise compromise her claims relating to the dischargeability of her student loan debt through a separate adversary proceeding or contested matter?

- For Chapter 13 debtors, how were the putative class member's student loans treated, if at all, in the confirmed plan? Did such debtors make payments on the loan(s) during the plan period? Does the res judicata impact of the order confirming the Chapter 13 plan preclude relief?

- Did the putative class member properly schedule her student loan debt that is or was at any relevant time serviced or owned, respectively, by Navient (an inquiry not necessarily limited to an examination of whether Navient was merely named somehow in the schedules)?

- Did Navient, or a predecessor, receive adequate notice of the petition and the discharge?

-18-
DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

- Which, if any, of a putative class member's loans are educational benefit overpayments or loans made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or non-profit institution?

- Prior to, or after, discharge, did the putative class member initiate any adversary or other proceeding to determine the dischargeability of her student loan(s)?

- Prior to, or after, discharge, did the putative class member seek or obtain any legal advice concerning the dischargeability of her student loan(s)?

- Are there grounds for non-dischargeability under Section 523(a)(8)(A) or other grounds such as, without limitation, sections 523(a)(2), (3)?

- Whether the putative class member's discharge is subject to revocation under Section 727(d)?

- Whether a putative class member has already obtained a determination of, or settled, the dischargeability of his or her student loans (which is not a searchable data point)?

- Did Navient send any communication to the putative class member after the discharge regarding the impact of the discharge on the loan(s)?

- Were any payments made on the putative class member's student loan(s) post-discharge? If so, were any of those payments made by a non-discharged co-signer or guarantor or by anyone other than the borrower?

- To the extent the putative class member made any payments post-discharge, why? Were the payments voluntary? What is the dollar amount of the post-discharge payments made by the putative class member that were not voluntary?

- Post-discharge, what is the extent of the collection activity (phone calls, emails, texts, letters) directed to the putative class member? How much activity actually reached the putative class member?

- How much of the post-discharge collection activity came from Navient as opposed to a third-party collection agency?

- How much of the post-discharge collection activity was "willful" or inadvertent?

- Are there equitable factors or circumstances applicable to the putative class member

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

that would impact any contempt remedy?[7]

The presence of these multiple individualized inquiries simply overwhelms the ability to certify a class.

### ii. The Proposed Damages Classes Are Not Ascertainable

The presence of these varied factors bearing on the identification of putative class members and quantifying any injury to each raises doubts that the Proposed Damages Classes are ascertainable and administratively feasible. "While it is not an enumerated requirement of Rule 23, courts have recognized that 'in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.'" *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (quoting *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970)); *see also Castellanos v. City of Reno*, No. 319CV00693MMDCLB, 2021 WL 3634662, at *4 (D. Nev. Aug. 16, 2021) ("In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite. The party seeking certification must demonstrate that an identifiable and ascertainable class exists."). To that end, "'[a] class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class.'" *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010) (quoting 5 James W. Moore, *Moore's Federal Practice* § 23.21[3][c] (2001)).

Likewise, other circuits have made express the requirement that a workable means exists to determine the identity and injury of proposed class members. *See In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015) ("At the class certification stage, the court must be satisfied that, prior to judgment, it will be possible to establish a mechanism for distinguishing the injured from the uninjured class members. The court may proceed with certification so long as this mechanism will be "administratively feasible"); *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) ("A class is ascertainable when defined by objective criteria that are administratively

---

[7] Should Plaintiff attempt to seek individual emotional or consequential damages, such damages also would necessarily entail an individualized inquiry.

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

feasible and when identifying its members would not require a mini-hearing on the merits of each case."); *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate.") (quotations omitted); *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) ("[A] trial court should ensure that class members can be identified "without extensive and individualized fact-finding or mini-trials, a determination which must be made at the class certification stage.") (quotations omitted).

Here, resolution of the highly individualized questions regarding the extent of relief and/or damages to each putative members of the Proposed Damages Classes, if any, would require the exact sort of forbidden "mini-hearing" on the merits with respect to each class member. Thus, common questions do not predominate as required under Rule 23(b)(3) and the Proposed Damages Classes are not ascertainable.

### iii. The Proposed CCRAA Class Must Fail Because the CCRAA Requires a Showing of Actual Harm, which the Putative Class Members Cannot Make on a Class-Wide Basis

Teran claims that the Proposed CCRAA Class members would be entitled to statutory punitive damages under the CCRAA. Mot. at 13 n.7. But to qualify for statutory punitive damages, the Proposed CCRAA Class members must show actual harm, because, as district courts in this Circuit have stated, "under California law, actual damages are a prerequisite to recovering punitive damages (and injunctive relief) under the CCRAA." *Duarte v. J.P. Morgan Chase Bank,* No. CV131105GHKMANX, 2014 WL 12561052, at *3 (C.D. Cal. Apr. 7, 2014); *see also Banga v. Chevron U.S.A. Inc.*, No. C-11-01498 JCS, 2013 WL 71772, at *13 (N.D. Cal. Jan. 7, 2013) ("To state a claim under [Cal Civ. Code] Section 1785.31 for either damages or injunctive relief, the Plaintiff must show actual damages."). Indeed, within the last year, a federal district court in the Eastern District of California specifically highlighted, in comparison to other statutory claims, that "the predominance analysis is different" for CCRAA claims. *See Kang v. Credit Bureau Connection, Inc.*, No. 118CV01359AWISKO, 2022 WL 658105, at *7 (E.D. Cal. Mar. 4, 2022). In comparing the CCRAA to the Fair Credit Reporting Act, the court explained that "[t]he

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

CCRAA, unlike the FCRA, requires a showing of actual harm where, as here, the plaintiff is seeking statutory punitive damages under section 1785.31(a)(2)(B)." *Id.* (citing *Trujillo v. First American Registry, Inc.*, 157 Cal. App. 4th 628, 637-38, 68 Cal.Rptr.3d 732 (2008), disproved on other grounds by *Connor v. First Student, Inc.*, 5 Cal. 5th 1026, 1037-38 (2018)). Accordingly, the Court noted, that "to the extent [the plaintiff] [was] seeking class certification of his state law claims for statutory punitive damages, individual issues w[ould] predominate." *Id.; see also, e.g., Huebner v. Radaris, LLC*, No. 14-CV-04735-VC, 2016 WL 8114189, at *1 (N.D. Cal. Apr. 12, 2016) ("Certification of the California Subclasses' CCRAA and UCL claims is inappropriate under Rule 23(b)(3), however, because monetary recovery under those statutes requires actual economic injury. This means that individual issues would predominate on those claims.") (citations omitted).

Teran oversimplifies the complicated and highly individualized nature of each CCRAA claim that would be at issue, citing to the bare proposition that "'damage calculations alone cannot defeat certification.'" Mot. at 15 (quoting *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010)). However, here each class member will have to provide individualized and unique proof that she suffered some sort of actual harm, or she will imminently suffer actual harm, related to her credit report and that her injury is traceable to Navient's actions. Each Proposed CCRAA Class member would most likely have to show that he applied for credit, that he was harmed in the credit-reporting process by Navient's activities, and that an adverse credit decision—if a decision is even made at all—is fairly traceable to Navient's activities instead of other factors such as delinquencies on unrelated debt. The analysis as to whether a CCRAA violation actually occurred—and whether it then entitles a plaintiff to punitive damages—is a complex and highly individualized analysis, requiring both a determination as to the unique harms suffered by the plaintiff as well as a rigorous review of whether the defendant knew that the information it was supplying would cause those harms. *Ikeda v. San Francisco Firemen Credit Union*, No. 20-CV-08071-TSH, 2021 WL 4776705, at *19 (N.D. Cal. Oct. 13, 2021) (permitting CCRAA claim to proceed after plaintiff provided detailed allegations regarding both her and the defendant's activities in alleged false reporting to agencies, such as "that Plaintiff had failed to

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

1   make timely payments under [a] [l]oan and that this false derogatory reporting *prevented her from*

2   *obtaining financing* to purchase a new home." (internal quotations omitted) (emphasis added);

3   *Reagan v. Am. Home Mortg. Servicing Inc.*, No. C 11-00704 WHA, 2011 WL 2149100, at *3

4   (N.D. Cal. May 31, 2011) (permitting CCRAA claim to proceed when the plaintiff alleged

5   that "both parties agreed to a short sale that was in full satisfaction of the mortgage loan" and that

6   the "defendant knew or should have *known that plaintiffs did not owe any further balance* after the

7   close of the short sale on May 28.") (emphasis added).

8       As the Ninth Circuit has explained, "[i]f each class member has to litigate numerous and

9   substantial separate issues to establish his or her right to recover individually, a class action is not

10  'superior.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001). Here,

11  each Proposed CCRAA Class member will effectively need a mini-trial to determine whether a

12  CCRAA violation has occurred and, furthermore, whether such a violation would entitle her to

13  punitive damages. It is simply incorrect, as Teran asserts, that any variation among members of

14  the Proposed CCRAA Class would come down to a simple damages calculation.

15              iv.     **Class Adjudication for the Proposed Damages Classes is Not**

16                      **Superior to Individual Actions**

17       Under Rule 23(b)(3), the Court must make a determination that class certification is the

18  superior method of adjudicating the claims at issue. Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) also

19  lists four factors—individual control of litigation, prior actions involving the parties, the

20  desirability of the forum, and manageability—which courts should consider in making these

21  determinations. Fed. R. Civ. P. 23(b)(3)(A)-(D). The manageability requirement ensures that

22  "[w]hen the complexities of class action treatment outweigh the benefits of considering common

23  issues in one trial, [a determination is made that] class action treatment is not the 'superior' method

24  of adjudication." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001).

25  "This manageability requirement includes consideration of the potential difficulties in notifying

26  class members of the suit, calculation of individual damages, and distribution of damages." *Six*

27  *(6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir. 1990) (internal

28  quotations omitted).

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

Crucially, Rule 23(b)(3) speaks in terms of "fairly and efficiently adjudicating *the controversy*," Fed. R. Civ. P. 23(b)(3) (emphasis added), not "part of the controversy." As the Fourth Circuit put it: "[a] trial judge cannot, in determining manageability . . . look exclusively to only one aspect of the case ... [s]he can and must look at the case as a whole[.]" *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 71 (4th Cir. 1977) (en banc), *cert. denied*, 435 U.S. 968 (1978).

Here, class resolution is not superior to other methods for fair and efficient adjudication. Each member of the Proposed Damages Classes has a strong interest in controlling prosecution of separate actions—as demonstrated by filing an individual bankruptcy petition. The personal circumstances of these borrowers are unique and individualized—particularly where co-borrowers or guarantors are involved. Further cutting against superiority, there is an extensive history of individual class members initiating individual actions to address these issues, as Navient has been a defendant in hundreds of cases involving the discharge status of private student loans since 2005, many even involving the putative class members in this very case. Moreover, as set forth above, concentrating litigation over a circuit-wide class (in the case of the Proposed Ninth Circuit Class) in a single forum is not desirable, in part because each individual judge who issued a discharge order retains the paramount interest in assessing whether a discharge violation occurred and, if so, the appropriate remedy. This is especially so in view of *Taggart*, which requires each issuing Court to determine whether any "fair ground of doubt" regarding collection activity exists. 139 S. Ct. at 1804. Additionally, the potential for certain borrowers to receive monetary relief far in excess of other class members suggests that individualized lawsuits would be superior to a class action.

Moreover, Teran's apparent waiver of any individualized emotional or consequential damages, and any undue hardship claims, also raises the risk that such claims would be barred in the future under the doctrine *of res judicata*, further cutting against superiority. "Part of this [res judicata] risk is inherent whenever a party waives claims to secure class certification because a court conducting an action cannot predetermine the res judicata effect of the judgment; that effect can be tested only in a subsequent action." *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 396 (1996) (Ginsburg, J., concurring in part and dissenting in part). District courts within this

Case: 20-03075    Doc# 101    Filed: 02/03/23    Entered: 02/03/23 17:14:31    Page 32 of 33

DEFENDANTS' OPPOSITION TO PLAINTIFF OSCAR D. TERAN'S MOTION FOR CLASS CERTIFICATION

Circuit have also refused to certify class actions because of perceived risk of down the line claim preclusion. *Fosmire v. Progressive Max Ins. Co.*, 277 F.R.D. 625, 634 (W.D. Wash. 2011) (finding that "[plaintiff's] attempt to split her putative class members' claim by excluding stigma damages creates a conflict between her interests and the interests of the putative class"); *Sanchez v. Wal Mart Stores*, No. 06-CV-02573 (JAM) (KJM), 2009 WL 1514435, at *3 (E.D. Cal. May 28, 2009) (finding that a class representative was inadequate because her decision to forego personal injury damages could harm the class).

<u>CONCLUSION</u>

Based on the foregoing, Teran has not met and cannot meet his burden under Rule 23 to demonstrate the elements needed to certify any of the Proposed Classes. Accordingly, Navient respectfully requests that the Court deny Teran's Motion for Class Certification.

Dated: February 3, 2023

Respectfully submitted,

/s/ *Payam Khodadadi*
Payam Khodadadi (SBN 239906)
McGuireWoods LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone: 310.315.8208
Facsimile: 310.315.8210
Email: pkhodadadi@mcguirewoods.com

Joseph A. Florczak (admitted *pro hac vice*)
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: 312.849.8100
Facscimile: 312.849.3690
Email: jflorczak@mcguirewoods.com

*Counsel for Navient Solutions, LLC*
*and Navient Credit Finance Corporation*