James A. Michel (SBN 184730)
THE LAW OFFICE OF JAMES MICHEL
2912 Diamond St. #373
San Francisco, CA 94131-3208
Tel:     (415) 239-4949
attyjmichel@gmail.com

Erika Angelos Heath (SBN 304683)
FRANCIS MAILMAN SOUMILAS, P.C.
369 Pine Street, Suite 410
San Francisco, CA 94104
Tel:     (628) 246-1352
Fax:     (215) 940-8000
eheath@consumerlawfirm.com

Attorneys for Plaintiff and the Classes

*Additional attorneys on signature page*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE: OSCAR D. TERAN, Debtor** | Bankruptcy No. 10-31718 DM<br>Chapter 7 |
| **OSCAR D. TERAN, on behalf of himself and all those similarly situated,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**NAVIENT SOLUTIONS, LLC, and NAVIENT CREDIT FINANCE CORPORATION,**<br><br>    **Defendants.** | Adversary No. 20-03075<br><br>**PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR CLASS CERTIFICATION**<br><br>Date:        Feb. 23, 2023<br>Time:        9:30 a.m.<br>Location:    Virtual<br><br>Hon. Dennis Montali |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT .............................................................................................................. 2

    A.    This Court Can Certify a Class Beyond the Northern District of California .......... 2

        1.    This Court Has Authority to Enforce the Bankruptcy Code Beyond This District ........................................................................................................... 2

        2.    Neither *Barrientos* Nor *Walls* Prevents Certification ................................. 5

    B.    Navient Waived Its Right to Seek Arbitration and Enforce Its Class Action Waiver ................................................................................................................... 7

    C.    All Proposed Classes Can Proceed Regardless of an Amended Complaint ......... 10

    D.    The Proposed Classes Satisfy Rule 23(a) ........................................................... 13

        1.    Teran's Claims Are Typical of Class Members' Claims .......................... 13

        2.    Teran is an Adequate Class Representative ............................................... 14

    E.    The Proposed Classes Satisfy Rule 23(b)(2) ...................................................... 16

    F.    The Proposed Classes Satisfy Rule 23(b)(3) ...................................................... 18

        1.    The Common Issues Here Predominate ...................................................... 18

        2.    The Class Is Plainly Ascertainable ............................................................ 21

        3.    The CCRAA Claim Does Not Fail Due to the Actual Damages Prerequisite ................................................................................................. 22

        4.    Class Adjudication Is the Superior Form of Adjudication Here ............... 23

III.    CONCLUSION ......................................................................................................... 25

Case: 20-03075   Doc# 117   Filed: 02/20/23   Entered: 02/20/23 15:40:13   Page 2 of 34

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdelfattah v. Carrington Mortg. Serv. L.L.C.*,
  2013 WL 495358 (N.D. Ca. Feb. 7, 2013) .............................................................23

*Abdullah v. U.S. Sec. Assocs., Inc.*,
  731 F.3d 952 (9th Cir. 2013) ...............................................................................19

*In re Ahn*,
  804 F. App'x 541 (9th Cir. 2020) ...........................................................................6

*Aiello v. Providian Fin. Corp. (In re Aiello)*,
  231 B.R. 693 (Bankr. N.D. Ill. 1999) .....................................................................4

*In re Ajasa*,
  627 B.R. 6 (Bankr. E.D.N.Y. 2021) .......................................................................3

*Akalwadi v. Risk Mgmt. Alternatives, Inc.*,
  336 F. Supp. 2d 492 (D. Md. 2004) ......................................................................23

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................................1, 13, 25

*In re Anderson*,
  641 B.R. 1 (Bankr. S.D.N.Y. 2022) .......................................................................3

*Armstrong v. Michaels Stores, Inc.*,
  2023 WL 1954693 (9th Cir. Feb. 13, 2023) ............................................................8

*Back Drs. Ltd. v. Metro. Prop. & Cas. Ins. Co.*,
  637 F.3d 827 (7th Cir. 2011) ...............................................................................15

*Bank United v. Manley*,
  273 B.R. 229 (N.D. Ala. 2001) ..............................................................................4

*Belton v.GE Capital Retail Bank*,
  961 F.3d 612 (2d Cir. 2020)...................................................................................8

*Bessette v. Avco Fin. Servs., Inc.*,
  230 F.3d 439 (1st Cir. 2000)...............................................................................4, 7

*Blanks v. Ford Motor Credit*,
  2005 WL 43981 (N.D. Tex. Jan. 7, 2005) .............................................................23

*Bock v. Salt Creek Midstream LLC*,
  2020 WL 3989646 (D.N.M. July 15, 2020)............................................................8

*Bridging Communities Inc. v. Top Flite Fin. Inc.*,
  843 F.3d 1119 (6th Cir. 2016) .........................................................................20, 21

Case: 20-03075    Doc# 117    Filed: 02/20/23    Entered: 02/20/23 15:40:13    Page 3 of 34

*Brooks v. Midland Credit Mgmt., Inc.,*
  2013 WL 1010455 (D. Md. Mar. 13, 2013)...............................................23

*Bueche v. Fid. Nat. Mgmt. Servs., LLC,*
  2014 WL 2468601 (E.D. Cal. June 2, 2014) ...........................................11

*In re Cano,*
  410 B.R. 506 (Bankr. S.D. Tex. 2009) .....................................................4

*Cardinal Indus., Inc. v. Buckeye Fed. Sav. & Loan Ass'n,*
  102 B.R. 991 (Bankr. S.D. Oh. 1989).......................................................4

*Castillo v. Bank of Am., NA,*
  980 F.3d 723 (9th Cir. 2020) .................................................................13

*City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.,*
  867 F.3d 434 (3d Cir. 2017)...................................................................21

*Cont'l Ins. Co. v. Thorpe Insulation Co.,*
  671 F.3d 1011 (9th Cir. 2012) .................................................................8

*Cox v. Ocean View Hotel Corp.,*
  533 F.3d 1114 (9th Cir. 2008) ...............................................................16

*In re Crocker,*
  941 F.3d 206 (5th Cir. 2019) ..............................................................4, 5

*In re Crocker,*
  No. 16-03175, ECF  (S.D. Tex. Bk. Mar. 11, 2022)..........................1, 4, 5, 13

*Cruz v. Dollar Tree Stores, Inc.,*
  270 F.R.D. 499 (N.D. Cal. 2010) ...........................................................18

*Cummings v. Connell,*
  316 F.3d 886 (9th Cir. 2003) .................................................................20

*CVS Health Corp. v. Vividus, LLC,*
  878 F.3d 703 (9th Cir. 2017) .................................................................10

*Dewey v. Volkswagen AG,*
  681 F.3d 170 (3d Cir. 2012)...................................................................16

*Ditty v. CheckRite, Ltd.,*
  973 F. Supp. 1320 (D. Utah 1997) .........................................................23

*Edeh v. Midland Credit Mgmt., Inc.,*
  748 F. Supp. 2d 1030 (D. Minn. 2010) ...................................................23

*Escobar v. Midland Credit Mgmt.,*
  2020 WL 5411574 (D. Conn. Sept. 9, 2020) ...........................................23

*In re Fagan,*
  559 B.R. 718 (Bankr. E.D. Cal. 2016)..........................................5, 6, 7, 16

*Fleet v. United States Common Council, Inc.,*
  53 B.R. 833 (Bankr. E.D. Pa. 1985) .........................................................4

iii

*In re Golden*,
630 B.R. 896 (Bankr. E.D.N.Y. 2021)................................................................2, 4

*Greene v. Capital One Bank*,
2008 WL 1858882 (D. Utah Apr. 23, 2008).............................................................23

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .................................................................................25

*In re Haynes*,
2014 WL 3608891 (Bankr. S.D.N.Y. July 22, 2014) ............................................2, 4

*Henry v. Educ. Fin. Serv.*,
944 F.3d 587 (5th Cir. 2019) .....................................................................................8

*Hill v. Xerox Bus. Servs., LLC*,
59 F.4th 457, 2023 WL 1490808 (9th Cir. 2023) ......................................................9

*Hiser v. Franklin*,
94 F.3d 1287 (9th Cir. 1996) ...................................................................................18

*In re Homaidan*,
2022 WL 10707498 (Bankr. E.D.N.Y. Oct. 17, 2022) ........................................4, 16

*Hooper v. Advance Am., Cash Advance Centers of Missouri, Inc.*,
589 F.3d 917 (8th Cir. 2009) ...................................................................................10

*Huffman v. Prudential Ins. Co. of Am.*,
2018 WL 583046 (E.D. Pa. Jan. 29, 2018) .............................................................20

*J.L. v. Cissna*,
2019 WL 415579 (N.D. Cal. Feb. 1, 2019) ........................................................11, 12

*Kang v. Credit Bureau Connection, Inc.*,
2022 WL 658105 (E.D. Cal. Mar. 4, 2022) .............................................................22

*Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*,
567 B.R. 160 (B.A.P. 9th Cir. 2017).........................................................................19

*In re Kaur*,
2014 WL 3361432 (9th Cir. BAP July 9, 2014) .........................................................6

*Kelly v. Pub. Util. Dist. No. 2*,
552 Fed. Appx. 663 (9th Cir. 2014) ...........................................................................9

*Kerney v. Capital One Fin. Corp. (In re Sims)*,
278 B.R. 457 (Bankr. E.D. Tenn. 2002) ....................................................................4

*Law v. Siegel*,
571 U.S. 415 (2014)....................................................................................................3

*Madison Assocs. v. Baldante*,
183 B.R. 206 (Bankr. C.D. Cal. 1995) .......................................................................4

*Magallon v. Robert Half Int'l, Inc.*,
2018 WL 2021346 (D. Or. May 1, 2018) .................................................................20

iv

*Marrama v. Citizens Bank of Mass.*,
   549 U.S. 365 (2007)..................................................................................3

*Marshall v. Holiday Magic, Inc.*,
   550 F.2d 1173,1177 (9th Cir. 1977) ...................................................14

*In re Mazloom*,
   A.P. No. 20-80033-6-dd, ECF 167 (Bankr. N.D.N.Y. Jan. 26, 2023) ...................17

*Menking ex rel. Menking v. Daines*,
   287 F.R.D. 174 (S.D.N.Y. 2012) .........................................................11

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) .............................................................22

*In re Motorola Sec. Litig.*,
   644 F.3d 511 (7th Cir. 2011) .............................................................11

*Murray v. GMAC Mort. Corp.*,
   434 F.3d 948 (7th Cir. 2006) .............................................................15

*In re Nash*,
   464 B.R. 874 (B.A.P. 9th Cir. 2012).....................................................6

*Newirth by & through Newirth v. Aegis Senior Communities, LLC*,
   931 F.3d 935 (9th Cir. 2019) .............................................................9

*In re Noletto*,
   244 B.R. 845 (Bankr. S.D. Ala. 2000) ..................................................4

*Parsons v. Ryan*,
   754 F.3d 657 (9th Cir. 2014) ............................................................14

*In re Perl*,
   811 F.3d 1120 (9th Cir. 2016) ............................................................6

*Plows v. Rockwell Collins, Inc.*,
   812 F. Supp. 2d 1063 (C.D. Cal. 2011) ................................................10

*Reid v. White Motor Corp.*,
   886 F.2d 1462 (6th Cir. 1989) ............................................................7

*Rivera v. Bank One*,
   145 F.R.D. 614 (D.P.R. 1993) ...........................................................23

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993) .............................................................10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ............................................................15

*In re Rojas*,
   2009 WL 2496807 (Bankr. S.D. Tex. Aug. 12, 2009)..................................3

*Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*,
   490 B.R. 908 (B.A.P. 9th Cir. 2013).....................................................19

v

*In re Russell*,
    378 B.R. 735 (Bankr. S.D.N.Y. 2007)........................................................................23

*Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*,
    601 F.3d 1159 (11th Cir. 2010)...............................................................................22

*Sanger v. Ahn*,
    406 F. Supp. 3d 800 (N.D. Cal. 2018).........................................................................6

*Schorsch v. Hewlett-Packard Co.*,
    417 F.3d 748 (7th Cir. 2005).....................................................................................11

*Shaw v. Whirlpool Fin. Corp.*,
    158 B.R. 384 (Bankr. W.D. Pa. 1993)..........................................................................4

*Singleton v. Wells Fargo Bank, N.A. (In re Singleton)*,
    275 B.R. 189 (Bankr. D.R.I. 2002).............................................................................4

*Soutter v. Equifax Info. Servs., LLC*,
    307 F.R.D. 183 (E.D. Va. 2015)................................................................................24

*LaRocque ex rel. Spang v. TRS Recovery Servs., Inc.*,
    285 F.R.D. 139 (D. Me. 2012)...........................................................................15, 23

*Taggart v. Lorenzen*,
    139 S. Ct. 1795 (2019)..............................................................................................3

*In re Tate*,
    253 B.R. 653 (Bankr. W.D.N.C. 2000)........................................................................4

*Trans Union, LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)............................................................................................22

*True Health Chiropractic, Inc. v. McKesson Corp.*,
    896 F.3d 923 (9th Cir. 2018)....................................................................................14

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016)............................................................................................18

*Van Ness Townhouses v. Mar Indus. Corp.*,
    862 F.2d 754 (9th Cir. 1988)......................................................................................8

*Vietnam Veterans of Am. v C.I.A.*,
    288 F.R.D. 192 (N.D. Cal. 2012)..............................................................................21

*Vinole v. Countrywide Home Loans, Inc.*,
    571 F.3d 935 (9th Cir. 2009)....................................................................................18

*In re Vitamin C Antitrust Litig.*,
    279 F.R.D. 90 (E.D.N.Y. 2012)................................................................................18

*In re Wagabaza*,
    2019 WL 3717794 (C.D. Cal. Aug. 7, 2019)..........................................................6, 16

*Wal-Mart v. Dukes*,
    564 U.S. 338 (2011)..........................................................................................16, 17

*Walls v. Wells Fargo Bank, N.A.*,
 276 F.3d 502 (9th Cir. 2002) ........................................................................7

*In re Walls*,
 262 B.R. 519 (Bankr. E.D. Cal. 2001) ....................................................5, 7, 16

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
 208 F.3d 288 (1st Cir. 2000) ......................................................................14

*In re Williams*,
 323 B.R. 691 (B.A.P. 9th Cir. 2005) .............................................................6

*Wolin v. Jaguar Land Rover N. Am., LLC*,
 617 F.3d 1168 (9th Cir. 2010) ....................................................................13

**Statutes**

11 U.S.C. § 523 ..............................................................................................17

11 U.S.C. § 524(a)(1) .....................................................................................14

11 U.S.C. § 524(a)(2) .......................................................................................2

**Federal Rules**

FED. R. BANKR. P. 7001 ...................................................................................6

FED. R. BANKR. P. 7001(6) ..........................................................................6, 17

FED. R. BANKR. P. 7015 .................................................................................12

FED. R. BANKR. P. 7023 ...................................................................................7

FED. R. BANKR. P. 9014 ................................................................................6, 7

FED. R. BANKR. P. 9014(c) ...............................................................................7

Fed. R. BANKR. P. 9016 ...................................................................................9

FED. R. CIV. P. 15 ...........................................................................................12

FED. R. CIV. P. 23 ...................................................................................*passim*

FED. R. CIV. P. 23(a) ............................................................................1, 13, 14

FED. R. CIV. P. 23(a)(3) .................................................................................13

FED. R. CIV. P. 23(b)(2) ............................................................................16, 17

FED. R. CIV. P. 23(b)(3) ..........................................................................*passim*

FED. R. CIV. P. 24 ...........................................................................................17

Fed. R. Civ. P. 26 ...........................................................................................10

FED. R. CIV. P. 45 .............................................................................................9

Case: 20-03075   Doc# 117   Filed: 02/20/23   Entered: 02/20/23 15:40:13   Page 8 of
34

## I.     INTRODUCTION

In responding to Plaintiff Oscar Teran's class certification motion, Defendants Navient Solutions, LLC and Navient Credit Finance Corporation (collectively, "Navient") spend the bulk of their time on perceived defenses on other grounds – jurisdictional in nature, concerning alleged waiver by Teran, and concerning what it calls the need to amend the pleadings. None of these "other defenses" are presently before this Court. Defendant has already filed a summary judgment motion and lost it on the merits in pertinent part. *See* ECFs 31, 51, 56, 58. Nevertheless, these non-certification defenses that Navient now raises all fail, and Plaintiff will first explain below why this Court should reject each of them.

When Navient's opposition brief finally turns to the class certification elements, it argues that Plaintiff allegedly cannot satisfy the Rule 23(a) elements of typicality and adequacy, that equitable relief is allegedly not possible here, and that the Rule 23(b)(3) dual requirements of predominance and superiority are allegedly not met. These Rule 23 arguments also fail, as will be discussed below.

Navient's opposition here boils downs to this: although Defendants unlawfully collected tens of millions of dollars post-discharge from many thousands of student loan debtors who held non-qualified private loans, the only way those numerous debtors can supposedly seek judicial relief is one person at a time. Even though Navient agreed that a similar circuit-wide class of debtors can be certified (at least for settlement purposes) in the Fifth Circuit in *Crocker*, here it thinks that the only path forward for debtors is an individualized or highly balkanized one.[1]

In practical reality, that is just a way for Navient to say that it wants to retain as much of its unlawful collections as possible because it knows that it is just too difficult for individuals or tiny classes to seek relief within our system of justice. This Court should see through that self-

---

[1] The March 2022 Order finally approving the *Crocker* settlement, *see In re Crocker*, No. 16-03175, ECF 367 (S.D. Tex. Bk. Mar. 11, 2022), constitutes a judicial finding that the elements of Rules 23(a) and 23(b)(3) are satisfied upon which this Court can rely because a settlement class approval order is not just a rubber stamp of a private agreement. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (a class action may be certified for settlement only, but the certification requirements of Rule 23 must be met as if the case were going to be litigated, without taking the settlement into account).

serving argument. Rule 23 was not created to shield large corporations from liabilities. Rather, it was created to allow groups of individuals to band together relatively small claims that cannot as a practical matter be adjudicated one at a time. That is the case here. Variation in human behavior is the rule, not the exception. But the variations that Navient points out in its opposition brief are largely hypothetical, not supported by evidence of record, and do not amount to very much under Rule 23 in any event. As discussed in detail below, they do not outweigh the arguments in support of class certification here. Plaintiff's motion should be granted.

## II.     ARGUMENT

### A.     This Court Can Certify a Class Beyond the Northern District of California

1.     *This Court Has Authority to Enforce the Bankruptcy Code Beyond This District*

Navient's first line of attack is that consumers outside the Northern District of California cannot be helped, as this Court is powerless to remedy the company's systemic violations of the Bankruptcy Code beyond this District. Its position ignores the reality that Teran is asking the Court to enforce a statutory command within the Bankruptcy Code, not a specific court order.

"The discharge injunction is a statutory injunction, and a product of the Bankruptcy Code itself." *In re Golden*, 630 B.R. 896, 918 (Bankr. E.D.N.Y. 2021). This injunction is "not a handcrafted order," but exists purely in the text of section 524(a)(2), which provides that a "discharge . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." *Id*. (quoting 11 U.S.C. § 524(a)(2)).

This statutory provision is not to be confused with a court order, such as the Order of Discharge. On its face, the Order of Discharge does not compel any action or inaction by creditors. It simply states the fact of the discharge and is entered as a ministerial act. Indeed, many (if not all) discharge orders are not even individually reviewed and signed by the bankruptcy judges overseeing the case but are instead routinely entered by the court clerk on behalf of the judge "once certain milestones have been met in a bankruptcy case." *In re Haynes*, No. 11-23212 (RDD), 2014 WL 3608891, at *8 (Bankr. S.D.N.Y. July 22, 2014). Here, Teran does not allege that Navient has violated thousands of individual Orders of Discharge, but that it

Case: 20-03075   Doc# 117   Filed: 02/20/23   Entered: 02/20/23 15:40:13   Page 10 of 34

has instead systematically flaunted section 524(a).

This Court is not powerless to address these violations. After all, "[b]ankruptcy Courts have both inherent contempt authority and statutory equitable authority under § 105." *In re Rojas*, No. 07-70058, 2009 WL 2496807, at *6 (Bankr. S.D. Tex. Aug. 12, 2009). "Section 105's plain language grants bankruptcy courts broad remedial authority beyond what is available pursuant to a court's inherent contempt authority," including the authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, and to "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process." *Id* (quoting 11 U.S.C. § 101(a)); *see also Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 375 (2007) (describing this "broad authority"); *Law v. Siegel*, 571 U.S. 415, 421-422 (2014).

Against this background, caselaw favors certification of a geographically broad classes of consumers affected by systematic violations of the discharge injunction where, as here, the evidence supports such a broad class. For example, Judge Drain in New York recently certified a nationwide class of debtors "whose identical discharge orders were allegedly breached by implementation of the same, uniformly applied policy," finding no jurisdictional bar in doing so. *In re Anderson*, 641 B.R. 1, 16-19 (Bankr. S.D.N.Y. 2022). The *Anderson* Court described the ways this holding was consistent with the Supreme Court's decision in *Taggart v. Lorenzen*, -- U.S. --, 139 S. Ct. 1795 (2019), noting:

> That discharge injunction is the fundamental statutory and decretal protection for consumer debtors under the Bankruptcy Code. From the Bankruptcy Code's inception, breach of the discharge has been recognized as an injury, and the Supreme Court in *Taggert v. Lorenzen* confirmed that liability for such breach is to be determined under the "old soil" standard for finding one in civil contempt.

*Id*. at 55. The *Anderson* court further noted such systematic abuses of the Bankruptcy Code did not implicate issues of comity when enforcing the discharge injunction, especially in light of the "objective" standard established by *Taggart*. "It would instead fulfil Congress' desire to protect a crucial pillar 'central to the statutory scheme' and the bankruptcy system." *Id*. at 19; *see also In re Ajasa*, 627 B.R. 6, 31 (Bankr. E.D.N.Y. 2021) (declining to strike a nationwide class for

discharge injunction violations); *Golden*, 630 B.R. at 918 (same); *Haynes*, 2014 WL 3608891, at *9 (ruling on motion to dismiss that bankruptcy court could entertain nationwide class action as to discharge injunction violations); *In re Noletto*, 244 B.R. 845, 857 (Bankr. S.D. Ala. 2000) (same). Moreover, the only circuit court decision directly addressing this issue has found no problem approving a nationwide class of debtors for a discharge violation. *Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 446 (1st Cir. 2000) ("Appellant seeks enforcement of the statutory injunction set forth in § 524, not one individually crafted by the bankruptcy judge, in which that judge's insights and thought processes may be of particular significance . . . few of the practical reasons for confining contempt proceedings to the issuing tribunal apply here.").[2]

The nationwide injunctive relief Teran seeks is also appropriate in light of *Homaidan*, in which the bankruptcy court wrestled with Navient's jurisdictional arguments and found it could (at a minimum) enter a nationwide injunctive order to stop collection of a different category of student loans. *In re Homaidan*, No. 08-48275-ESS, 2022 WL 10707498, at *46-53 (Bankr. E.D.N.Y. Oct. 17, 2022). In so concluding, the *Homaidan* court found those cases suggesting a return to the original bankruptcy court are a good "starting point," but nothing ultimately prevents a bankruptcy court from issuing broader relief. *Id*. at *47.

Further, and contrary to Navient's position, the *Crocker* case strongly supports Teran's proposed circuit-wide monetary relief class. The sole holding in the Fifth Circuit's opinion was that a plaintiff who obtained a bankruptcy discharge in Virginia (Shahbazi) could not be a co-plaintiff in Crocker's contempt proceedings in the Southern District of Texas. *In re Crocker,* 941 F.3d 206, 217 (5th Cir. 2019), *as rev'd* (Oct. 22, 2019). Notably, the Fifth Circuit expressly

---

[2]     Indeed, in other contexts involving systemic bankruptcy abuses, bankruptcy courts have routinely allowed nationwide class actions to proceed. *See e.g.*, *Bank United v. Manley*, 273 B.R. 229 (N.D. Ala. 2001); *In re Cano*, 410 B.R. 506 (Bankr. S.D. Tex. 2009); *Kerney v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457, 485-86 (Bankr. E.D. Tenn. 2002); *Singleton v. Wells Fargo Bank, N.A. (In re Singleton)*, 275 B.R. 189 (Bankr. D.R.I. 2002); *In re Tate*, 253 B.R. 653 (Bankr. W.D.N.C. 2000); *Noletto*, 244 B.R. 845; *Aiello v. Providian Fin. Corp. (In re Aiello)*, 231 B.R. 693 (Bankr. N.D. Ill. 1999); *Madison Assocs. v. Baldante*, 183 B.R. 206, 209, 213 (Bankr. C.D. Cal. 1995); *Shaw v. Whirlpool Fin. Corp.*, 158 B.R. 384, 387 (Bankr. W.D. Pa. 1993); *Cardinal Indus., Inc. v. Buckeye Fed. Sav. & Loan Ass'n*, 102 B.R. 991, 993 (Bankr. S.D. Oh. 1989); *Fleet v. United States Common Council, Inc.*, 53 B.R. 833 (Bankr. E.D. Pa. 1985).

4

declined to resolve the question of whether a broader class could be certified. *Id*. Although it expressed some doubt as to the ability to certify a nationwide class in dicta, *see id*., the outcome on remand is instructional here, where the bankruptcy court indeed certified for settlement purposes a class of Fifth Circuit consumers. *See* ECF 91-4, at ¶ 1.28 (defining "Discharged Borrower" as all covered borrowers within the Fifth Circuit). Clearly, this resolution of *Crocker* in the Fifth Circuit would not have been possible if the court lacked authority to certify a circuit-wide class on these issues. Similarly, by seeking to certify a class of Ninth Circuit consumers, based upon discovery within the Ninth Circuit agreed to by Navient here and now of record, Teran seeks monetary relief that is entirely consistent with the outcome in *Crocker*.

2.    *Neither* Barrientos *Nor* Walls *Prevents Certification*

Neither *Barrientos* nor *Walls* bars class certification here, and Navient's reliance on either case is misplaced.

As a threshold matter, it is important to highlight the actual holding of *Barrientos*, as its expansive dicta – and its notorious misconstruction of the bankruptcy rules – easily lends itself to misinterpretation. Judge Klein conducted an extensive examination of that dicta, as well as the misinterpretations flowing from it, to home in on the actual rule in the Ninth Circuit:

> It follows that the law of the Ninth Circuit after *Walls* and *Barrientos* should be understood as holding that the remedy for violation of the § 524 discharge injunction is limited to contempt, which ***ordinarily*** is a Rule 9014 contested matter and which must be decided by the court that entered the discharge.
>
> … [But] the choice whether to permit a Rule 9020 contempt matter to be consolidated with, or raised in, an adversary proceeding is up to the discretion of the bankruptcy court. A bankruptcy judge's decision, as in *Barrientos*, to dismiss an adversary proceeding in favor of requiring a stand-alone Rule 9020 contested matter is reviewed for abuse of discretion. Likewise, a decision not to dismiss an adversary proceeding that contains a count alleging contempt should receive the same deferential review.

*In re Fagan*, 559 B.R. 718, 727 (Bankr. E.D. Cal. 2016) (emphasis added). Thus, as Judge Klein thoughtfully explains, *Barrientos* does not actually prohibit a contested matter from being raised

in an adversary – the bankruptcy court is offered discretion in that question.[3] And the Ninth Circuit has similarly ruled. For example, in *Ahn*, the Ninth Circuit affirmed as harmless error the bankruptcy court's decision to permit a contested matter to be pursued as an adversary. *In re Ahn*, 804 F. App'x 541, 544 (9th Cir. 2020). And there are certainly instances when the additional procedural safeguards of an adversary proceeding make more sense. *See Fagan*, 559 B.R. at 725-726 (describing due process differences between the two); *see also Sanger v. Ahn*, 406 F. Supp. 3d 800, 805–06 (N.D. Cal. 2018); *In re Kaur*, No. ADV 12-01872-MLB, 2014 WL 3361432, at *1 n.2 (9th Cir. BAP July 9, 2014) ("no due process issues are triggered" by considering a section 522(f) avoidance claim as an adversary proceeding rather than a motion because "the adversary accords more due process than a motion").

Moreover, *Barrientos* does not address some of the ways this case is different. As the Bankruptcy Appellate Panel explained, "*Barrientos* is unclear . . . as to the proper procedure where, in addition to contempt damages, a debtor seeks other or additional relief of the sort that usually requires an adversary proceeding." *In re Nash*, 464 B.R. 874, 879 (B.A.P. 9th Cir. 2012) (declining to reverse a contempt action brought alongside a dischargeabilty cause of action in an adversary); *see also In re Wagabaza*, No. 5:18-CV-00406-JLS, 2019 WL 3717794, at *7 (C.D. Cal. Aug. 7, 2019) (*Barrientos* did not control contempt proceedings in adversary, where other adversary-style relief was sought). Here, as in *Nash*, the debtor brings additional claims for "relief of the sort that usually requires an adversary proceeding," namely his dischargeability claim under section 523(a)(8) and his CCRAA cause of action. *See* Fed. R. Bankr. P. 7001(1), (6) (requiring such claims to be raised in an adversary). In sum, there is nothing that Teran is doing here that is inconsistent with *Barrientos*, and nothing that prevents Teran from filing a

---

[3] Moreover, it is a genuine question whether *Barrientos*' interpretation of the Bankruptcy Rules was correct. *See Fagan*, 559 B.R. at 725 ("The statements in the *Barrientos* dictum about the procedural differences between Rule 9014 'contested matters' and Rule 7001 adversary proceedings are inaccurate."). Indeed, it was the frequent practice to pursue contempt matters as an adversary prior to *Barrientos*. *In re Williams*, 323 B.R. 691, 702 (B.A.P. 9th Cir. 2005) ("Rule 7001 requires an adversary proceeding when a debtor is seeking a finding of contempt; a motion is otherwise proper."), aff'd, 204 F. App'x 582 (9th Cir. 2006), and disapproved on other grounds by *In re Perl*, 811 F.3d 1120 (9th Cir. 2016).

6

contempt motion post-certification if this Court in its discretion finds that a separate motion in preferable.

*Barrientos* and *Walls* are also different factually. Unlike here, neither case involved class certification and Rule 23 in the context of a discharge injunction violation. Notably, in the companion discharge injunction case in *Walls*, which was referred to the bankruptcy court, the bankruptcy court separately concluded that it *did* have authority to adjudicate a nationwide class of debtors who were affected by the bank's discharge injunction violation, but simply could not do so because of the various ways different jurisdictions handled "ride through" options related to that claim. *In re Walls*, 262 B.R. 519, 528 (Bankr. E.D. Cal. 2001) (citing *Bessette*, 230 F.3d 439; *Noletto*, 244 B.R. 845). Further, the Ninth Circuit *Walls* opinion dealt with a claim under the Fair Debt Collection Practices Act, together with a claim for violation of section 524 brought in the district court – neither of which is at issue here. *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 504 (9th Cir. 2002).

Finally, this question is simply one of form over substance. Navient is apparently under the mistaken impression that it can avoid accountability if only this matter were heard as a motion because, in its view, "[c]lass treatment is not available under the 9000-series Federal Rules of Bankruptcy Procedure governing contested matters." ECF 101, Def.'s Opp., at 6. But the rules expressly contradict Navient's position. Under Rule 9014(c), the bankruptcy court "may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply," which would naturally include FED. R. BANKR. P. 7023. *See also Fagan*, 559 B.R. at 725; *Reid v. White Motor Corp.*, 886 F.2d 1462, 1470 (6th Cir. 1989) ("Rule 9014 delegates wide discretion to the bankruptcy judge in considering [class certification] pursuant to Rule 7023 in a contested matter."). Because a class could be certified even within a contested matter, Navient suffers no harm from the procedural device at issue here, and if anything, benefits from the additional due process safeguards in the adversary context of which it took full advantage.

**B.** **Navient Waived Its Right to Seek Arbitration and Enforce Its Class Action Waiver**

Teran has not waived any right to participate in this class action matter, which he has been litigating y appropriately for more than two years.

7

First, despite the breadth of Navient's argument, it cannot seriously be disputed that the class action waiver is inapplicable to the contempt issues in this case. Navient's Class Action Waiver only applies "[i]f you or I elect to arbitrate a Claim," which does not include "any challenge to the validity and effect of the Class Action Waiver, which must be decided by a court." ECF 102-1, Box Decl. Ex. A, at 7, § S.4. If neither party elects to arbitrate a "Claim," the Class Action Waiver, by its own terms, cannot apply. *Cf. Bock v. Salt Creek Midstream LLC*, No. CV 19-1163 WJ/GJF, 2020 WL 3989646, at *14 (D.N.M. July 15, 2020) (where the arbitration agreement broadly waived "any right for any dispute to be brought, heard, decided, or arbitrated as a class and/or collective action,"). Navient did not elect to arbitrate the discharge violation issues, *see* ECF 21,[4] so the Class Action Waiver expressly does not apply.

Even limiting Navient's argument to Teran's CCRAA claims, Navient argues that Teran cannot represent *any* class here because the mere presence of a Class Action Waiver is sufficient to preclude any representative litigation *irrespective* of the enforceability of the arbitration agreement in which it appears. Navient supports this meritless argument with a single, nonbinding decision from the District of New Mexico in which the opponent of arbitration did not even address the class action waiver argument. But Navient's litigation conduct here demonstrates its waiver of any right to enforce its arbitration agreement and the Class Action Waiver within. *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (waiver may be implied from party's conduct).

A party waives a contractual right when, "know[ing] of its existence," it engages in "conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished[.]" *Armstrong v. Michaels Stores, Inc.*, No. 21-15397, 2023 WL 1954693, at *3 (9th Cir. Feb. 13, 2023). The party opposing arbitration need not demonstrate prejudice. *Id*. (citing *Morgan v. Sundance, Inc.*, -- U.S. --, 142 S. Ct. 1708, 1713 (2022)). The Court must evaluate "the totality of" Navient's "actions and ask[ ] whether those actions, even if

---

[4]      Further, no doubt exists that arbitration is not possible for the discharge violation claims in any event. *See Henry v. Educ. Fin. Serv*., 944 F.3d 587, 591 (5th Cir. 2019); *Belton v.GE Capital Retail Bank*, 961 F.3d 612, 617 (2d Cir. 2020); *see also Cont'l Ins. Co. v. Thorpe Insulation Co*., 671 F.3d 1011, 1020-21 (9th Cir. 2012).

seemingly commonplace and not an express disavowal of arbitral forums, evinced [Navient's] partiality for a judicial resolution of the claims." *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 2023 WL 1490808, at \*11-12 (9th Cir. 2023) (citation omitted).

Here, Navient was plainly aware of the existence of its alleged right to seek the arbitration of this matter. Indeed, it filed a motion to dismiss or compel arbitration of Teran's CCRAA claim more than two years ago. However, Navient's subsequent silence on the issue of arbitration and its extensive litigation conduct since then "provides strong support" for a finding of intentional waiver of its right to compel arbitration. *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 942 (9th Cir. 2019). If this Court finds that Navient has waived its right to compel arbitration of Teran's CCRAA claim, it follows that Navient has also waived its right to enforce the Class Action Waiver as to Teran's other claims as well.

Navient's preference for judicial resolution of Plaintiff's claim via summary judgment is dispositive of the issue of waiver here. Indeed, the history of this litigation "tells the story of [Navient's] tactical choice to resolve the claims judicially and reveals that [Navient] belatedly chose to retreat and to claim the benefit of arbitration under the [agreement] only once its judicial strategy failed." *Hill*, 2023 WL 1490808, at \*13. Navient sought and obtained a summary judgment ruling on the central merits issue of whether "Plaintiff's Bar Study loan is excepted from discharge absent a showing of undue hardship" and requested that the Court "dismiss the [entire] remainder of Plaintiff's complaint as moot." ECF 35 at 10. Having received an adverse ruling on that merits issue, Navient cannot now obtain a second bite at the apple in arbitration. *See Newirth by & through Newirth*, 931 F.3d at 942 (seeking dispositive ruling demonstrates a party's knowing decision to "avail itself of the benefits of the federal court forum, an intentional action inconsistent with its known right to compel arbitration."); *Kelly v. Pub. Util. Dist. No. 2*, 552 Fed. Appx. 663, 664 (9th Cir. 2014) (party engaged in acts that were inconsistent with its right to arbitrate when the parties "conducted discovery and litigated motions, including a preliminary injunction and a motion to dismiss").

Navient also took advantage of this judicial forum's expanded discovery procedures, including by issuing third-party subpoenas pursuant to Fed. R. Bankr. P. 9016 (incorporating

9

FED. R. CIV. P. 45). Discovery from third parties would almost certainly be unavailable in arbitration because an arbitrator has "no freestanding power to order third parties to produce documents other than in the context of a hearing." *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017). This further supports a finding that Navient's implicit desire was to remain in court rather than going to arbitration. *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1067–68 (C.D. Cal. 2011) (defendant's conduct inconsistent with its right to arbitrate when it, *inter alia*, participated in discovery that would not have been available in arbitration).

Moreover, Navient demonstrated a specific intention to abandon its Class Action Waiver when it explicitly consented to circuit-wide Rule 23 discovery and class certification briefing. *See* ECF 60 at 2 (proposing Rule 23 discovery period and briefing schedule). During that discovery period, Navient produced data about debtors within the Ninth Circuit, upon which Plaintiff relies to support class certification.[5]

This Court should decline to allow Navient to benefit from its prejudicial "heads I win, tails you lose" approach here and find that it has waived its right to enforce the arbitration agreement and Class Action Waiver. *Hooper v. Advance Am., Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917, 922 (8th Cir. 2009) (party may not decide whether it would be better off in arbitration after seeking ruling on merits).

**C.     All Proposed Classes Can Proceed Regardless of an Amended Complaint**

Plaintiff's requested classes can be certified without an amended complaint, especially in light of the procedural background of this case. Even if the Court found that an amended complaint was required, Teran should be given leave to amend to conform to the evidence and in the interests of justice.

---

[5]     Similarly, Navient availed itself of protections afforded by the Federal Rules of Civil Procedure concerning discovery. With respect to Plaintiff's multiple sets of interrogatories and requests for documents pursuant to Fed. R. Civ. P. 26, 33, and 34, Navient took advantage of the protections of Fed. R. Civ. P. 26 and other Rules intended to avoid producing certain information in this matter. Plaintiff deposed Navient corporate representatives on five occasions prior to summary judgment briefs, namely Patrick Theurer on June 27, 2022; Patricia Peterson on June 29, 2022; Jeff Stine on November 9, 2022; Dennis Skinner on November 9, 2022; and John Zemetro on December 1, 2022.

Case: 20-03075    Doc# 117    Filed: 02/20/23    Entered: 02/20/23 15:40:13    Page 18 of 34

"A court is not bound by the class definition proposed in the complaint." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993); *see also Bueche v. Fid. Nat. Mgmt. Servs., LLC*, No. 2:12-CV-01114 JAM, 2014 WL 2468601, at *2 (E.D. Cal. June 2, 2014). After all, "[l]itigants and judges regularly modify class definitions." *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 750 (7th Cir. 2005); *see also In re Motorola Sec. Litig.*, 644 F.3d 511, 518 (7th Cir. 2011) ("[A] district court has the authority to modify a class definition at different stages in litigation."). Teran's complaint expressly recognizes this reality by specifically "reserv[ing] the right to amend the definition of the Class and Subclass, and/or add subclasses, to include or exclude members." ECF 1, Compl., at ¶ 59.

Contrary to Navient's position, courts often permit modified class definitions, even for broader classes, at the certification stage in appropriate circumstances. *See Menking ex rel. Menking v. Daines*, 287 F.R.D. 174, 181 (S.D.N.Y. 2012) ("[P]laintiff initially sought certification of a citywide class in the Complaint ... [and] [b]ased on evidence obtained in discovery, . . . concluded that a new and expanded statewide definition for the proposed class would be proper."); *Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 212 (S.D.N.Y. 2018) ("[C]onsistent with the certifying court's broad discretion over class definition and obligation to reassess class rulings as the case develops," there is "no reason to disregard the class definition that Plaintiffs propose in their motion for class certification simply because it expands upon the definition found in the Amended Complaint."). Navient's own authority of *Cissna* notably permitted the expansion of the class definition at the certification stage, noting that the broader group was all "affected by Defendants' policy in the same manner." *J.L. v. Cissna*, No. 18-CV-04914-NC, 2019 WL 415579, at *5 (N.D. Cal. Feb. 1, 2019).

Even adopting Navient's proposed legal standard from *Cissna*, the proposed certification here is a relatively minor deviation from the complaint (in the context of these proceedings), and it certainly does not require any additional discovery or impose any prejudice upon Navient.

First, discovery was already completed on a circuit-wide basis, and Navient expressly agreed to permit such discovery *in lieu of* Plaintiff formally amending the complaint. *See* ECF 60 at 3 ("The Parties . . . agree that in lieu of Plaintiff filing a motion for leave to amend his class

11

complaint to plead a circuit-wide class. . . . Defendants will not object to the geographic scope of class discovery so long as such discovery is sought for putative class members within the geographic boundaries of the Ninth Circuit."). For Navient now to argue that it is somehow prejudiced by that proposed class on which it agreed to provide discovery about is specious in light of the parties' prior agreement on the handling of this issue.

As for the nationwide injunctive relief class, such class is already consistent with Teran's prayer for relief. As Teran's Prayer for Relief expressly states, he requests broad, "[i]njunctive relief prohibiting Defendants from continuing to seek collection on discharged debts." Unlike his prayer for monetary relief, he does not limit the scope of his requested injunctive relief to any defined jurisdiction. Discovery confirmed that Navient's credit reporting and collection procedures post-discharge are uniform for all private loans throughout the country. *See e.g.*, ECF 71-1, Ex. 3, Zemetro Dep., at 27:24-25 (process for determining discharge status is the same for all private loans); 41:24-42:1 (post-bankruptcy credit reporting the same for all private loans Navient continues to collect upon); 47:13-15 (same post-bankruptcy communications are sent to borrowers of all private loans that are not written off as discharged). Because Navient treats all post-bankruptcy borrowers the same way, it makes little sense to limit the scope of injunctive relief to a specific geographic area. If anything, a piecemeal approach in which Navient was ordered to change its procedures only for a limited set of its borrowers would be more administratively burdensome.

In light of the circumstances of this particular case, where Teran requests broad injunctive relief in his complaint and the parties agreed to circuit-wide discovery for the back damages class in lieu of an amended complaint, the proposed class definition is not a deviation from these proceedings. If it is considered a deviation, these circumstances show how relatively minor the deviation is. As in *Cissna*, neither the nationwide injunctive relief class nor the circuit-wide monetary relief class changes the legal theory asserted in the complaint. The only difference is the geographic scope and conforms to the discovery obtained in the case. In the context of these proceedings, that difference is relatively minor.

Finally, even if this Court found that an amended complaint were necessary, the above

Case: 20-03075   Doc# 117   Filed: 02/20/23   Entered: 02/20/23 15:40:13   Page 20 of 34

circumstances show how appropriate an amendment is, and Teran should be granted leave to file one to conform to the evidence and in the interests of justice. *See* FED. R. CIV. P. 15 (incorporated by FED. R. BANKR. P. 7015) ("The court should freely give leave [to amend a complaint] when justice so requires.").

## D.   The Proposed Classes Satisfy Rule 23(a)

As a threshold matter, this Court should find that Navient is estopped from arguing that Teran's claims cannot be certified under Rule 23, because it consented to a class-wide settlement in the highly analogous *Crocker* litigation. *In re Crocker*, No. 16-03175, ECF 367 at 2 (S.D. Tex. Bk. Mar. 11, 2022) (order making findings as to compliance with Rule 23 and finally approving settlement); *Amchem*, 521 U.S. at 620 (certification requirements of Rule 23 must be met in settlement context). Crocker—just like Teran here—had a discharged bar study loan and sought to represent other discharged debtors with loans from some of the programs in Navient's laundry list. *See* ECF 101, Def.'s Opp., at 13. Navient's attempts to litigate this matter in a vacuum make its arguments ring hollow.

### 1.   *Teran's Claims Are Typical of Class Members' Claims*

Navient argues that different loan programs and the chapter of the Bankruptcy Code under which certain (unidentified) Class members may have sought bankruptcy protection defeat certification for lack of typicality, but this is incorrect. Typicality, like commonality, *see infra* § II.F.1, is a low bar. *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) ("Under [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." (citation omitted)). Navient's flawed analysis focuses on irrelevant details of loan programs and bankruptcy procedure while ignoring the substantial similarity of the injuries Teran and Class members suffered and Navient's own uniform conduct leading to those injuries. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (The test for typicality is (1) "whether other members have the same or similar injury," (2) "whether the action is based on conduct which is not unique to the named plaintiffs," and (3) "whether other class members have been injured by the same conduct.") (citations omitted).

Case: 20-03075   Doc# 117   Filed: 02/20/23   Entered: 02/20/23 15:40:13   Page 21 of 34

Navient does not engage with Plaintiff's theory of this case or the well-established evidentiary record that supports it. Indeed, Navient does not contest that it collected money from Plaintiff and all Class members pursuant to its standard practices and procedures after each obtained a bankruptcy discharge of a loan that Navient's own data identified as not exempt from discharge. *See* ECF 70, Pl.'s MPA, at 10 (citing ECF 71-1, Ex. 3, Zemetro Dep., at 41:9-42:1, 46:17-47:3; ECF 73-2, Ex. 2, Stine Dep., at 27:2-3; ECF 73-3, Ex. 4, Theuer Dep., at 84:21-85:10). No evidence of record suggests that Navient's conduct with respect to Plaintiff was unique to him. Typicality is plainly satisfied here. *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) ("We do not insist that the named plaintiffs' injuries be identical with those of the other class members, only that the unnamed class members have injuries similar to those of the named plaintiffs and that the injuries result from the same, injurious course of conduct.").

*Arguendo*, even if Navient were correct on the law, which it is not, it fails to support its typicality challenge with any evidence. This is fatal because courts should not "permit[ ] arguments woven entirely out of gossamer strands of speculation and surmise to tip the decisional scales in a class certification ruling." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000). Moreover, some of Navient's arguments are red herrings. It makes no difference, for example, whether a borrower filed chapter 7 or chapter 13, as the discharge injunction applies with equal force to both chapters. *See* 11 U.S.C. § 524(a)(1) (citing discharges under sections 727 and 1328).

    2.    *Teran is an Adequate Class Representative*

Navient also attempts to shoehorn its meritless class action waiver argument, *see supra* § II.B, and a novel argument seemingly directed to the Rule 23(b)(3) superiority requirement, into a challenge to Teran's adequacy under FED. R. CIV. P. 23(a). These arguments fail.

Navient argues that Teran's "disinterest" in pursuing other claims certain Class members may have, *e.g.*, undue hardship claims, creates a conflict between him and these—unidentified—members of the Class, but this is meritless. This imaginary conflict does not rise to the level of "substantial" or "material" needed to defeat adequacy. *See Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173,1177 (9th Cir. 1977) ("Substantial conflict going to the subject matter of the lawsuit is

necessary to prevent class action treatment."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) ("An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy[.]"). Moreover, it is well established that a plaintiff may pursue whatever theory supports his or her claim. *See LaRocque ex rel. Spang v. TRS Recovery Servs., Inc.*, 285 F.R.D. 139, 147 (D. Me. 2012) ("It is the plaintiff's right to frame the theory of her lawsuit and choose her claims[.]"); *see also Murray v. GMAC Mort. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (a plaintiff may forego certain claims to achieve class certification). And, here, the "undue hardship" question is an entirely different question than whether a loan falls under the scope of section 523(a)(8), so a Class member would still retain the right to argue undue hardship.

Teran is seeking reimbursement of all funds unlawfully collected from Class members by Navient. ECF 1, Compl., ¶ 79. That relief is identical with whatever "additional" relief Navient speculates may be available to, for example, debtors due an undue hardship discharge.

Navient's reliance upon *Back Drs. Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827 (7th Cir. 2011) is misplaced as that decision, and the quotation Navient extracts from it, does not address Rule 23, but instead concerns whether allegations in a class action complaint were sufficient to invoke federal court jurisdiction pursuant to the Class Action Fairness Act. *Id*. at 830-31. Elsewhere, the Seventh Circuit has held that class representatives do not become inadequate simply because they elect to pursue certification of certain claims and not others, as Teran does here. *Murray*, 434 F.3d at 953. Navient's attempts to gin up a conflict between Teran and Class members lacks merit.

Similarly, Navient's baseless and speculative argument about the existence of arbitration agreements between it and, once again, unidentified Class members also does not render Teran inadequate, and Navient does not explain how the existence of such agreement would create a conflict between him and Class members. Most importantly, is it unsupported by any evidence. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (burden regarding arbitration is on party seeking to invoke it). Even if Navient could muster such agreements, certifying a class is still appropriate because individuals bound by such agreements could simply

Case: 20-03075   Doc# 117   Filed: 02/20/23   Entered: 02/20/23 15:40:13   Page 23 of 34

be excluded from the certified Class or moved into a subclass for further factual development. *Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012) (subclassing can resolve conflicts of interest that might prevent representative plaintiffs from adequately representing class).

**E.**     **The Proposed Classes Satisfy Rule 23(b)(2)**

Certification of Teran's injunctive relief class under Rule 23(b)(2), which simply requires proof that Navient "has acted or refused to act on grounds that apply generally to the class," FED. R. CIV. P. 23(b)(2), is appropriate here, and Navient does not raise any meritorious arguments to the contrary.

To start, *Barrientos* does not prevent Teran from obtaining injunctive relief here. First, as described above, *Barrientos* contains a tremendous amount of dicta, of which its "second-order injunction" language is part. *See Fagan*, 559 B.R. at 724 (describing the expansive dicta from *Barrientos* after it reached its decision based on *Walls*). Even taking that dicta at face value, *Barrientos* only prevented such injunctive relief as a method to demand an adversary take place as of right. *See Barrientos*, 633 F.3d at 1190–91 (citing FED. R. BANKR. P. 7001(7)). The court did not hold that injunctions were never appropriate in contempt proceedings. *See id*.

Even if the *Barrientos* language did impose the broad limitations Navient insists, it still does not apply here because Teran does not simply seek a superfluous injunction. In this class action, he seeks broad injunctive relief for Navient ultimately to change its business practices; not simply to stop collecting on a single person's discharged debt. *In re Wagabaza*, No. 5:18-CV-00406-JLS, 2019 WL 3717794, at *7 (C.D. Cal. Aug. 7, 2019) (injunction issued by bankruptcy court that was broader than the discharge injunction was not superfluous). As described above, there already exists authority for a nationwide injunction against Navient's business practices (albeit for a different class of loans). *Homaidan*, 2022 WL 10707498, at *46-53.

Next, this Court may properly certify Teran's proposed injunctive relief class pursuant to Rule 23(b)(2). Navient mistakenly reads *Wal-Mart v. Dukes*, 564 U.S. 338 (2011), in which the plaintiff had *not* sought to certify a compensatory damages class pursuant to Rule 23(b)(3), to preclude the simultaneous certification of a Rule 23(b)(2) class for injunctive relief that overlaps

Case: 20-03075    Doc# 117    Filed: 02/20/23    Entered: 02/20/23 15:40:13    Page 24 of 34

with a smaller Rule 23(b)(3) damages class. This is *not* what the Supreme Court decided. 564 U.S. at 362 ("[W]e think it clear that individualized monetary claims belong in Rule 23(b)(3)."). Indeed, even after *Dukes*, courts have certified injunctive relief classes pursuant to Rule 23(b)(2) while simultaneously certifying a Rule 23(b)(3) damages class for a subset of those class members. *See*, *e.g.*, *Stewart v. LexisNexis Risk Data Retrieval Services, LLC*, No. 3:20-cv-00903-JAG, ECF 91, 92, 93 (E.D. Va. July 27, 2022) (orders finally approving Rules 23(b)(2) settlement, Rule 23(b)(3) settlement, and injunctive relief order). The same outcome is both permitted and appropriate here because Plaintiff has carried his burdens under both Rule 23(b)(2), *see* ECF 70 at 9-10, and Rule 23(b)(3), *see infra* § II.F.[6]

Further, Plaintiff's request for declaratory relief is proper. Bankruptcy courts are expressly permitted to determine the dischargeability of a debt under Fed. R. Bankr. P. 7001(6) and 11 U.S.C. § 523, and often do so.

Mazloom and two other parties have filed an "opposition," similarly asserting the nationwide scope of the proposed Rule 23(b)(2) injunctive relief class risks creating a *res judicata* effect for class members outside the Ninth Circuit. First, it should be noted this opposition brief is improper. Not only was Mazloom's motion to intervene denied, ECF 98, but a judgment was recently entered against her in New York because she was found to have a nondischargeable Title-IV loan. *See In re Mazloom*, A.P. No. 20-80033-6-dd, ECF 167 (Bankr. N.D.N.Y. Jan. 26, 2023). Robert Crandall and Molly Crandall have not moved to intervene in this case – or attempted to meet the requirements of FED. R. CIV. P. 24. – nor have they yet been permitted to be substituted in the New York litigation. Nevertheless, the concerns raised by these proposed intervenors are purely hypothetical. They have not cited a single case where a bankruptcy court was prevented from ordering relief in contempt simply because a prior injunction had been entered. The lack of such authority is telling as "every federal court of appeals that has considered the question has held that a class action seeking only declaratory or

---

[6]    Navient again conjures imaginary "class members who have already paid off their loans" and others, ECF 101, Def.'s Opp., at 16, to oppose certification, but these hypothetical arguments are properly directed to the predominance and superiority requirements of Rule 23(b)(3), under which monetary damages are plainly available, and fail in any event.

Case: 20-03075   Doc# 117   Filed: 02/20/23   Entered: 02/20/23 15:40:13   Page 25 of 34

injunctive relief does not bar subsequent individual suits for damages." *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996) (cases cited); *see also In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 114–15 (E.D.N.Y. 2012) (New York action certifying a monetary relief class despite prior Rule 23(b)(2) injunctive relief class, and overruling claim-splitting objection).

## F.     The Proposed Classes Satisfy Rule 23(b)(3)

### 1.    *The Common Issues Here Predominate*

Turning to the dual elements of predominance and superiority under Rule 23(b)(3), Navient first contends that the common questions allegedly do not predominate here. ECF 101, Def.'s Opp., at 18-19. Navient, however, offers no *evidence or analysis* in support of its position. It simply lists in bullet format 19 questions and proclaims that these questions are allegedly "individualized" and that they will be the ones to allegedly "predominate" at trial. *Id.* But that is not how Rule 23(b)(3) works.

The predominance element is not quantitative; it does not simply tally the number of questions that a party can raise in its brief, with the higher tally predominating. Predominance is highly qualitative. The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more *prevalent or important* than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, -- U.S. -- ,136 S. Ct. 1036, 1045 (2016) (citation omitted) (emphasis added). It thus requires the Court to rigorously assess how the case will play out at trial and to analyze which issues and which evidence will be more powerful and important, whether common evidence will drive the outcome. *Id.*[7]

This is a highly discretionary judgment that the trial court must make. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 967 (9th Cir. 2013) (upholding trial court discretion on finding that Rule 23(b)(3) was satisfied); *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939 (9th Cir. 2009) (same).

---

[7]     "[A] district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Cruz v. Dollar Tree Stores, Inc.*, 270 F.R.D. 499, 506 (N.D. Cal. 2010) (quoting *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)).

18

Here, as Teran explained in his opening brief, the consequential and important points in the litigation are established by common evidence. Navient has known for many years that the student loans at issue here were discharged, and even that students on occasion brought lawsuits against Navient when it tried to collect on these discharged student loans. ECF 101, Def.'s Opp., at 24. Navient was listed as a creditor on all of the court filings and it routinely tracks bankruptcy filings for its debts. Its own spreadsheets, which it has had for years according to its own witness testimony, show the exact date of the discharge orders of each class member's loan and exactly how much Navient collected post-discharge. *See* ECFs 70, ECF 73-6, 73-7. There is no evidence that Navient did not know of the discharge orders when or after it collected money from Class members or that it gave unlawfully collected money back to them. But there is evidence that Navient has a standardized collection protocol post-discharge,[8] and that it sends student loan debt letters post-discharge that assert that the discharged debtors still owed on their loans despite their bankruptcies. *See* ECF 71-1, Ex. 3, Zemetro Dep., at 46:17-47:3. Its own Enterprise Data Warehouse system categorized loans as "bar study" or "medical residency" or "non-Title IV institution" loans, the types of loans known widely to be non-qualified, but Navient routinely collected on those loans post discharge anyway, and did so for every Class member here. *See* ECF 73-3, Ex. 4, Theurer Dep., at 43:5-17, 60:1-16, 66:11-14; 71-4; ECF 73-4, Ex. 5, Peterson Dep., at 50:14-51:6.

It is also important to note that Navient has the burden here to show that any particular student loan was non-dischargeable, and thus could be collected even after a bankruptcy discharge. *See Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R. 908, 916 (B.A.P. 9th Cir. 2013); *see also Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 168 (B.A.P. 9th Cir. 2017) (creditor "will bear the burden of proving that § 523(a)(8) applied to the loan"). Navient has offered no such evidence for Plaintiff or for any Class member. *See* ECF 58. Should such evidence surface later for a Class member or group of Class members, they can be removed administratively. But to date there is no such evidence of record, so there is no basis for

---

[8]     *See* ECFs 70 and 73 at Ex. 2, Stine Dep., at 18:14-19:3; *see also id*. at Ex. 4, Theuer Dep., at 84:21-85:10; Ex. 2, Stine Dep., at 17:23-18:5.

Case: 20-03075   Doc# 117   Filed: 02/20/23   Entered: 02/20/23 15:40:13   Page 27 of 34

1  any argument that such an issue would predominate at trial.

2      Navient raises other questions, but most of these are also based upon speculation or mere

3  hypotheticals. For example, it asks whether class members may have "misrepresented" their

4  enrollment status, ECF 101, Def.'s Opp., at 18, but there is no evidence of record of any such

5  misrepresentation. Navient has not identified even a single witness or document who would

6  make this an issue for any Class member, much less a predominating one at trial. "[S]peculation

7  and surmise should not tip the decisional scales in a class certification ruling**.**" *Bridging*

8  *Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016)); *see also Huffman*

9  *v. Prudential Ins. Co. of Am*., 2018 WL 583046, at *6 (E.D. Pa. Jan. 29, 2018) (same);

10  *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003).

11      Navient further speculates that some class members may have already "settled" their

12  claims, but again it has no evidence of any such settlement and even admits that this is "not

13  [even] a searchable data point." ECF 101, Def.'s Opp., at 19. It speculates that some Class

14  member "collection activity" was indirect, via a third "a party-party collection agency." *Id.* But

15  no such collection agency is of record, and that would not excuse Navient's collection of

16  discharged funds. The Ninth Circuit spreadsheet produced by Navient in this case (common

17  evidence) show the discharge date and the exact amount received by Navient post-discharge.

18  Even if Navient used one or more collection agencies, nothing about such evidence, should it

19  come to light later in his case, even remotely suggest that the existence or identity of any such an

20  agency will be important to the outcome of the case. *See Bridging Communities Inc.*, 843 F.3d at

21  1125 (speculation insufficient to defeat class certification).

22      Navient contends that some class members cannot recover for their CCRAA claims only,

23  because of arbitration agreements after those claims only, but a defendant has the burden of

24  demonstrating the existence of a valid arbitration agreement and Navient has not done that for

25  any class member, including Plaintiff. *See Magallon v. Robert Half Int'l, Inc.,* No. 6:13-CV-

26  01478-AA, 2018 WL 2021346, at *3 (D. Or. May 1, 2018) ("It is defendant's burden *to produce*

27  *documentation* that an individual who meets the other criteria for class membership should be

28  excluded due to an agreement to arbitrate.") (emphasis added) (citing *Ashbey v. Archstone*

20

1 | *Property Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (holding that, under the Federal

2 | Arbitration Act, the party seeking to compel arbitration has the burden to show that (1) a valid

3 | agreement to arbitrate exists and (2) the agreement encompasses the dispute at issue)).

4 | Raising a high tally of questions or a high number of hypothetical questions not

5 | predicated upon actual evidence does not help Navient here. Plaintiff has met his burden, and

6 | Navient's long list of questions divorced from the actual facts of record and from any analysis

7 | does not tip the decisional scales in its favor.

8 |     2.    *The Class Is Plainly Ascertainable*

9 | Next, Navient contends that the classes here are allegedly not "ascertainable" because

10 | they present "highly individualized questions regarding the extent of relief and/or damages of

11 | each putative class members." ECF 101, Def.'s Opp., at 21. But ascertainability has nothing to

12 | do with "relief and/or damages." Several courts have found that a *class definition* must be based

13 | upon objective criteria – so that it is clear who is a member of a class and who is not. *See*

14 | *Vietnam Veterans of Am. v C.I.A.*, 288 F.R.D. 192, 211 (N.D. Cal. 2012) (class must be

15 | "adequately defined and clearly ascertainable."); *City Select Auto Sales Inc. v. BMW Bank of N.*

16 | *Am. Inc.*, 867 F.3d 434, 439 (3d Cir. 2017) ("ascertainability and a clear class definition allow

17 | potential class members to identify themselves for purposes of opting out of a class."). Here,

18 | Navient takes no issue with the proposed class definitions. Nor could it, as it is clear from the

19 | definitions which debtors make up the proposed classes here.

20 | The fact that different class members may have different amounts of money damages

21 | (moneys collected from them by Navient or its agents post-discharge) is not an ascertainability

22 | issue at all. Indeed, the collected post-discharge sums for individual debtors are listed within the

23 | excel spreadsheets produced by Navient in the same line as their unique account information,

24 | making the objective identification of class members very simple indeed.[9] Further, many courts

25 |

26 | [9]     Navient states that some courts in other circuits have found that prior to judgment a trial

27 | court must be consistent that that there exist some "mechanism for distinguishing the injured from the uninjured class members." ECF 101, Def.'s Opp., at 20. This is more of an Article III standing issue, rather than an ascertainability issue, but in this case a mechanism is already in place –

28 | Navient's Ninth Circuit spreadsheet reflecting exact post-discharge collections for each class

Case: 20-03075   Doc# 117   Filed: 02/20/23   Entered: 02/20/23 15:40:13   Page 29 of 34

have found that differing damages or damages calculations pose no serious predominance challenges for class certification. *See Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.,* 601 F.3d 1159, 1178–79 (11th Cir. 2010) ("the presence of individualized damages issues does not prevent a finding that the common issues . . . predominate") (internal citations omitted); *see also Yokoyoma v. Midland Nat. Life Ins*. Co., 594 F.3d 1087, 1094 (9th Cir. 2010) ("damages calculations alone cannot defeat certification."); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (collecting cases).

Navient's arguments about ascertainability and damages thus fail.

### 3. The CCRAA Claim Does Not Fail Due to the Actual Damages Prerequisite

Next, Navient contends that individualized CCRAA damages will predominate in the prosecution of that claim. It is true that several courts in California have held that in order for a plaintiff to recover the up to $5,000 punitive damages permitted by the CCRAA and sought here, that plaintiff must first show "actual harm" as a prerequisite. *See, e.g., Kang v. Credit Bureau Connection, Inc*., Civ. No. 18-01359, 2022 WL 658105, at *7 (E.D. Cal. Mar. 4, 2022) and ECF 101, Def.'s Opp., at 21-22 (citing cases). But the actual harm prerequisite is satisfied here – all Class 3 members who may recover here had money taken from them by Navient that they did not legally owe to Navient, as the Ninth Circuit spreadsheet shows. There can be no serious question that monetary loss is "actual harm."

This case is not like *Kang, supra*, in which the actual harm alleged was solely reputational in nature, and thus, in the view of that court, required individualized and unique proof concerning each class member's reputation. *Id*. Here, Class members had moneys collected from them unlawfully, and Plaintiff claims that Navient's false credit reporting was an instrument of collection, a point acknowledged by several courts and commentators. *See, e.g*., *Rivera v. Bank One*, 145 F.R.D. 614, 623 (D.P.R. 1993) ("a [creditor's] ability to report on the

---

member subject to post-discharge collection. *See* ECF 70; ECF 73-6, Ex. 7; ECF 73-7, Ex. 8. Nor can there be any question that "[i]f a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *Trans Union, LLC v. Ramirez*, -- U.S. -- , 141 S. Ct. 2190, 2204 (2021). Since all Class 2 and 3 members here have a monetary injury, they can all recover after a final money judgment for the Plaintiff.

credit habits of its customers is powerful tool designed, in part, to wrench compliance with payment terms[.]"); *In re Russell*, 378 B.R. 735, 743 (Bankr. S.D.N.Y. 2007) ("false or outdated reporting to credit reporting agencies, even without additional collection activity, can constitute an act to extract payment of a debt in violation of" Bankruptcy Code; collecting bankruptcy cases); *accord Sullivan v. Equifax*, Inc., No. CIV.A. 01-4336, 2002 WL 799856, at *4 (E.D. Pa. Apr. 19, 2002) (citing *Rivera*); *Abdelfattah v. Carrington Mortg. Serv. L.L.C.*, 2013 WL 495358 (N.D. Ca. Feb. 7, 2013) (sustaining claim for punitive damages against credit furnisher that allegedly refused to correct false information concerning debt where consumer paid additional money that was not owing).[10]

Navient contends that Class member must show that they "applied for credit" and were "harmed in the credit-reporting process" and that an "adverse credit decision" was made against them. ECF 101, Def.'s Opp., at 22. Such a theory of actual harm might require individualized showings, but that is not Plaintiff's theory of actual harm here. As a federal court noted in a similar context involving unlawful credit reporting and collection activities, "[i]t is the plaintiff's right to frame the theory of her lawsuit and choose her claims," and a defendant cannot defeat a motion for certification by just reframing plaintiff's theory. *LaRocque*, 285 F.R.D. at 147.

4.  *Class Adjudication Is the Superior Form of Adjudication Here*

Finally, Navient argues that individual lawsuits are a superior method of adjudicating this

---

[10]    *See also Escobar v. Midland Credit Mgmt.*, 2020 WL 5411574 (D. Conn. Sept. 9, 2020) (regular credit reporting was attempt to collect a debt); *Brooks v. Midland Credit Mgmt., Inc.*, 2013 WL 1010455 (D. Md. Mar. 13, 2013) (reporting debt to CRA is collection activity); *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1035 (D. Minn. 2010), aff'd, 413 Fed. Appx. 925 (8th Cir. 2011) ("The Court has learned… that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver."); *Greene v. Capital One Bank*, 2008 WL 1858882, at *4 (D. Utah Apr. 23, 2008) ("[i]t is certainly not beyond belief that a furnisher of information might use the false tradeline as a club in negotiating down a judgment, as may have happened in this case"); *Blanks v. Ford Motor Credit*, 2005 WL 43981, at *3 (N.D. Tex. Jan. 7, 2005) (communicating information to credit reporting agency is communication in connection with collection of debt; quoting *Sullivan*); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 n.4 (D. Md. 2004) (reporting debt is "in connection with" debt collection); *Ditty v. CheckRite, Ltd.*, 973 F. Supp. 1320, 1331 (D. Utah 1997) (reporting bad check information to others is designed to give collector additional leverage over debtor).

23

controversy. ECF 101, Def.'s Opp., at 23-25.[11] Navient claims that it has defended "hundreds of cases" involving the discharge status of private student loans, *id*. at 24, provides no factual basis demonstrating that the issues in these lawsuits were the same as the issues here, or even a list of those hundreds of lawsuits. Moreover, it does not even offer an explanation as to why crowding the courts with hundreds of lawsuits allegedly over the same issue are allegedly "superior" to one lawsuit or a few circuit-wide lawsuits.

Navient further contends, again with no evidence, that individuals allegedly have a "strong interest" in controlling prosecution of separate individual lawsuits, *id.*, but it fails to explain how individuals would even know that Navient's post-discharge collection practices are unlawful or why they would have a strong interest to hire counsel (or even how they could retain counsel) to litigate over a few thousand dollars. "[T]here is a strong presumption in favor of a finding of superiority where . . . the alternative to a class action is likely to be no action at all for the majority of class members." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 218 (E.D. Va. 2015) (citation omitted).

Navient spends most of its opposition brief arguing that Plaintiff allegedly has no valid claims at all, but at the end of its brief it criticizes Teran for allegedly not seeking enough damages – for the class's "emotional and consequential" harms. ECF 101, Def.'s Opp., at 24. This contention is specious and has absolutely nothing to do with Rule 23(b)(3) superiority. Navient does not seriously think that Teran should sue it for even more damages. Nor are class

---

[11]     Rule 23(b)(3) includes a non-exhaustive list of factors pertinent to a court's "close look" at the predominance and superiority criteria:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED. R. CIV. P. 23(b). In setting out these factors, the Advisory Committee for the 1966 reform anticipated that in each case, courts would "consider the interests of individual members of the class in controlling their own litigations and carrying them on as they see fit." Adv. Comm. Notes, 28 U.S.C. App., p. 698.

actions made when lead plaintiffs seek emotional damages or consequential damages (involving second- and third-order causal factors), as Navient's counsel well knows.

The superiority element is satisfied here is because, as the Supreme Court has found, the very purpose of "the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).[12]

That is the case here. Teran may get back some $13,000 that Navient unlawfully collected from him post-discharge and potentially an addition $5,000 in CCRAA statutory damages. Most lawyers will not take an $18,000 damages case and many class members have potential recoveries that are far smaller, *see* ECF 70; ECF 73-6 (Ex. 7); ECF 73-6 (Ex. 8), and likely do not even know they have a claim. Without a class action, most Class members will never recover anything at all and Navient will get a windfall from its unlawful conduct. But if the Court certifies the Classes proposed here, Navient will be under court order to cease its unlawful post-discharge collections (which it presently is not under) and the Class member debtors who had moneys collected from them post-discharge, who have been largely identified in this case, will each be able to pursue a modest recovery. This equitable and efficient possibility is precisely why a class action is the superior mechanism to resolve this case.

### III. CONCLUSION

Wherefore, Plaintiff Teran respectfully requests that this Court grant his Motion for Class Certification.

//

//

---

[12] *Accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998) ("[T]hese claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs. In most cases, litigation costs would dwarf potential recovery. In this sense, the proposed class action is paradigmatic. A fair examination of alternatives can only result in the apodictic conclusion that a class action is the clearly preferred procedure in this case.").

Case: 20-03075   Doc# 117   Filed: 02/20/23   Entered: 02/20/23 15:40:13   Page 33 of 34

Dated:  February 20, 2023  Respectfully submitted,

**OSCAR D. TERAN**, by his attorneys,

*/s/ Erika Heath*
Erika A. Heath
**FRANCIS MAILMAN SOUMILAS, P.C.**
369 Pine Street, Suite 410
San Francisco, CA 94104
Tel: 628-246-1352
Fax: 215-940-8000
eheath@consumerlawfirm.com

James Michel
**THE LAW OFFICE OF JAMES MICHEL**
2912 Diamond St #373
San Francisco, CA 94131-3208
Tel: (415) 239-4949
attyjmichel@gmail.com

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis*
John Soumilas*
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff and the Classes*

Case: 20-03075   Doc# 117   Filed: 02/20/23   Entered: 02/20/23 15:40:13   Page 34 of 34