

Signed and Filed: March 30, 2023

_____

**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case No. 10-31718-DM |
| | ) |
| OSCAR D. TERAN, | ) Chapter 7 |
| | ) |
| | ) |
| Debtor. | ) |
| | ) |
| OSCAR D. TERAN, | ) Adversary Case No. 20-03075-DM |
| | ) |
| Plaintiff, | ) |
| | ) Hearing Held |
| v. | ) Date: February 23, 2023 |
| | ) Time: 9:30 AM |
| NAVIENT SOLUTIONS, LLC and | ) Via Tele/Videoconference |
| NAVIENT CREDIT FINANCE | ) www.canb.uscourts.gov/calendars |
| CORPORATION, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM DECISION ON MOTION FOR CLASS CERTIFICATION**

**I.    INTRODUCTION**

Oscar D. Teran ("Teran") fulfilled his dreams and graduated from an excellent law school in California. He borrowed a modest amount of money to study for the Texas bar examination.

-1-

When things went poorly after that he was forced into Chapter 7 bankruptcy.

His hopes for a fresh start were derailed when Navient Solutions, LLC, and Navient Credit Finance Corporation (together, "Navient") decided to ignore Teran's bankruptcy discharge and pursue him to collect that modest debt over the ensuing years. Teran paid a lot of the debt, while not obligated to. Finally, after more than a decade of effort, Teran gave up and fought back.

Here is how that battle has played out and how Teran has vindicated his legal rights and those of thousands of people like him and how they may finally see justice and recovery in pursuit of their fresh start after Navient blocked them for so long.

Before the court is a Motion for Class Certification ("Motion") (Dkt. 67) filed by Teran on behalf of himself and all of those similarly situated. The Motion is opposed by Navient (Dkt. 101). The court heard argument on February 23, 2023 and took the matter under submission. Appearances are noted on the record.

For the reasons explained below, the court will GRANT the Motion.

II. **PROCEDURAL HISTORY**

Teran filed a voluntary petition under Chapter 7 in this court on May 10, 2010. On August 17, 2010 he received his discharge and his case was closed not long after that. No party

-2-

sought a determination of the dischargeability of any of Teran's debts.

He filed this adversary proceeding on August 31, 2020. The *Class Action Complaint* ("Complaint") (Dkt. 1) alleged three claims for relief. The first charges Navient with violations of discharge orders; the second seeks a determination of the dischargeablility of debts that are outside the scope of the so-called "student loan" exception found in section 523(a)(8).[1] The third seeks relief under California Civil Code sections 1785.25 and 1785.31, the California Consumer Credit Reporting Agencies Act ("CCCRAA").

In paragraph 57 of the Complaint, under the heading "Class Action Allegations", Teran alleged that he has brought this action on behalf of himself and all persons similarly situated, and is representative of

> Persons who filed for bankruptcy protection in the U.S. Bankruptcy Court for the Northern District of California on or after October 17, 2005, who:
>
> a.    incurred pre-petition loans, whether as borrower or co-signer, that were not guaranteed by any non-profit institution to cover expenses at non-eligible educational institutions as that term is defined in 26 U.S.C. § 221(d);
>
> b.    who listed such loans on Schedule F of their bankruptcy filings;

---

[1]    Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

–3–

c.   have never reaffirmed such pre-petition loan debt;

d.   were granted a discharge; and,

e.   have nonetheless been the subject of Defendants' policy of attempting to compel and/or successfully compelling payment of these discharged loans.

Early on, Navient filed a Motion to Dismiss Count Three of Plaintiff's Complaint, or, Alternatively, Compel Arbitration ("MTD") (Dkt. 20).

For reasons not relevant to the present issue before the court, there were delays. Finally, on April 22, 2021, the parties filed a Joint Status Report Regarding Summary Judgment Motion Schedule (Dkt. 31) that dropped the MTD from calendar while a motion for summary judgment on Count Two of the Complaint would be filed and adjudicated.

Next, Navient filed a Motion for Summary Judgment (Dkt. 34). Following other preliminary procedural matters, the court heard argument and then issued its Memorandum Decision on Motion for Summary Judgment (Dkt. 58) on February 15, 2022. The court determined that there was no factual dispute that Teran's loan was not a Qualified Education Loan for the purposes of section 523(a)(8)(B), and that summary judgment in his favor was appropriate. A material fact question existed as to whether Teran's loan was made under any program funded at least in part by a government program or institution pursuant to section 523(a)(8)(A)(i). Summary judgment needed to be denied for that reason. The court set a further status conference to discuss proceedings regarding whether any other factual support as to

-4-

the funding of the LAWLOANS program could be provided to support Navient's position prior to entry of an order on the Motion for Summary Judgment.

On December 16, 2022, Teran filed the Motion.

## III. <u>MOTION FOR CLASS CERTIFICATION</u>

Despite the very limited reach of the Complaint as summarized above, the Motion seeks a certification of the following three classes pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) (incorporated by Fed. R. Bankr. P. 7023):[2]

**Injunctive Relief Class for Non-Qualified Loans ("Class 1").**
Pursuant to FED. R. CIV. P. 23(b)(2):

Every natural person residing in the United States and its Territories: (1) who obtained a bankruptcy discharge order covering a Navient debt from October 17, 2005 until the time that class notice is to be provided in this matter; (2) the covered debt was for the purpose of bar study, relocation, medical residency, career training, continuing education, purchasing computer(s), or obtaining professional license(s) or, regardless of purpose, for study at any college or university that Navient's records classify as non-Title IV, K-12, unaccredited, or not located within the U.S.; and (3) which covered debts (sic) reflect a balance on Navient's records as of December 15, 2022.

**Ninth Circuit Class for Non-Qualified Loans ("Class 2").**
Pursuant to FED. R. CIV. P. 23(b)(3):

Every natural person residing in the United States and its Territories:(1) who obtained a bankruptcy discharge order within the Ninth Circuit covering a

---

[2]   All discussion about FRCP 23 and FRBP 7023 will be referred to as "Rule 23".

-5-

Navient debt from October 17, 2005 until the time that class notice is to be provided in this matter; (2) the covered debt was for the purpose of: bar study, relocation, medical residency, career training, continuing education, purchasing computer(s), or obtaining professional license(s) or, regardless of purpose, for study at any college or university that Navient's records classify as non-Title IV, K-12, unaccredited, or not located within the U.S.; and (3) from whom Navient collected any sum of money toward that covered debt after the discharge order.

**California Unfair Collection and Reporting Class for Non-Qualified Loans ("Class 3").**
Pursuant to FED. R. CIV. P. 23(b)(3):

Every natural person residing in the State of California: (1) who obtained a bankruptcy discharge order covering a Navient debt from October 17, 2005 until the time that class notice is to be provided in this matter; (2) the covered debt was for the purpose of: bar study, relocation, medical residency, career training, continuing education, purchasing computer(s), or obtaining professional license(s) or, regardless of purpose, for study at any college or university that Navient's records classify as non-Title IV, K-12, unaccredited, or not located within the U.S.; and (3) on whose credit report Navient reported the covered debt with an outstanding balance after the date of the discharge order between September 1, 2018 until the time that class notice is to be provided in this matter.

## IV.  DISCUSSION

### A.  Controlling Precedent

In this circuit, two decisions control a threshold issue relevant to the present dispute.  In *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502 (9th Cir. 2002), the court held that there is no private right of action under section 524 for violation of a discharge injunction.  In that case, plaintiff sought a recovery from a lender either under section 524 or section 105, the very

-6-

familiar catch-all provision in the Bankruptcy Code that empowers the Bankruptcy Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code]."  In reaching its conclusion, the court rejected the First Circuit decision in *Bessette v. Avco Fin. Serv., Inc.,* 230 F.3d 439 (1st Cir. 2000), that permitted enforcement of a substantive violation of the Bankruptcy Code, specifically section 524 (". . . we hold that § 524 is enforceable through § 105."), *Bessette*, at 445. Instead, the court agreed with a contrary Sixth Circuit decision, *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417 (6th Cir. 2000).  In doing so, the Ninth Circuit reiterated that a court cannot legislate in place of what was required by Congress and instead concluded that the contempt remedy for such conduct was sufficient:  ("We . . . are persuaded that violatons of [section 524] may not independently be remedied through § 105 absent a contempt proceeding in the bankruptcy court."), (*Walls*, at 506).

Navient points to language in *Walls* that states that implying a private remedy could put enforcement of the discharge injunction "in the hands of a court that did not issue it", saying that it "is inconsistent with the present scheme that leaves enforcement to the bankruptcy judge whose discharge order gave rise to the injunction."  That was not the holding of *Walls*.

*Walls* was a class action and there was no discussion of whether class actions were available for one bankruptcy judge to

enforce discharges granted by another bankruptcy judge. There is, however, a clue in the reference to the "complex, detailed and comprehensive provisions of the Bankruptcy Code" (citation omitted), including "an enforcement mechanism for violations of § 524 via the contempt remedies under § 105(a)." The decision cautions against a private remedy that might even put private enforcement in the hands of a jury. The discussion concluded with a citation to the 1973 Report of the Commission on the Bankruptcy Laws of the United States that removed from state courts the detemination of the effect of a discharge and vested that authority in the bankruptcy courts. *Walls*, at 509.

From the foregoing, this court concludes that as a matter of law of this circuit, enforcement of a discharge is handled through the contempt process; the decision makes no distinction, and cannot be cited as precedent for, the notion that one bankruptcy judge cannot enforce a discharge issued by another bankruptcy judge.

Nine years after *Walls*, the Ninth Circuit decided *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186 (9th Cir. 2011). In that case, which was not a class action, the appellant sought damages for violation of section 524 by way of adversary proceeding. Applying its own *Walls*, the court stated

> "we therefore rule that *Walls* is sufficient to dispose of the present case. However, even in the absence of *Walls*, it appears that the Bankruptcy Rules require that an action for contempt arising out of the violation of an order issued in a bankruptcy case must be brought by motion in the bankruptcy case."

633 F.3d at 1189.

-8-

There is no discussion in *Barrientos* about whether or if such an action could be handled as a class action or if one bankruptcy judge may be called upon to interpret or enforce the boilerplate discharge orders issued by another bankruptcy judge.

Navient also tries to make much of *Taggart v. Lorenzen*, 139 S. Ct. 1795 (2019). In that decision, in determining the appropriate standard of applying civil contempt (strict liability, subjective intent or objective intent), Justice Breyer cited a slightly earlier Supreme Court decision, *Hall v. Hall*, 138 S. Ct. 1118, 1128, noting that it "brings the old soil with it." He cited a 1947 law review article by Justice Frankfurter on the same point. The so-called "old soil" has to do with what the court called the potent weapon of civil contempt, mentioning that traditional principles of equity practice do not grant courts unlimited authority to hold creditors in civil contempt. Instead, as part of that "old soil", the bankruptcy statutes incorporate traditional standards of equity practice for determining when a party may be held in civil contempt for violating injunction. There is no "old soil" about whether or not one bankruptcy judge can enforce an order of another one.

**B.  <u>Adversary Proceeding or Motion</u>**

Rule 9014(c) incorporates several of the Part VII rules. Rule 7023 is not mentioned specifically. Nevertheless, the final sentence of that subsection of the Rule provides:

> "The court may at any stage of a particular matter direct that one or more of other rules of Part VII shall apply. The court shall give the parties notice

-9-

of any order issued under this paragraph to afford them a reasonable opportunity to comply with the procedures prescribed by the order."

Rule 7001(6) provides for an adversary proceeding "to determine the dischargeabilty of a debt". Taken together, the court is authorized to consolidate a Rule 9020 sanctions motion, the class action process to deal with multiple contempts and adversary proceeedings to determine dischargeability.

As previously noted, neither *Walls* nor *Barrientos* even mentions class actions. The first closes the door to private causes for discharge injunction violations and mandates contempt as a remedy; the latter requires contempt by way of motion rather than adversary proceeding.[3] The court knows of no Ninth Circuit authority that prohibits taking all of these procedural matters together for vindicating the rights of an individual debtor who believes the discharge injunction of § 524 has been violated, considering the rights of similarly situated debtors via a class action, and at the same time utilizing an adversary proceeding to determine whether a debt such as a "student loan" has or has not been discharged, regardless of whether the consequencse of contempt are even contemplated. Thus, whether Navient has done anything contemptuous or not, Teran is entitled

---

[3] The court notes that *Taggart* very specifically identified Sections 105 and 524 as the provisions that permit a court to hold a creditor in civil contempt. There is no reference to a motion for contempt under Rule 9020 in the opinion. This court will not glean that somehow the supreme court overruled *Walls* and *Barrientos*, sub silentio, and will assume that these two decisions still compel it follow their sanctions motion procedural requirements.

-10-

to a judicial determination of the extent and reach of his discharge. So, too, are others within his proposed class.

In sum, Teran may join his sanctions motion and his adversary proceeding to determine dischargeabilty, and do both in the form of a class action.

## C.  No Need to Amend Complaint

The *Cissna* decision, cited by Navient, points out that district courts in the Northern and Central districts of California differ on how they respond when comparing class definitions in complaints and in class certification motions.[4] There, the court elected to reject those cases that adhere strictly to the class definition in the operative complaint and also rejected those that only narrow a class at the certification stage. Instead, it opted for a third line of cases, those that permit plaintiffs to modify the proposed class so long as the "proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants," citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590–91 (N.D. Cal. 2010).

This court follows *Cissna* and will not take the time to require Teran to amend the complaint. The expansion from debtors who have sought discharges in bankruptcy in the Northern District of California to the entire Ninth Circuit, while

---

[4] *See J.L. v Cissna*, 18-CV-04914-NC, 2019 WL 45579, at *5 (N.D. Cal, Feb 1, 2019), citing District courts have split over whether a plaintiff is bound by the class definition set out in her complaint. *See Grodzitsky v. Am. Honda Motor Co.*, No. 12-cv-01142-SVW, 2014 WL 718431, at *4 (C.D. Cal. Feb. 19, 2014) (collecting cases).

-11-

greater in number, is still a minor change since there is no expansion of the reach, scope and nature of the relief sought, but only simple population increase. More importantly, Navient is not surprised and there is no need to revisit the agreed discovery that the parties have undertaken. Amendment of the complaint after all of that effort would accomplish nothing of substance and would not prejudice Navient in the slightest.

### D.  **Arbitration And Class Action Waiver**

The title and enumerated requests of Navient's MTD and the entirety of legal argument in the Memorandum of Points of Authorities (Dkt. 21) in support of the MTD focus solely on the CCCRAA claim. Now, Navient chooses to place all of the weight of that MTD onto a single sentence: "To the extent necessary, this Motion constitutes Navient's written notice of an election to arbitrate all of the claims in the Complaint."

The portion of Teran's Loan Agreement, titled "Arbitration Agreement," ECF 102-1, Box Decl. Ex. A, at 8, § S, states that Teran and Navient "agree that either party may elect to arbitrate—and require the other party to arbitrate—any Claim" under a series of terms and conditions. The election must be in the form of written notice, which "may be given after a lawsuit has been filed and may be given in papers or motions in the lawsuit." A "Claim" is defined as "any legal claim, dispute or controversy between [Navient] and [Teran] that arises from or relates in any way to the Note." Further, Section 2 of the Arbitration Agreement states that if either party elects to arbitrate a Claim, then both parties

-12-

waive the right to: (1) have a court or a jury decide the Claim; (2) PARTICIPATE IN A CLASS ACTION IN COURT OR IN ARBITRATION, WHETHER AS A CLASS REPRESENTATIVE, CLASS MEMBER OR OTHERWISE, OR ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION (THE "CLASS ACTION WAIVER"); (3) join or consolidate Claim(s) with involving any other person; or (4) obtain information except as provided herein. (Emphasis in original)

Section 7 of the Arbitration Agreement goes on to provide that the parties shall only be able to obtain discovery or information "available under the Administrator's rules or any information the arbitrator determines should be made available."

Even by the terms of the Arbitration Agreement, the only Claim for which Navient has sought arbitration is the CCCRAA claim. Navient now calls upon the Arbitration Agreement, not to enforce arbitration, but to invoke the Class Action Waiver embedded within that agreement to nullify certification of any of the proposed Classes.

That motion to compel arbitration of the CCCRAA claim has been on hold since the court requested the parties first resolve the gating issue of dischargeability. After it became apparent that a factual dispute needed to be resolved prior to disposing of the matter of dischargeability, the parties agreed to move ahead with class discovery and the subsequent Motion. At no point outside of that single sentence in the MTD did Navient request the court to compel arbitration of the dischargeability claims, and instead conducted discovery and argued its Motion for Summary Judgment in this court.

-13-

Navient cannot compel arbitration of the dischargeability claims, and it is likely aware that it cannot since it has never seriously argued the point. *See, e.g., In re Thorpe Insulation Co.* 671 F.3d 1011, 1021 ("a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code"). No matter is more closely tied with the purpose of the Bankruptcy Code than determining the dischargeability of a debt and whether a violation of a debtor's discharge has occurred. Ordering arbitration would conflict with that very important bankruptcy principle.

Navient cites only *Bock v. Salt Creek Midstream* LLC, 2020 WL 3989646 (D.N.M. July 15, 2020) to support its position that its prior request to compel arbitration of the CCCRAA claim can defeat the entirety of the Motion, and not just the portion of the Motion that relates to the CCCRAA claim. In that case, the court dug into the language of the arbitration clause and class action waiver in question to conclude that the waiver covered "any right for any dispute to be brought, heard, decided, or arbitrated as a class and/or collective action. *Id.* at *13.

The Class Action Waiver here does not go nearly as far. It states that if a party elects to arbitrate a Claim, then both parties waive the right to participate in a class action or arbitration and is silent as to whether that means one could not participate in any class action at all, or only class action matters related to the Claim or Claims for which arbitration is elected. Given that subsection (4) of Section 2 of the

-14-

Arbitration Agreement, regarding discovery, is also silent on the manner of the Class Action Waiver, but necessarily logically is limited to discovery on the Claim(s) to potentially be arbitrated, it stands to reason that the Class Action Waiver is similarly hemmed in—barring only participation in class actions related to the Claim.

Teran also argues that by participating in extensive class discovery over the past year, Navient has abandoned its election to arbitrate the CCCRAA claim, and therefore the Class Action Waiver that is explicitly tied to arbitration election. *See Hill v. Xerox Business Services, LLC*, 59 F.4th 457 (9th Cir. 2023) (discussing when a court may deem a party to have abandoned its right to compel arbitration). Here, the court asked the parties to table the request to compel arbitration in favor of determining the gating question of dischargeability, so Navient's active litigation of that question in this court cannot necessarily be seen as an abandonment of that election. However, the court now concludes that the CCCRAA claim is so intrinsically linked with the question of dischargeability that resolution of Navient's alleged discharge violations necessarily resolves the question of whether Navient violated the CCCRAA—the only way reporting California credit reporting law would be violated is if Navient were reporting a discharged loan. Further, Navient's purported demand for arbitration, and not a joint demand joined by Teran, is not enough to trigger the boilerplate form of Section S, 2 of the Arbitration Agreement, sufficient to constitute a waiver by Teran of his right to

-15-

initiate or even participate in a class action dealing with his right to a discgarge.

No part of Teran's Complaint can be arbitrated, and thus the Class Action Waiver within the Arbitration Agreement is inapplicable.

**E.** **The Bankruptcy Court's Authority Beyond The Northern District**

There is virtually no discretion for a bankruptcy court to withhold a discharge, or even to apply any judicial discretion or judgment about the granting of a discharge, to an eligible debtor. First, the Bankruptcy Code itself directs what happens. Section 727(a) states: "The court shall grant the debtor a discharge, unless . . .." There follow twelve enumerated conditions that must be met for such a grant. First, subsection (a)(1) requires that the debtor be an individual. The next several (§§ 727(a)(2)-(7)) deal with a debtor who engages in improper conduct regarding property of the estate, including the concealment or destruction of it, the making of a false oath or claim, the commission of some sort of a bankruptcy abuse, the explanation for any loss or deficiency of assets, the refusal to obey a lawful order of the court (with some exceptions) and conduct prior to the bankruptcy in another case.

The next covers the grant of a discharge within eight years of the present petition, including a hardship discharge under chapters 12 or 13. The next two pertain to a written waiver of a discharge or the failure to complete an instructional course concerning financial management. The final exception, § 727(a)(12), pertains to lesser utilized provisions dealing

-16-

with exemptions and possible felonious conduct. Once a debtor meets all of the relevant subsections' predicates, or successfully defeats the fact-driven allegations of those pertaining to alleged mischief, the discharge follows as a matter of course.

Further, section 727(c) grants creditors and the United States Trustee (but not the court) the right to object to a discharge.

The Bankruptcy Rules are consistent with this lack of discretion. Rule 4004(c) directs that in a chapter 7 case, after the time for objecting to discharge or a motion to dismiss, "the court shall forthwith grant the discharge", with exceptions that are consistent with the statute, and which keep open the time under certain specific circumstances.

Thus, in a typical case, such as Teran's, when there has not been a timely objection to discharge and the debtor is eligible in all other respects, the issuance of the discharge is a ministerial act, without the court exercising any judicial discretion or authority. That is what happened for Teran in 2010.

The discharge itself is not an action item. It is simply a declaration that the debtor has obtained the discharge. *See, e.g.*, *In re Gurrola*, 328 B.R. 158 (9th Cir. BAP 2005) (analyzing the bankruptcy discharge and describing it as automatic and self-executing pursuant to the congressional scheme of both the automatic stay and discharge injunction); *In re Golden*, 630 B.R. 896, 918 (Bankr. E.D.N.Y. 2021) ("The discharge injunction is a

-17-

statutory injunction, and a product of the Bankruptcy Code itself. . . It is not a handcrafted order.").

Once the discharge is entered, section 524 kicks in. That section is entitled "Effect of Discharge." Then in three following subparagraphs, it voids certain judgments and operates as an injunction against the commencement or continuation of acts to collect debts that are discharged against the debtor or against property of the debtor. Thus, when a creditor such as Navient acts in derrogation of a debtor's rightful discharge, the consequences are found in section 524 and not in the operative discharge itself.

This concept should put to rest the fictitious notion that somehow the grant of a discharge is akin to a court issuing a specific injunction that, if violated, gives rise to contempt. *Barrientos* and *Walls* instruct and bind this court to use the contempt power of Rule 9020, but neither case, or any other controlling authority in the Ninth Circuit, suggests that the ability and authority to do so by this court is limited to discharges that have been granted within this district.

Numerous decisions outside of the Ninth Circuit have relied specifically on sections 524 and 105 to hold accountable parties who violate the discharge and therefore the discharge injunction. *See, e.g., In re Homaidan*, 640 B.R. 810 (Bankr. E.D.N.Y. 2022); *In re Otero*, 489 B.R. 313 (Bankr. D. N.M. 2013); In *re Nibblebink*, 403 B.R. 113 (Bankr. M.D. Fla. 2009).

More particularly, in *In re Anderson*, 641 B.R. 1, 17 (Bankr. S.D.N.Y. 2022), the bankruptcy court explained court's

-18-

power conferred by sections 524 and 105(a) confers power on the bankruptcy court to "enforce and carry out the Bankruptcy Code" outside its district.

In a very recent case virtually "on all fours" with this one, *Woodard v. Navient Solutions, LLC*, Adv. Pro. 21-8023 (Bankr. D. Neb. March 8, 2023), the bankruptcy court issued an order for class certification filed by a debtor against Navient for alleged violations of the discharge injunction of section 524. In addressing the question of whether one bankruptcy court can construe or enforce a discharge order issued by another court, the *Woodward* court cited *In re Haynes*, 2014 WL 3608891 at *8 (Bankr. S.D.N.Y., July 22, 2014):

> The bankruptcy discharge order is . . . a national form, which is issued in every case when there is, in fact, a discharge. The court stated that its discharge order operates as an injunction by virtual of the statutory authority of section 524 and in contrast to obtaining an injunction under FRCP 65, the debtor "merely needs to prove that the debt was, in fact, subject to the discharge under Section 727 and not declared non-dischargeable under Section 523 of the Bankruptcy Code. It is not a handcrafted order." *Id.*

*Haynes* was issued by the same bankruptcy judge who decided *In re Anderson*. In *Anderson*, the court went to lengths to stress that the concept that violations of injunctions are "generally" administered by the court that issued the injunction, but that "generally" is not a jurisdictional limitation. It further cited *Crocker v. Navient Sols, LLC* (*In re Crocker*) 941 F.3d 206 (5th Cir. 2019), a decision that rejected an Eleventh Circuit precedent that seeking to enforce an injunction apart from the issuing court is jurisdictional,

-19-

and held that the usual enforcement rules for an injunction emanate from respect for judicial process and cannot be set aside without good reason. But the good reason is as set forth in *Haynes*, *supra*, and in *In re Golden*, 630 B.R. 918 (Bankr. E.D.N.Y. 2021), *Ajasa v. Well Fargo Bank* (*In re Ajasa*) 627 B.R. 6 (Bankr. E.D.N.Y. 2021), *Woodward,* and in *Walls Ex rel v. Wells Fargo Bank* (*In re Walls*) 262 B.R. 519 (Bankr. E.D. Cal. 2001)[5]

## V.   CLASS CERTIFICATION

### A.   Rule 23(a)

The court addresses the four prerequisites of class certification found in Rule 23(a). One or more members of a class may sue or be sued as representative parties only if:

(1)   the class is so numerous that joinder of all members is impracticable;

(2)   there are questions of law or fact common to the class;

(3)   the claims or defenses of the representative parties are typical of claims or defenses of the class; and

---

[5]   *Walls* in this case is the same plaintiff in the later *Walls v. Wells Fargo* decision cited, *supra*. In the lower court decision, the court denied class certification but commented in response to the defendant's suggestion that only the issuing bankruptcy court had jurisdiction to enforce the discharge injunction. Although it acknowledged that there were no decisions on point in the Ninth Circuit, it did cite *Bessette, supra*, and *In re Noletto*, 244 B.R. 845 (Bankr. S.D. Ala. 2000) for the proposition that discharge injunctions are code created statutory injunctions, they are the same in very bankruptcy case filed in every bankruptcy court in the United States, and their extent is not dependent upon individual orders for injunctive relief fashioned by individual bankruptcy judges. *In re Walls, supra*, at 262 B.R. 528.

-20-

(4)    the  representative  parties  will  fairly  and
       adequately protect the interests of the class.

All four elements have been met as to each proposed class
here.

### 1.    **The Proposed Classes are Numerous.**

There is no minimum threshold of potential class members to
satisfy the numerosity requirement; a court must instead conduct
"examination of the specific facts of each case" with no limits
to what amount of proposed class members would be impracticable
to join. *Gen. Tel. Co. v. E.E.O.C.*, 446 U.S. 318, 3309 (1980).

Here, the potential classes number in the hundreds in the
Northern District of California alone, thousands in the Ninth
Circuit, and still more nationwide.  Navient does not dispute
the numerosity of the proposed classes and the court is assured
that Teran satisfies this element in the Motion.

### 2.    **Common Questions of Law and Fact Exist Among Class Members.**

"Commonality requires the plaintiffs to demonstrate the
class members "have suffered the same injury" and "must be of
such a nature that it is capable of class wide resolution—which
means that determination of its truth or falsity will resolve an
issue that is central to the validity of each one of the claims
in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,
359 (2011) (citations omitted).  "[F]or the purposes of Rule
23(a)(2), even a single common question will do." *Id.*

The court agrees with Teran that common questions of law
and fact span across class members: Did Navient know that the

-21-

class members' loans were discharged in bankruptcy; did Navient continue to collect on those loans post-discharge; and did Navient report those discharged loans to credit agencies with an outstanding balance? The questions and answers are the same throughout, as are the injuries associated with violation of bankruptcy discharges and with the economic damages associated with either paying, or facing penalties for not paying, discharged debts.

As with the element of numerosity, Navient is silent as to the common questions of law and fact among class members. The court is assured that Teran satisfies this element in the Motion.

### 3. Teran's Claims are Typical to the Classes.

A proposed plaintiff's claims are typical to a proposed class if "other members have the same or similar injury, whether the action is based on conduct not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Jones v. Shalala*, 66 F.3d 510, 514 (9th Cir. 1995) (*citing Hanon*, 976 F.3d at 508).

Here, Teran and other class members suffered the same injuries arising from Navient's alleged violation of the bankruptcy discharge. That Teran's debt arises from Navient's LAWLOANS program specifically does not matter, as all of the

-22-

Navient loan programs that proposed class members have utilized result in the same or similar injury arising from Navient's conduct regarding those loans.

The court is assured that Teran satisfies this element in the Motion.

### 4. **Teran and Counsel are Adequate Representatives to the Classes.**

The test for adequacy of representation for the class is two-pronged: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988).

As a typical representative of the class, Teran also presents no conflicts, and appears prepared to represent the class until the end of these proceedings. Proposed class counsel is experienced in class actions and consumer matters and is committed to seeing the case through. Teran and counsel have prosecuted the case without delay since its inception, and the court sees no reason to doubt their commitment moving forward.

Navient argues that Teran is an inadequate representative based on the arbitration clause discussed above. The court has already found the arbitration provision is not a barrier to class certification. Likewise it is not a barrier to Teran's adequacy as a class representative.

Navient also argues that Teran cannot be an adequate representative of chapter 13 debtors, or any debtor who may have

-23-

additional claims against Navient. Navient's distinction between chapter 7 and chapter 13 debtors is a distinction without a difference in light of the crux of the issues at play—a discharge and its effects remain the same regardless of what chapter of the Bankruptcy Code a debtor utilized. Likewise, that unnamed class members may have additional claims unique to their situations is not a barrier to Teran's adequacy as a representative. *See Ellis*, *supra,* at 985 (representatives claims need not be "identical" to be typical to the class).

**B.  Rule 23(b)**

Teran seeks certification pursuant to Rule 23(b)(2) as to Class 1, and 23(b)(3) as to Class 2 and Class 3, while Navient opposes certification under either subsection. Unlike Rule 23(a), the subparts of Rule 23(b) are disjunctive, and plaintiffs need only meet one subpart to certify a class. Once the elements of Rule 23(a) are satisfied, a proposed class plaintiff must satisfy one subsection of Rule 23(b).

**1.  Rule 23(b)(2)**

Subsection (b)(2) permits certification if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

Navient argues that Teran's proposed Class 1 does not meet the requirements of this subsection, not because it denies that it has acted in a systematic way regarding collection of

-24-

allegedly discharged loans, but because the proposed injunctive and declaratory relief is duplicative and inappropriate.

Navient's own actions in *Crocker v. Navient Solutions, L.L.C.*, Adv. Pro. # 16-3175 (Bankr. S.D. Tex.) contradict its argument here. *Crocker* involved a proposed class action against Navient arising in the Fifth Circuit bearing many similarities to the proposed classes here. Navient ultimately agreed to a cessation of loan collections for all settlement class members.[6] While a voluntary act is distinguishable from a court order, the court still notes that Navient acquiesced to an act that it argues here is duplicative and impossible.

Navient next argues that subsection (b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart,* at 360-61. Because some proposed class members have already paid off their loans and the only relief those class members would seek would be a monetary recovery, a proposed class granting injunctive and declaratory relief is inappropriate.

The court has already discussed, *supra*, its ability to certify a nationwide injunctive class, the benefits that a class action would bring to prospective class members, and the misplaced fear that such a class would prevent individual members from seeking monetary damages. That some class members have already paid off loans that possibly they need not have

---

[6] The settlement class members are geographically limited to the Fifth Circuit. See *Crocker* at Dkt. 346.

-25-

paid in full, would still benefit from declaratory relief establishing that wrongful collection prior to seeking compensation.

Navient's arguments regarding individualized monetary damages and reliance on the reasoning of *Wal-Mart* is discussed below.

### 2.   Rule 23(b)(3)

Subsection (b)(3) permits certification if:

> the court finds that the questions of law or
> fact common to class members predominate
> over any questions affecting only individual
> members, and that a class action is superior
> to other available methods for fairly and
> efficiently adjudicating the controversy.
> The matters pertinent to these findings
> include:
>
> > (A) the class members' interests in
> > individually controlling the
> > prosecution or defense of separate
> > actions;
> >
> > (B) the extent and nature of any
> > litigation concerning the controversy
> > already begun by or against class
> > members;
> >
> > (C) the desirability or undesirability
> > of concentrating the litigation of the
> > claims in the particular forum; and
> >
> > (D) the likely difficulties in managing
> > a class action.

In short, subsection (b)(3) provides an avenue to certification when in the interests of judicial economy and to "promote uniformity of decision as to persons similarly

-26-

situated, without sacrificing procedural fairness or bringing about other undesirable results." *Woodard v. Navient Solutions, LLC*, Adv. Pro. 21-8023 (Bankr. D. Neb. March 8, 2023). While the inquiry is similar to the elements of Rule 23(a), it is "far more demanding." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). The inquiry "asks whether the common, aggregation-enabling issues in the case are more prevalent or important than the non-common, aggregation defeating, individual issues." *Tyson Foods, Inc. v. Bouphakeo*, 577 U.S. 442, 453 (2016) (*citing* 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-197 (5th ed. 2012). Certification under this subsection is also appropriate when common questions predominate and "the amounts at stake for individuals may be so small that separate suits would be impracticable." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 616 (1997)).

The serious allegations of the violation of a federal statutory discharge injunction are uniform across class members and predominate the inquiry, as discussed *supra*.

Navient takes pains to individualize the potential claims and facts associated with each potential class member, relying mainly on *Wal-Mart*, 564 U.S. 338. That case is distinguishable from the uniform facts here. In *Wal-Mart*, a proposed class action related to alleged discrimination against women employees was denied in part on the basis that each class member's claim of discrimination was connected to unrelated, individual managerial action. Here, Navient cannot and does not allege its employees made individual determinations regarding which post-

-27-

discharge loans to pursue absent company-wide policy.  Its own representatives' testimonies, chronicled by counsel for Teran, establish that the decisions regarding the enforcement of the discharged loans were neither individualized nor discretionary.

While it is true that each class member may have additional claims, or Navient may have additional defenses against individual class members does not overcome the predominance of factual and legal issues at play.  It is also true that Navient already knows the answers to those individualized questions from its own records, rendering separate lawsuits impracticable. Individual amounts of damages stemming from the class action may also be determined from Navient's own records, and "the needs for individual damages does not, alone, defeat class certification."  *Vaquero v. Ashley Furniture Indus., Inc.* 824 F.3d 1150, 1155 (9th Cir. 2016).

In sum, Teran has made a compelling case for class certification under the two applicable subsections of Rule 23(b).

**C.**   **Nationwide Injunction Versus Limit to Ninth Circuit**

Proposed Intervenor Stephanie Mazloom ("Mazloom") objected to the Proposed Class 1, for which is sought injunctive relief for similarly situated borrowers nationwide.  Mazloom focuses on the potential negative preclusive effects her own proposed class may face if only injunctive relief and not damages are sought (and either won or lost) on behalf of a nationwide class, essentially wishing to avoid a future "two bites at the apple"

-28-

situation for class members who may wish to seek damages beyond injunctive relief in the future.

At the hearing, the court voiced its questions and concerns with the purpose of injunctive relief for a nationwide class, if any remedy of damages would only be limited to the Ninth Circuit. Counsel for Teran conceded that they simply did not have the facts requisite to constitute a damages class for borrowers outside the Ninth Circuit, but that permanent injunctive relief on its own is meaningful relief for borrowers all over: ceased collections and ceased credit reporting for all borrowers who are at this moment, only protected by a voluntary cessation of collections by Navient. Given that an untold number of borrowers may never seek damages either by choice or by lack of knowledge or perceived ability to do so, injunctive relief is meaningful relief.

In the Ninth Circuit, "a class action suit seeking only declaratory and injunctive relief does not bar subsequent *individual* damage claims by class members." *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir. 1996). It has not been squarely presented to this court if there are any circuits which take a dissimilar approach, but the risk that such an option would be precluded to individuals may be real. *See Wal-Mart,* at 364 (noting that limited class certification "created the possibility of precluding individual class members from bringing later compensatory damage claims."), *cf. Chen-Oster v. Goldman, Sachs & Co.* 251 F.Supp.3d 579 (S.D.N.Y. 2012) (summarizing a variety of cases that found the discussion of potential

-29-

preclusive effect in *Dukes* to be dicta, and not in any way precedential).

While it is true that some courts have in the past declined to certify an injunctive class out of a principle that a court "cannot predetermine the res judicata effect of the judgment," *In re Vitamin C Antitrust Litigation*, 279 F.R.D. 90, 115 (E.D. N.Y. 2012), this principle is not precedential nor axiomatic. Upon considering the issue of potential preclusive effect of a proposed limited class, the court in *Vitamin C* discussed the criticism of such an approach that reasons as follows: "I know that you have a proposed class action that may be properly maintainable, but I won't allow you to proceed because I must protect the absentees from the possibility that a subsequent court might misapply my judgment." *Id.* at 116. The court specifically protected potential individual claimants from the whims of other courts by expressly reserving the right of individual class members

> "to maintain their damages claims in subsequent proceedings notwithstanding their participation in the Injunction Class. This, of course, is not a guarantee of what subsequent courts will actually do, but it is sufficient to extinguish defendants' claim-splitting concerns for the purpose of class certification." *Id.*

This court sees no reason why it cannot include a similar express reservation of rights for individuals while still allowing an otherwise maintainable class to move forward.

In summary, the court is satisfied that it has the authority to issue the circuitwide and nationwide relief

-30-

requested and that Teran has established his ability to maintain the class action he requests.

## VI.    CONCLUSION

For the foregoing reasons, Teran's Motion is GRANTED subject to reservation of rights for individual Class 1 members to pursue individual compensation at a later date. Counsel for Teran should serve an upload an order consistent with the foregoing.

The court will conduct a follow-up status conference on April 21, 2023, at 10:30 AM. Counsel for Teran should file a status report three days prior.

**END OF MEMORANDUM DECISION**

-31-

1        <u>COURT SERVICE LIST</u>

2    ECF Recipients

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                              -32-